1

2

3

4

5              UNITED STATES DISTRICT COURT

6              EASTERN DISTRICT OF WASHINGTON

7  LAURA ZAMORA JORDAN, as her
   separate estate, and on behalf of others        NO:  2:14-CV-0175-TOR
8  similarly situated,
                                                    ORDER DENYING FEDERAL
9                         Plaintiff,                HOUSING FINANCE AGENCY'S
                                                    MOTION FOR PARTIAL SUMMARY
10         v.                                       JUDGMENT

11 NATIONSTAR MORTGAGE, LLC, a
   Delaware limited liability company,
12
                          Defendant.
13

14      BEFORE THE COURT is the Federal Housing Finance Agency's Motion

15 for Partial Summary Judgment (ECF No. 118).  This matter was submitted for

16 consideration without oral argument.  The Court has reviewed the briefing and the

17 record and files herein, and is fully informed.

18                          **BACKGROUND**

19      This certified class action is comprised of more than 5,000 Washington

20 homeowners challenging Defendant Nationstar Mortgage, LLC's ("Nationstar")

ORDER DENYING FEDERAL HOUSING FINANCE AGENCY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT ~ 1

1    policy of taking possession of homes in default by entering and changing locks

2    prior to foreclosure.  *See* ECF No. 1-2.  On July 7, 2016, the Washington Supreme

3    Court determined, among other things, that RCW 7.28.230 prohibits pre-

4    foreclosure residential entry.  *See Jordan v. Nationstar Mortgage, LLC*, 185

5    Wash.2d 876 (2016); *see also* ECF No. 89.

6          Thereafter, the Court granted the Federal Housing Finance Agency

7    ("FHFA") permission to intervene in this action as conservator for the Federal

8    National Mortgage Association ("Fannie Mae") and the Federal Home Loan

9    Mortgage Corporation ("Freddie Mac") (collectively, the "Enterprises").  *See* ECF

10   Nos. 92; 113.  The FHFA then moved for partial summary judgment on the ground

11   that the Housing and Economic Recovery Act of 2008 ("HERA") preempts RCW

12   7.28.230.  *See* Pub. L. 110-289, 122 Stat. 2654 (codified at 12 U.S.C. § 4501 *et*

13   *seq.*); ECF No. 118.  Plaintiff and the State of Washington, as Plaintiff's amici,

14   oppose the FHFA's motion.  ECF Nos. 137; 145.

15                              **DISCUSSION**

16         The FHFA argues that HERA preempts RCW 7.28.230 and, therefore, the

17   Enterprises' mortgage loan documents and loan servicing policies authorizing pre-

18   foreclosure interior inspections are enforceable.  *See* ECF No. 118 at 1.  The FHFA

19   explains that HERA expressly preempts application of state law, occupies the field

20

ORDER DENYING FEDERAL HOUSING FINANCE AGENCY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT ~ 2

1  with respect to its operation of the Enterprises in conservatorship, and application

2  of RCW 7.28.230 is barred by the doctrine of obstacle preemption.  *Id.* at 5.

3          Plaintiff Laura Zamora Jordan, representing thousands of similarly situated

4  Washington class members, and her amici, the State of Washington, argue that

5  there is a strong presumption against preemption when the government intrudes in

6  mortgage foreclosure law and that each of the FHFA's preemption theories fail.

7  *See* ECF Nos. 137 at 13; 145 at 3.  Plaintiff observes that the FHFA failed to

8  support its motion with evidence showing that RCW 7.28.230 actually conflicts

9  with FHFA requirements.  *See* ECF No. 137 at 7.  Plaintiff alternatively contends

10 the structure of the FHFA is unconstitutional and seeks leave to challenge the same

11 if FHFA's motion is granted.  *Id.* at 27.

12         In turn, the FHFA argues there is no presumption against preemption

13 because HERA focuses on regulating the safety and soundness of the Enterprises,

14 not mortgage foreclosure law.  *See* ECF No. 146 at 3-5.

15     **A. Standard of Review**

16         Summary judgment may be granted to a moving party who demonstrates

17 "that there is no genuine dispute as to any material fact and the movant is entitled

18 to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the

19 initial burden of demonstrating the absence of any genuine issues of material fact.

20 *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the

ORDER DENYING FEDERAL HOUSING FINANCE AGENCY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT ~ 3

non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A fact is "material" if it might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248. A dispute concerning any such fact is "genuine" only where the evidence is such that the trier-of-fact could find in favor of the non-moving party. *Id.* In ruling upon a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

Questions of preemption are purely legal and may be resolved on summary judgment. *See Bank of Am. v. City & Cty. of San Francisco*, 309 F.3d 551, 566 (9th Cir. 2002). A party who asserts preemption bears the heavy burden to show that was the "clear and manifest purpose of Congress." *See Wyeth v. Levine*, 555 U.S. 555, 565-569 (2009).

### B. Housing and Economic Recovery Act of 2008

Fannie Mae and Freddie Mac are congressionally-chartered corporations created to provide stability and liquidity to the national secondary mortgage market. *See* 12 U.S.C. §§ 1716(1), (4) (Fannie Mae); *City of Spokane v. Fed. Nat'l Mortg. Ass'n*, 775 F.3d 1113, 1114 (9th Cir. 2014); ECF Nos. 120 at ¶ 3; 139 at ¶ 3 (undisputed). The Enterprises contract with various loan servicers, including Nationstar, to facilitate management of their loans with homeowners. In this

ORDER DENYING FEDERAL HOUSING FINANCE AGENCY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 4

action, Nationstar contracted with Fannie Mae to service Plaintiff's home loan pursuant to Fannie Mae's Single Family Servicing Guide ("Fannie Mae Guide"). ECF Nos. 120 at ¶ 8; 120-6, Ex. F.  Freddie Mac utilizes a similar guide with its servicers, including Nationstar, referred to as Freddie Mac's Single-Family Seller/Servicer Guide ("Freddie Mac Guide").  ECF Nos. 120 at ¶ 9; 120-7, Ex. G. The Enterprises regularly utilize a uniform Deed of Trust for residential mortgages in contracting with Washington homeowners ("Deed of Trust").  *See* ECF No. 120 at ¶ 5; 120-2, Ex. B; 139 at ¶ 5 (undisputed).  The Deed of Trust contains a provision, which permits the lender to enter, maintain, and secure the encumbered property after the borrower's default or abandonment.  *See* ECF No. 120-2, Ex B at ¶ 9.  The Washington Supreme Court held that this entry provision is in direct conflict with Washington law RCW 7.28.230 and, therefore, unenforceable.  *See Jordan v. Nationstar Mortgage, LLC*, 185 Wash.2d at 886-89.

In 2008, in response to the severe economic downturn and nationwide housing and foreclosure crisis, Congress passed HERA to address the then-burgeoning need "to reform regulatory oversight" of the Enterprises[1] to protect the

---

[1]     *See* 154 Cong. Rec. S7436-01, S7439, 2008 WL 2856171 (July 25, 2008); *see also id*. at S7449 (commenting that HERA "creates a new, strong, independent, world-class regulator" for the Enterprises)

ORDER DENYING FEDERAL HOUSING FINANCE AGENCY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 5

"public interest."[2]  Congress enacted HERA not only to prevent the Enterprises'

past "irresponsible behavior,"[3] but also to aid homeowners by "mak[ing] the

American dream of homeownership for all a reality instead of a nightmare."[4]

Indeed, Congress members voiced pervasive concern over the need to aid "families

fearing they may lose the most important and valuable asset they will ever have,

the family home."[5]  Congressional testimony confirms the "desperate[] need to

have a strong regulator because [the Enterprises] play such a huge role . . . in [the]

housing industry" in order to "give some hope and opportunity" to homeowners

facing foreclosure.[6]

        Notably, HERA's legislative history does not reflect the need to protect the

Enterprises' pre-foreclosure assets, displace state foreclosure law, or sanctify pre-

foreclosure lender possession.  Rather, Congress articulated the converse: the

---

[2]      *See* 12 U.S.C. § 4513(a)(1)(B)(v).

[3]      *See* 154 Cong. Rec. S7487-07, S7494, 2008 WL 2863234 (July 26, 2008).

[4]      *See* 154 Cong. Rec. E1142-02, E1142, 2008 WL 2277791 (June 4, 2008).

[5]      *See* 154 Cong. Rec. S5921-06, S5928, 2008 WL 2474106 (June 20, 2008)

(reflecting the need to make families "feel secure that the home they are living in

and raising their children in will be theirs and not be lost through foreclosure").

[6]      *See* 154 Cong. Rec. S5775-01, S5791, 2008 WL 2467247 (June 19, 2008).

ORDER DENYING FEDERAL HOUSING FINANCE AGENCY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT ~ 6

desire to help homeowners on the brink of foreclosure retain their homes to stabilize the housing market by providing a watchdog over the Enterprises in conservatorship.

On September 6, 2008, the FHFA became conservator of the Enterprises under HERA "for the purpose of reorganizing, rehabilitating, or winding up the [Enterprises'] affairs." 12 U.S.C. § 4617(a)(1)-(2); *Cty. of Sonoma v. Fed. Hous. Fin. Agency*, 710 F.3d 987, 989 (9th Cir. 2013); ECF Nos. 120 at ¶ 4; 139 at ¶ 4 (undisputed). HERA provides that the FHFA, as conservator, "shall . . . immediately succeed to . . . all rights, titles, powers, and privileges of the [Enterprises], and of any stockholder, officer, or director of [the Enterprises] with respect to the [Enterprises] and the assets of the [Enterprises]." 12 U.S.C. § 4617(b)(2)(A)(i). Further, the FHFA "may . . . take over the assets of and operate the [Enterprises]," and "may . . . preserve and conserve the assets and property of the [Enterprises]." *Id.* at § 4617(b)(2)(B)(i), (iv).

HERA broadly authorizes the FHFA to utilize "[g]eneral powers," explaining that FHFA "may," among other things, "take such action as may be . . . necessary to put the [Enterprises] in a sound and solvent condition" and "appropriate to carry on the business of the [Enterprises] and preserve and conserve [its] assets and property[.]" *Id.* at § 4617(b)(2)(D). Reflecting Congress's purpose to safeguard public interest, the FHFA may take any necessary

ORDER DENYING FEDERAL HOUSING FINANCE AGENCY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 7

"incidental powers" in the manner that it "determines is in the best interests of the [Enterprises] or the [FHFA]."  *Id.* at § 4617(b)(2)(J)(ii).

While in conservatorship, the Enterprises proposed, and the FHFA adopted, an aligned set of home loan servicing policies memorialized in a Servicing Alignment Initiative ("SAI").  *See* ECF No. 138-4, Ex. D at 160; *see also* ECF Nos. 120 at ¶¶ 8-9 120-6, Ex. F (Fannie Mae Guide); 120-7, Ex. G (Freddie Mac Guide).  Generally, the policies instruct the Enterprises' home loan servicers to comply with state law.  *See id.*

Against this backdrop and in consideration of HERA's overarching purpose, the Court now analyzes whether HERA preempts state law.

## C. Federal Preemption Law

Congress's ability to preempt state law emanates from the Supremacy Clause of the United States Constitution.  *See English v. Gen. Elec. Co.*, 496 U.S. 72, 78 (1990); U.S. Const. art. VI, cl. 2.  Federal preemption occurs when either "(1) Congress enacts a statute that explicitly preempts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field."  *Tocher v. City of Santa Ana,* 219 F.3d 1040, 1045-46 (9th Cir. 2000) (citation omitted), *abrogated on other grounds by City of Columbus v. Ours Garage & Wrecker Serv., Inc.,* 536 U.S. 424, 431-34 (2002).

ORDER DENYING FEDERAL HOUSING FINANCE AGENCY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 8

Two principles guide the analysis.  *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).  First, courts must "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."  *Id.* (internal quotation marks and citation omitted).  Importantly, "[w]here . . . the field which Congress is said to have pre-empted includes areas that have been traditionally occupied by the States, congressional intent to supersede state laws must be clear and manifest." *English*, 496 U.S. at 79 (internal quotation marks and citations omitted).

Second, federal law will supersede state law only if Congress intended such an outcome.  *Medtronic, Inc.*, 518 U.S. at 485-86 (congressional purpose is "the ultimate touchstone") (citations omitted).  Courts must determine Congress's intent "from the language of the pre-emption statute and the 'statutory framework' surrounding it."  *Id.* at 486 (citation omitted).  Yet, the "structure and purpose of the statute as a whole, . . . as revealed not only in the text, but through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law" must also be considered.  *Id.* (internal quotation marks and citations omitted).  Courts are cautioned to "not be guided by a single sentence or member of a sentence, but [to] look to the provisions of the whole law, and to its object and

ORDER DENYING FEDERAL HOUSING FINANCE AGENCY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT ~ 9

1  policy." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 51 (1987) (internal quotation

2  marks and citations omitted).

3      **1. Express Preemption**

4      Congress is permitted to expressly displace state law under the Supremacy

5  Clause of the Constitution. *Crosby v. Nat'l Foreign Trade Council,* 530 U.S. 363,

6  372 (2000). Express preemption "arises when the text of a federal statute

7  explicitly manifests Congress's intent to displace state law." *Valle del Sol Inc. v.*

8  *Whiting*, 732 F.3d 1006, 1022 (9th Cir. 2013) (quoting *United States v. Alabama,*

9  691 F.3d 1269, 1281 (11th Cir. 2012). Mindful that "because the States are

10  independent sovereigns in our federal system, we have long presumed that

11  Congress does not cavalierly pre-empt state-law causes of action." *See Medtronic,*

12  *Inc.*, 518 U.S. at 485.

13      Here, the parties dispute whether 12 U.S.C. § 4617(a)(7) is a preemption

14  clause. Section 4617(a)(7) is titled "Agency not subject to any other Federal

15  agency."[7] The full text follows:

16      When acting as conservator or receiver, the Agency shall not be
        subject to the direction or supervision of any other agency of the
17      United States or *any State* in the exercise of the rights, powers, and
        privileges of the Agency.

18

19  [7]     Under HERA, "Agency" is defined as "the Federal Housing Finance Agency

20  established under section 4511[.]" 12 U.S.C. § 4502(2).

ORDER DENYING FEDERAL HOUSING FINANCE AGENCY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT ~ 10

12 U.S.C. § 4617(a)(7) (emphasis added).

The FHFA argues that "any State" unambiguously means that HERA preempts any state law and suggests that two district courts agree.  *See* ECF No. 118 at 13-14.  However, Plaintiff's reliance on dicta in *Robinson v. FHFA*, No. 7:15-cv-109-KKC, 2016 WL 4726555, at *6 (E.D. Ky. 2016), is unavailing because the court did not engage in a preemption analysis and its reliance on another court, which did not find preemption, is equally unhelpful.  *Id.* at *6 (citing *Suero v. Fed. Home Loan Mortg. Corp.*, 2015 WL 4919999, *9 (D. Mass. 2015)).

Throughout its briefing, the FHFA heavily relies on, *Fed. Hous. Fin. Agency v. City of Chicago*, 962 F. Supp. 2d 1044 (N.D. Ill. 2013).  There, the court casually referred to § 4617(a)(7) as a preemption clause but did not find that express preemption applied.  *See City of Chicago*, 962 F. Supp. 2d at 1056-1057 (analyzing preemption of a local ordinance).

Conversely, Plaintiff, and her amici, interpret § 4617(a)(7) merely to mean that no other federal or state agency may direct or supervise the FHFA.  *See* ECF Nos. 137 at 14; 144 at 6-7.  Plaintiff contends that "the United States" and "any State" both modify the phrase "any other agency."  Plaintiff explains that, unlike agencies, state laws do not have the ability to direct or supervise.

Here, HERA defines the parameters by which the FHFA may act as conservator for the Enterprises and enumerates various powers and exemptions.

ORDER DENYING FEDERAL HOUSING FINANCE AGENCY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 11

4r4e

eerr

eeee

ree

ere

erre

errr

eeeerr

rrrr

rre

*See* 12 U.S.C. § 4617. Throughout the statute, Congress includes the phrase "State law" more than 10 times. *Id.* Congress's decision to include "State law" in numerous sections, yet omit it from § 4617(a)(7), is presumptively deliberate and evinces Congress's intent that the section is not meant to preempt state law. *See Russello v. United States*, 464 U.S. 16, 23 (1983) (language found in one section but omitted from another is presumptively deliberate and not attributable to "a simple mistake in draftsmanship").

Where Congress intended that HERA displace state law in certain areas, it did so unequivocally. *See, e.g.*, 12 U.S.C. § 4717(e)(1) ("Notwithstanding any other provision of Federal law or *the law of any State* . . ., this subsection shall govern the rights of the creditors . . .") (emphasis added); § 4617(a)(1) ("Notwithstanding any other provision of Federal or *State law*, the Director may appoint . . .") (emphasis added); § 4617(d)(8)(A) ("[N]otwithstanding any other provision of this chapter . . . any other Federal law, or the *law of any State*, no person shall . . .") (emphasis added); § 4617(d)(8)(C)(i) ("Notwithstanding . . . any other provision of Federal or *State law* relating to the avoidance . . .") (emphasis added); § 4617(d)(8)(E) ("Notwithstanding any other provision of this section, any other Federal law, or the *law of any State* . . . no person shall . . .").

Indeed, courts have identified other sections in HERA that reflect Congress's decision to preempt isolated areas of state law, rather than finding

ORDER DENYING FEDERAL HOUSING FINANCE AGENCY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 12

1    blanket preemption under § 4617(a)(7).  *See, e.g.*, *Nationstar Mortg. LLC v.*

2    *D'Andrea Cmty. Ass'n*, No. 3:15-CV-00377-RCJ-VPC, 2017 WL 58582, at *2 (D.

3    Nev. 2017) (stating that Section § 4617(j)(3) preempts state law "prevent[ing] the

4    sale of any property in which the FHFA . . . has an interest without the FHFA's

5    consent") (collecting cases, citations omitted).  In other words, "express provisions

6    for preemption of some state laws imply that Congress intentionally did not

7    preempt state law generally, or in respects other than those it addressed."  *Keams v.*

8    *Tempe Tech. Inst., Inc.*, 39 F.3d 222, 225 (9th Cir. 1994).

9         Even textual decisions about which words form a heading are "presumed to

10   be deliberate" indicia of congressional intent.  *Univ. of Texas Sw. Med. Ctr. v.*

11   *Nassar*, 133 S. Ct. 2517, 2529 (2013) (citation omitted); *see also United States v.*

12   *Nader*, 542 F.3d 713, 717 (9th Cir. 2008) (stating that "[t]itles are also an

13   appropriate source from which to discern legislative intent").  For example,

14   Congress explicitly included a "Preemption" heading for 8 U.S.C. § 1324a(h)(2).

15   There, the correlating clause unequivocally provides that "[t]he provisions of this

16   section preempt any State or local law[.]"  Here, the title—Agency not subject to

17   any other Federal agency—only reflects that the FHFA is not subject to direction

18   or supervision by *any other agency*.  *See* 12 U.S.C. § 4617(a)(7).  Clearly lacking

19   is *any* indicia of state law preemption.

20

ORDER DENYING FEDERAL HOUSING FINANCE AGENCY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT ~ 13

1    Moreover, although not determinative to the analysis, where Congress has

2    chosen to leave no room for state regulation, it often does so explicitly.  *See Silvas*

3    *v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1004-05 (9th Cir. 2008).  For example,

4    under the Home Owners' Loan Act of 1933, Congress gave the Office of Thrift

5    Supervision ("OTS") broad authority to preempt state law.  *Id.* at 1005 (citing 12

6    U.S.C. § 1464).  A federal regulation provides that OTS "occupies the entire field

7    of lending regulation for federal savings associations."  *Id.* (citing 12 C.F.R.

8    § 560.2(a)).  Likewise, the regulation expressly states that credit may be extended

9    "without regard to state laws."  *Id.*  In that context, Congress clearly and explicitly

10    manifested its intent to preempt state law.  Conversely, 12 U.S.C. § 4617(a)(7)

11    does not evince any clear intent to preempt state law and no court has held so, yet.

12    Importantly, "[w]hen the text of a pre-emption clause is susceptible of more

13    than one plausible reading, courts ordinarily 'accept the reading that disfavors pre-

14    emption.'"  *Altria Group, Inc. v. Good,* 555 U.S. 70, 77 (2008) (quoting *Bates v.*

15    *Dow Agrosciences LLC,* 544 U.S. 431, 449 (2005)).  Even assuming arguendo that

16    Congress's reference to "any State" in § 4617(a)(7) could refer to some state laws,

17    because RCW 7.28.230 does not subject the FHFA to direction or supervision in

18    the exercise of its rights, powers, and privileges, it is not expressly preempted by

19    HERA.  Rather, RCW 7.28.230 merely precludes the Enterprises from entering a

20

ORDER DENYING FEDERAL HOUSING FINANCE AGENCY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT ~ 14

defaulted borrower's home prior to foreclosure, without some other legal process. *Jordan*, 185 Wash. 2d at 889-93.

For all of the foregoing reasons, the Court finds that 12 U.S.C. § 4617(a)(7) does not evince a clear and manifest congressional intent to expressly preempt state law.

### 2. Field Preemption

Preemption may be inferred "where the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it[.]" *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) (internal quotation marks and citation omitted). Importantly, "the Congressional narrowness and precision in preempting some state laws cuts against an inference of a Congressional intention to preempt laws with a broad brush, and without express reference." *Keams*, 39 F.3d at 225. Further, "[p]reemption should not be inferred . . . simply because the agency's regulations are comprehensive." *R.J. Reynolds Tobacco Co. v. Durham Cty., N.C.*, 479 U.S. 130, 149 (1986) (citation omitted).

The FHFA argues that HERA occupies the field with respect to the operation of the Enterprises in conservatorship, leaving no room for state laws to interfere with the FHFA's exclusive powers. ECF No. 118 at 15. The FHFA urges the Court to follow *City of Chicago*'s holding that a local building ordinance is

ORDER DENYING FEDERAL HOUSING FINANCE AGENCY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 15

1    superseded by field preemption because Congress intended for the FHFA to

2    possess exclusive authority over the Enterprises' business operations.  *See City of*

3    *Chicago*, 962 F. Supp. 2d at 1059-60.  There, the court reasoned that "Congress

4    could not have intended to preclude other federal agencies and states from

5    regulating FHFA's operations, but permit thousands of municipalities all over the

6    country to impose varying ordinances and obligations on FHFA."  *Id.* at 1060

7    (stating that such a result would "invite chaos").  The Court declines to follow the

8    *City of Chicago*'s holding for the reasons that follow.[8]

9         The States have traditionally regulated state foreclosure laws.  *BFP v.*

10   *Resolution Trust Corp.*, 511 U.S. 531, 541-45 (1994) (regulation of foreclosure law

11   is an "essential state interest"); *Rank v. Nimmo*, 677 F.2d 692, 697 (9th Cir. 1982)

12   (mortgage foreclosure is a matter of state law).  The States' role in defining

---

14   [8]     After the court's decision, the parties privately settled the dispute and the

15   FHFA agreed to comply with the local ordinance requiring it to register vacant

16   properties owned by the Enterprises.  *See* Mary Ellen Podmolik, *FHFA, Chicago*

17   *Settle Vacant Property Dispute*, Chicago Tribune, Apr. 7, 2014,

18   http://articles.chicagotribune.com/2014-04-07/business/chi-fhfa-vacant-buildings-

19   dispute-20140407_1_fhfa-vacant-building-ordinance-fannie-mae (last visited

20   3/9/2017).

ORDER DENYING FEDERAL HOUSING FINANCE AGENCY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT ~ 16

foreclosure laws is important because the Supreme Court has cautioned that "we have never assumed lightly that Congress has derogated state regulation, but instead have addressed claims of pre-emption with the starting presumption that Congress does not intend to supplant state law." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 654 (1995) (citation omitted). The Court finds there is a presumption against preemption because the state law that the FHFA claims is preempted by HERA centers on mortgage foreclosure law, which is an area within the traditional regulatory powers of the States. *See BFP*, 511 U.S. at 541-45.

Nevertheless, the Court is cognizant of the wide-reaching grant of discretionary authority conferred by Congress to the FHFA to act in the Enterprises' best interests. *See* 12 U.S.C. § 4617(b)(2)(J). However, the FHFA's "broad, but not infinite, conservator authority" extends only so far as HERA's text, purpose, and regulatory scheme allow. Moreover, preemption cannot be inferred simply because HERA's regulations are comprehensive. *See R.J. Reynolds Tobacco Co.*, 479 U.S. at 149. Simply because a federal statute, like HERA, is extensive in order to accomplish Congress's goals does not mean that Congress meant to prevent the States "from identifying additional needs or imposing further requirements in the field." *See Hillsborough Cty., Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 717 (1985) (citation omitted). Indeed, the Ninth Circuit

ORDER DENYING FEDERAL HOUSING FINANCE AGENCY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 17

1  recognizes that HERA's powers are not "limitless." *Cty. of Sonoma,* 710 F.3d at

2  992-93 ("[T]he anti-judicial review provision is inapplicable when FHFA acts

3  beyond the scope of its conservator power.").

4      HERA's predominant purpose is to yield a conservator to regulate the

5  Enterprises to stabilize the national housing market, protect the public against the

6  Enterprises' past irresponsible practices, and help homeowners avoid foreclosure.

7  HERA's legislative history and text are void of <u>any</u> intent to allow the FHFA to

8  circumvent the Enterprises' long-standing compliance with state-specific mortgage

9  foreclosure laws. The *City of Chicago* stressed the absurdity and chaos that would

10 ensue if the FHFA, in operating the Enterprises, must comply with local

11 ordinances and laws. *See* 962 F. Supp. 2d at 1060. However, that is exactly how

12 the Enterprises operate.

13     For example, the SAIs clearly show that the Enterprises instruct their

14 servicers to comply with state law. *See* ECF No. 138-4 at 160 (calculation of

15 deadline pursuant to state statute); 163 (establishing foreclosure timelines "for each

16 jurisdiction" and compensatory fees in consideration of the "applicable

17 jurisdiction"); 166 (requiring servicers to comply with "applicable law"); and 171

18 (foreclosure time frames must comply with state-by-state requirements).

19     The Enterprises' servicing guidelines are in accord, and anticipate that state

20 "law can change quickly, and sometimes without widespread notice[.]" *See* ECF

ORDER DENYING FEDERAL HOUSING FINANCE AGENCY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT ~ 18

No. 138-1, Ex. A at 111.[9]  Specifically, the Fannie Mae Guide requires servicers to be "aware of, and in full compliance with, all federal, state, and local laws (e.g., statutes, regulations, ordinances, administrative rules and orders that have the effect of law, and judicial rulings and opinions)." *Id.*  Fannie Mae repeatedly instructs its servicers to "comply with any applicable law that addresses . . . the enforcement of any of the terms of the mortgage loan." *Id.*  The Fannie Mae Guide also anticipates that "legal constraints due to compliance with applicable law" may prevent interior inspections prior to foreclosure. *Id*. at 445.  In that case, Fannie Mae instructs its servicers to "consider a curbside (drive-by) inspection as an exterior inspection[.]" *Id.*  Along that vein, Fannie Mae instructs its servicers to ramp up the number of inspections "when required by local ordinance[.]" *Id.*

Similarly, the Freddie Mac Guide is chockfull of references to compliance with applicable laws.  *See* ECF No. 138-2, Ex. B at 1301-1 (requiring servicers to "comply with all applicable federal, State and local laws, ordinances, regulations and orders").  Freddie Mac also instructs its servicers to consider a "curbside or drive-by" inspection adequate when "[l]egal constraints [are present] due to compliance with federal, State, or local law." *Id.* at 9202-15.  When property is confirmed to be abandoned, servicers must obtain monthly interior inspections, but

---

[9]     Reference to the original page numbering of the document.

ORDER DENYING FEDERAL HOUSING FINANCE AGENCY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT ~ 19

only "in accordance with the terms of the Mortgage documents and applicable law." *Id*. at 9202-16.  The Deed of Trust (regularly utilized by the Enterprises with its Washington homeowners) reflects the same flavor.  *See* ECF No. 120-2, Ex. B (illustrating that the Enterprises comply with "federal law and the law of the jurisdiction in which the Property is located").

The FHFA argues that the Enterprises' "servicing guidelines [stating] that servicers comply with local laws means only that they must do so as and where such laws apply; it does not elevate local law over conflicting federal law."  ECF No. 146 at 19.  The FHFA's argument is unpersuasive.  Although the Court agrees that the Enterprises' servicing guidelines do not waive preemption, that the Enterprises have been and continue to comply with federal and state law speaks volumes.  That is, "Fannie Mae and Freddie Mac are private companies, albeit companies sponsored or chartered by the federal government[,]" that flatly may not sidestep state law.  *United States ex rel. Adams v. Aurora Loan Servs., Inc.*, 813 F.3d 1259, 1260–61 (9th Cir. 2016) ("12 U.S.C. § 1716b (Fannie Mae is a 'Government-sponsored private corporation'); 12 U.S.C. § 1452 (Freddie Mac is 'a body corporate under the direction of a Board of Directors'")).

The FHFA, and the Enterprises in conservatorship, cannot rely on countless state-specific mortgage foreclosure laws, yet disregard a restriction inexorably part of that process.  That FHFA "may" act to "conserve and preserve" the Enterprises'

assets does not evince a clear and manifest intent by Congress to allow the FHFA to steamroll over state mortgage foreclosure laws as it sees fit. *See Gonzales v. Oregon*, 546 U.S. 243, 274 (2006) (clarifying that "the background principles of our federal system also belie the notion that Congress would use such an obscure grant of authority to regulate areas traditionally supervised by the States' police power").

Moreover, the FHFA succeeded "all rights, titles, powers, and privileges" of the Enterprises, *see* § 4617(b)(2)(A)(i), "plac[ing] FHFA in the shoes of Fannie Mae and Freddie Mac, and giv[ing] the FHFA *their* rights and duties, not the other way around." *Adams*, 813 F.3d at 1261; *see also O'Melveny & Myers v. FDIC*, 512 U.S. 79, 87 (1994) (interpreting a similar FIRREA provision to mean that the FDIC as receiver "places the FDIC in the shoes of the [entity in receivership], to work out its claims under state law"). In other words, Congress's intent to cloak the FHFA with the exclusive ability to operate the Enterprise does not immunize it (or the Enterprises) from compliance with state law.

The *City of Chicago* also overlooked that Congress chose to preempt state laws in certain contexts but not others, which cuts against an inference of leaving no room for state laws. *Keams*, 39 F.3d at 225. Instead, *City of Chicago* heavily emphasized the need to protect the Enterprises' pre-foreclosure homes because those "are the most important assets Fannie and Freddie have[,]" *see Chicago*, 962

ORDER DENYING FEDERAL HOUSING FINANCE AGENCY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 21

F. Supp. 2d at 1060; yet, HERA's omission of <u>any</u> reference to pre-foreclosure asset protection is telling and makes it substantially unlikely that Congress intended to displace state foreclosure law.  Under the doctrine of *expressio unius est exclusio alterius*, if Congress intended to preempt state foreclosure laws, it could have do so explicitly just as it did in a half dozen other instances.  *See, e.g.*, 12 U.S.C. § 4717(e)(1).  The doctrine "as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions."  *Boudette v. Barnette,* 923 F.2d 754, 757 (9th Cir. 1991) (citations omitted).  In light of the traditional state regulation of mortgage foreclosure laws, if Congress chose to include foreclosure law as an area preempted by HERA, it would have been explicit.  The Court presumes that such an omission is deliberate.

Nevertheless, the FHFA also argues that preemption is implied given the implied preemption related to a statute governing the FDIC, to wit, the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA").  *See* Pub. L. No. 101-73, 103 Stat. 183 (codified at 12 U.S.C. § 1441a(b)(1), *et seq*); ECF No. 118 at 113.  Comparison to the FIRREA framework is helpful because in enacting HERA's conservator provisions the "Committee staff . . . quite literally 'marked up' Sections 11 and 13 of the [Federal Deposit Insurance Act, FIRREA's

ORDER DENYING FEDERAL HOUSING FINANCE AGENCY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 22

predecessor statute]."[10]  The Court's interpretation of HERA "is, therefore, guided by congressional intent expressed in FIRREA and the case law interpreting it." *See Perry Capital LLC*, 2017 WL 677589, at *34 (Brown, J., dissenting) (citations omitted).

Just as the FHFA serves as conservator over the Enterprises, FIRREA directed the Resolution Trust Corporation ("RTC") to "manage and resolve all cases involving depository institutions." *See* 12 U.S.C. § 1441a(b)(3)(A) (repealed 2010); *Resolution Trust Corp. v. State of Cal.,* 851 F. Supp. 1453, 1455 (C.D. Cal. 1994);  ECF No. 118 at 13.  A FIRREA provision, 12 U.S.C. § 1821(c)(2)(C)— textually similar, but not identical, to HERA's § 4617(a)(7) provision—provides that the FDIC as conservator *"shall not be subject to the direction or supervision of any other agency or department of the United States or any State in the exercise*

---

[10]    *See* Mark A. Calabria, *The Resolution of Systemically Important Financial Institutions: Lessons from Fannie and Freddie* 10 (Cato Inst., Cato Working Paper No. 25, January 13, 2015), http://tinyurl.com/Cato-Working-Paper.  "Save for references to a 'regulated entity' in place of a 'depository institution,' the conservator powers delineated in the two statutes are identical." *Perry Capital LLC v. Steven T. Mnuchin*, No. 14-5243, 2017 WL 677589, at *35 (D.C. Cir. Feb. 21, 2017) (Brown, J., dissenting).

ORDER DENYING FEDERAL HOUSING FINANCE AGENCY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 23

1    *of the Corporation's rights, powers, and privileges." Id.* at § 1821(c)(2)(C)

2    (emphasis added).  The FHFA argues that courts have interpreted the provision to

3    mean "that Congress did not intend to allow the States to interfere with the RTC's

4    specified functions" as conservator under FIRREA and, therefore, that reasoning

5    should apply to HERA.  *Resolution Trust Corp.*, 851 F. Supp. at 1458; *see also*

6    ECF No. 146 at 13.  However, *Resolution Trust Corp*. also recognized—just as this

7    Court does with respect to HERA—that the FIRREA provision is not an explicit

8    "plain statement" of Congress's intent to displace all state laws.  *Id.* (citation

9    omitted); *see also Waterview Mgmt. Co. v. FDIC*, 105 F.3d 696, 700 (D.C. Cir.

10   1997) (stating that the FIRREA provision does not preempt compliance with state

11   law where in doing so the conservator is not subject to "direction or supervision").

12   Under this rationale, state laws that do not interfere with the FDIC's functions are

13   not preempted.  *See, e.g.*, *Bolden v. KB Home*, 618 F. Supp. 2d 1196, 1204 (C.D.

14   Cal. 2008) (allowing state regulation of real estate appraisals); *Birdville Indep. Sch.*

15   *Dist. v. Hurst Assocs.,* 806 F. Supp. 122, 128 (N.D. Tex. 1992) (allowing state

16   taxing authorities to foreclose on mortgage interests); *Sharpe v. FDIC*, 126 F.3d

17   1147, 1155 (9th Cir. 1997) ("FIRREA also does not preempt state law so as to

18   abrogate state law contract rights.").

19         Furthermore, HERA includes several references to areas where state laws

20   may or shall be followed in lieu of or in conjunction with federal law.  *See, e.g.*, 12

ORDER DENYING FEDERAL HOUSING FINANCE AGENCY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT ~ 24

U.S.C. § 4617(b)(12)(A)(i), (ii) (stating when the FHFA shall follow the statute of limitations period under state law for a contract or tort claim); § 4617(g)(2) (providing that the FHFA may hold a director or officer of the Enterprises liable for gross negligence as "defined and determined under applicable State law"); § 4617(j)(2) (stating that the FHFA's real property shall be subject to state taxation); § 4617(j)(3) (permitting levy, attachment, garnishment, foreclosure, or sale with the FHFA's consent).

Although the FHFA argues that the purpose of the Enterprises, coupled with the FHFA's directive to supervise and regulate the Enterprises, "make[s] this a clear case of field preemption," the Court finds that the FHFA has not met its heavy burden to show that HERA impliedly preempts RCW 7.28.230.  Rather, despite the FHFA's broad authority to right the Enterprises' ships, Congress left room in HERA for state law compliance, provided that such laws do not conflict with the FHFA's power to direct and supervise the Enterprises.

### 3.  Conflict Preemption

"[U]nder the Supremacy Clause . . . any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield."  *Gade*, 505 U.S. at 108 (internal quotation marks and citations omitted).  Preemption occurs when state law conflicts with federal law, either because "compliance with both federal and state regulations is a physical

1   impossibility" or "state law stands as an obstacle to the accomplishment and

2   execution of the full purposes and objectives of Congress." *Arizona v. United*

3   *States*, 132 S. Ct. 2492, 2501 (2012) (quoting *Florida Lime & Avocado Growers,*

4   *Inc. v. Paul*, 373 U.S. 132, 142-143 (1963), and *Hines v. Davidowitz*, 312 U.S. 52,

5   67 (1941)).

6         Here, the FHFA argues that application of RCW 7.28.230 conflicts with and

7   poses an obstacle to HERA's purpose because the FHFA was given the authority to

8   preserve and conserve the Enterprises assets and compliance would require the

9   FHFA to obtain a borrower's post-default consent to enter the pre-foreclosed

10  property and change locks.  ECF Nos. 118 at 19; 146 at 15.  The FHFA also

11  contends that compliance would "restrict the preservation of Enterprise collateral

12  subsequent to a loan default and abandonment of the property [which] would

13  contradict and frustrate" HERA's express delegation of authority to "preserve and

14  conserve" the Enterprises' assets.  ECF Nos. 118 at 19.  Further, the FHFA

15  contends that application of state law "would effectively permit fifty states . . . to

16  regulate the Enterprises in conservatorships and limit the core functions of the

17  Conservator."  *Id.*

18        Plaintiff and the State of Washington argue that the FHFA can comply with

19  RCW 7.28.230 by proceeding with foreclosure as a means to recover possession of

20  the property in default.  *See* ECF Nos. 137 at 26; 145 at 14.  Proceeding with

ORDER DENYING FEDERAL HOUSING FINANCE AGENCY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT ~ 26

foreclosure will not thwart compliance with the discretion the HERA provides to the FHFA to preserve and conserve the Enterprises' assets.  The Court agrees.

First, the FHFA is required to show a conflict between HERA and RCW 7.28.230 "strong enough to overcome the presumption that state and local regulation of [property interest] matters can constitutionally coexist with federal regulation." *See Hillsborough Cty.*, 471 U.S. at 716.  Here, compliance with HERA and RCW 7.28.230 is unquestionably not a "physical impossibility."  *See Arizona*, 132 S. Ct. at 2501 (citation omitted).  The Washington law does not prevent the FHFA from exercising any of its broad-sweeping powers, including the power to preserve and conserve the Enterprises' assets, nor regulate the FHFA or instruct it to undertake a remedial measure.  *Id.* at § 4617(b)(2)(B)(i), (iv).  Indeed, RCW 7.28.230 merely safeguards a homeowner's property from entry prior to foreclosure and sale.  The FHFA has not shown how it is impossible to comply with HERA and RCW 7.28.230.

Second, the Court finds that RCW 7.28.230 does not pose a sufficient obstacle to the FHFA to "accomplish[] and execut[e]" Congress's purpose and objectives.  *See Arizona*, 132 S. Ct. at 2501 (citation omitted); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000) ("What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects.").

ORDER DENYING FEDERAL HOUSING FINANCE AGENCY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT ~ 27

1    The FHFA relies on a district court which found preemption under HERA

2    because "[e]xposure to state law claims would undermine the FHFA's ability to

3    establish uniform and consistent standards for the regulated entities."  *See* ECF No.

4    118 at 25 (citing *California ex rel. Harris v. Fed. Hous. Fin. Agency*, No. 10-cv-

5    03084, 2011 WL 3794942, at *16 (N.D. Cal. 2011)).  However, the FHFA's

6    argument is unconvincing because the Enterprises' standards are anything but

7    uniform and consistent.  Moreover, its reliance on *Harris* is misplaced.  There, an

8    energy conservation program created lien obligations that took priority over

9    mortgage loans owned by the Enterprises.  *Harris*, 2011 WL 3794942, at *1.  The

10    FHFA explicitly ordered the Enterprises not to purchase mortgages secured by the

11    program because the program posed significant risks to the security interests of the

12    Enterprises.  *Id.* at *2.  The court found that the state law was preempted because

13    the programs created significant obstacles to the accomplishment of HERA's

14    policy goals.  *Id.* at *17.

15        Here, RCW 7.28.230 does not present a significant obstacle to the

16    accomplishment of HERA's federal objectives.  Specifically, the FHFA may

17    pursue pre-foreclosure asset preservation and conservation by continuing to

18    conduct curbside (drive-by) inspections[11] or by pursuing nonjudicial foreclosure of

19

20    ───────────────

[11]        *See* ECF No. 138-1 at 36; 138-2 at 120.

ORDER DENYING FEDERAL HOUSING FINANCE AGENCY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT ~ 28

the Enterprises' defaulted properties.  Prior to foreclosure, the FHFA may also

pursue a judicial receivership under Washington law if it is "reasonably necessary"

to do so.  *See* RCW 7.60.025(1)(b)(ii).  However, none of the available measures

are required by RCW 7.28.230.  Indeed, the FHFA admits that it could also obtain

a borrower's post-default consent to enter a homeowner's property, if needed, but

suggests that presents a significant obstacle.  The Court disagrees.  Compliance

with RCW 7.28.230 does not impede the FHFA from taking actions necessary to

put the Enterprises in a sound and solvent condition or to preserve and conserve its

assets, given the litany of other preservation remedies available.  Moreover,

compliance with RCW 7.28.230 does not attempt to regulate, direct, or supervise

the Enterprises or create a secondary conservator, as the FHFA argues.

Congress's predominant purpose in enacting HERA was to regulate the

Enterprises' operations and prevent other agencies from undermining the appointed

conservator's efforts to ensure the safety and soundness of those operations.  *See*

12 U.S.C. § 4617.  HERA does not contain a right that the Washington law takes

away or authorize the FHFA to repudiate statutory property interest protections.

Moreover, compliance with RCW 7.28.230 does not thwart, interfere, prevent, or

undermine the method by which HERA was designed to reach its goals.  Indeed,

preemption of state mortgage foreclosure laws would produce illogical results by

stripping homeowners of the foreclosure protections afforded to Washington

residents simply by virtue of having a Fannie Mae or Freddie Mac home loan.  The Court refuses to construe "[l]egislative enactments . . . as establishing statutory schemes that are illogical, unjust, or capricious."  *Bechtel Constr., Inc. v. United Bhd. of Carpenters*, 812 F.2d 1220, 1225 (9th Cir. 1987).

Although Congress conferred expansive powers to the FHFA, it did not give the FHFA the power to repudiate statutory property interest protections, or the ability to circumvent compliance with all state laws.  The FHFA cannot expand its powers by arguing that Congress's objectives were broader than the powers conferred by HERA.  Accordingly, the Court finds that there is no conflict between HERA and RCW 7.28.230.  The FHFA's motion is **DENIED.**

### D. Other Matters

The Court postponed briefing on Nationstar's Motion to Decertify Plaintiff Class In Part (ECF No. 119) until resolution of the instant motion.  *See* ECF No. 133.  The parties previously stipulated to an extended briefing schedule to "account for the availability of Nationstar witnesses that [Plaintiff] seeks to depose and to account for counsel's availability[.]"  ECF Nos. 116 at 2; 127.  The Court is aware that Plaintiff has not had an opportunity to file a response.

As such, unless the parties advise the Court otherwise, the Court will set the following briefing schedule and hearing without oral argument.

*//*

ORDER DENYING FEDERAL HOUSING FINANCE AGENCY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 30

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. The Federal Housing Finance Agency's Motion for Partial Summary Judgment (ECF No. 118) is **DENIED**.

2. Plaintiff's Response to Nationstar's Motion to Decertify Plaintiff Class In Part (ECF No. 119) shall be filed no later than **March 24, 2017**.

3. Nationstar's Reply shall be filed no later than **March 31, 2017**.

4. Nationstar's Motion to Decertify Plaintiff Class In Part (ECF No. 119) will be heard without oral argument on April 10, 2017.

The District Court Executive is directed to enter this Order and provide copies to counsel.

**DATED** March 9, 2017.



THOMAS O. RICE
Chief United States District Judge

ORDER DENYING FEDERAL HOUSING FINANCE AGENCY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 31