UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LAURA ZAMORA JORDAN, as her separate estate, and on behalf of others similarly situated,<br><br>               Plaintiff,<br><br>    v.<br><br>NATIONSTAR MORTGAGE, LLC, a Delaware limited liability company,<br><br>              Defendant,<br><br>   and<br><br>FEDERAL HOUSING FINANCE AGENCY,<br><br>              Intervenor. | NO. 2:14-CV-0175-TOR<br><br>ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

BEFORE THE COURT is Plaintiff's Motion for Partial Summary Judgment. ECF No. 217. This matter was submitted for consideration with oral argument on November 15, 2017. The Court has reviewed the motion, the record and files

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 1

herein, and is fully informed. For the reasons discussed below, Plaintiff's Motion for Partial Summary Judgment (ECF No. 217) is **GRANTED in part**.

## BACKGROUND

This case arises from actions taken by Defendant Nationstar Mortgage LLC ("Nationstar") affecting Washington homeowners' residential properties in default. ECF No. 2-4. Plaintiff and Class Representative Laura Zamora Jordan ("Ms. Jordan") seeks summary judgment for a common law trespass claim,[1] Washington Consumer Protection Act (CPA) claim, and damages for injury to property caused by the lock changes. ECF No. 217.

## FACTS[2]

### A. Facts Relating to Ms. Jordan

On April 4, 2011, Nationstar drilled out and replaced the lock on Ms. Jordan's front door after she defaulted on her mortgage payments. ECF Nos. 218 at ¶ 1; 227 at ¶ 1; 166-1 at 3 (Ex. 1). Nationstar admits it did not issue a notice of default. ECF Nos. 218 at ¶ 2; 227 at 2. Ms. Jordan called Nationstar and asked

---

[1] Plaintiff asserted a statutory trespass claim in her Motion for Partial Summary Judgment, but corrected at oral argument that she was only seeking summary judgment on a common law trespass claim. *See* ECF No. 217 at 8.

[2] The following facts are not disputed unless otherwise noted.

how to gain access to the property so that she could move out her personal items. ECF No. 3-5 at 73 (Ex. 38). Nationstar then provided Ms. Jordan with the code to the lockbox so that she could enter her home to obtain her items. *Id.* at 73–74. She asked if she should put the key back in the lockbox after removing her items, to which Nationstar responded yes. *Id.* at 74. Ms. Jordan spent the night in her house and moved out her items the next day. ECF No. 166-1 at 9 (Ex. 1). She testified that she believed Nationstar wanted her out of the property because of the lockbox and it made her feel like she needed to move out. *Id.* at 8–9.

On December 29, 2011, Ms. Jordan's attorney sent a letter to Nationstar demanding the immediate return of her property, restoration of the original locks, and compensation for damages suffered. ECF No. 116-2 at 2 (Ex. 2). The Vice President for Property Preservation at Nationstar, Jaime Burgess, declared that Nationstar would instruct the vendor to remove the lockbox and provide the sole key to the borrower if the borrower informs the vendor or Nationstar that the property is occupied by the borrower. Alternatively, Mr. Burgess stated Nationstar would rekey the same door and provide the sole key to the borrower if the borrower prefers. ECF No. 225 at ¶¶ 1, 13. Yet, Ms. Jordan argues that this statement is false and Nationstar refused to remove the lockbox or provide the key to her after the December 29, 2011 letter. ECF No. 240 at ¶ 6.

//

### B. Nationstar's Alleged Uniform Practice

Nationstar claimed it was entitled to enter Ms. Jordan and Class members' homes because of "entry provisions" in their deeds of trust allowing the lender to enter, change the locks, and maintain the property after default but before foreclosure. ECF Nos. 218 at ¶ 9; 227 at ¶ 9; 3-5 at 61 (Ex. 19). Plaintiff alleges that Nationstar employed a uniform policy of rekeying properties, Nationstar claims that a number of the Class members' properties were not rekeyed. Nationstar concedes that it ceased rekeying properties in July 2016. ECF Nos. 218 at ¶ 13; 227 at ¶ 13. Nationstar also performed "property preservation" measures, which included property inspections, rekeying and winterizing property, and boarding up doors and windows. ECF Nos. 218 at ¶ 14; 227 at ¶ 14.

Nationstar admits it has no policy requiring it to contact the borrower immediately before rekeying the property, but asserts that all borrowers gave Nationstar permission to enter their property prior to foreclosure. ECF No. 227 at ¶ 16. Nationstar maintains records of property preservation activities and produced a list of 5,131 properties that were reported vacant prior to foreclosure sale. ECF Nos. 217 at ¶¶ 18–19; 227 at ¶¶ 18–19. Nationstar charged lock-change fees totaling $535,376 to 3,433 loans on the Class list and property preservation fees totaling $8,904,077.16 to 4,680 of the loans on the Class list. ECF Nos. 217 at ¶¶ 21–22; 277 at ¶¶ 21–22. The parties dispute whether Class members' money or

property was used to pay the assessed property preservation fees. ECF Nos. 217 at ¶ 23; 227 at ¶ 23.

**C. Procedural History**

On April 3, 2012, Ms. Jordan filed her Complaint against Nationstar in Chelan County Superior Court. ECF No. 2-4. Ms. Jordan subsequently filed a First and Second Amended Complaint seeking class action relief. ECF Nos. 2-13; 2-19. In her Second Amended Complaint, Ms. Jordan asserted the following causes of action: trespass; intentional trespass, RCW 4.24.630; violation of the Consumer Protection Act, RCW 19.86 *et seq.*; and breach of contract. ECF No. 2-19 at 10–16. Ms. Jordan also asserted a violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, but the Court dismissed Ms. Jordan's individual FDCPA claim on August 10, 2015. ECF Nos. 2-19 at 11; 71 at 2. On May 9, 2014, the Chelan County Superior Court certified the Class, pursuant to Washington Court Rules 23(a), 23(b)(1), and 23(b)(3). ECF No. 1-3 (Ex. C). Thereafter, Defendant removed the action to this Court. ECF No. 1.

Nationstar then filed a partial summary judgment motion asking the Court to find that entry provisions are enforceable under Washington law. ECF No. 45 at 8–9. Ms. Jordan moved for partial summary judgment requesting the Court to find that before a lender can lawfully act upon the entry provisions, the lender is first required to obtain the borrower's post-default consent or permission from a court.

ECF No. 61 at 8.  The Court certified both questions to the Washington Supreme Court and stayed the case.  ECF No. 72 at 3, 9–10.

On July 7, 2016, the Washington Supreme Court entered its decision finding the entry provisions in direct conflict with Washington law and, therefore, unenforceable.  ECF No. 89 at 5.  Further, the Washington Supreme Court determined that receivership, as defined by chapter 7.60 RCW, is not the exclusive remedy for a lender to gain access to a borrower's property.  *Id.*  As a result, on July 21, 2016, this Court denied the parties' cross-motions for partial summary judgment (ECF Nos. 45 and 61), and lifted the stay.  ECF No. 80.  Nationstar then moved to reconsider the denial of its partial summary judgment motion (ECF No. 82), which the Washington Supreme Court denied and filed its Certificate of Finality on September 2, 2016.  ECF No. 89.

On September 6, 2017, this Court denied Defendant's Motion to Decertify Class and certified a slightly redefined Class.  ECF No. 207.  Ms. Jordan then filed a Motion for Partial Summary Judgment.  ECF No. 217.

## DISCUSSION

Summary judgment as to a "claim or defense–or the part of each claim or defense" is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  For purposes of summary judgment, a fact is "material" if it might affect the

outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is "genuine" where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* The moving party bears the initial burden of showing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *Anderson*, 477 U.S. at 256.

In ruling on a motion for summary judgment, the court views the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court must only consider admissible evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002). There must be evidence on which a jury could reasonably find for the plaintiff and a "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

Nationstar contends that to prevail on summary judgment, Ms. Jordan must prove each element of every Class member's claim. ECF No. 222 at 10 (citing *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1051 (2016) (Roberts, C.J., concurring)). In Justice Robert's concurring opinion, he stated that respondents had to establish the amount of compensable time for each individual plaintiff to prove liability and damages. Yet, Justice Roberts agreed with the Court that

despite the differences in time for each class member, respondents could prove the amount of time through generalized, class-wide proof using a study and representative evidence. *Tyson Foods*, 136 S.Ct. at 1051. Nationstar misinterprets the necessity of proving each element of each class member's claim when the Supreme Court concluded that generalized, class-wide proof was sufficient to establish damages.

### A.   Applicable Class Members Affected by this Motion

The Court first addresses the parties' dispute as to which Class members are included in this Motion. While Nationstar contends that Ms. Jordan must prove every element for each Class member, the Court finds that partial summary judgment is appropriate for some Class members so as to narrow the issues for trial. The Court determines that the instant Motion only applies to those Class members who had their locks rekeyed prior to foreclosure.

Nationstar argues that at least one-third of the Class members did not have their locks rekeyed. ECF No. 222 at 11. According to Ms. Jordan, 3,433 loans were charged with lock-change fees totaling $535,376. ECF No. 218 at ¶ 21. Nationstar emphasizes that there were 5,132 properties identified as vacant and so Ms. Jordan fails to present evidence that locks were changed on the other 1,699 properties. ECF No. 222 at 11. In reply, Ms. Jordan asserts that Nationstar's summary data shows it changed the locks on the homes of 3,066 Class members

while they owned their homes.  ECF Nos. 237 at 9; 239 at ¶¶ 5–6.

Ms. Jordan concedes that there is a triable issue of fact for the rest of the Class on whether their locks were changed and she plans to present evidence at trial from Nationstar's records proving it performed lock changes on additional homes.  ECF No. 237 at 9.  Ms. Jordan further admits that any Class member who sold or disposed of his or her property prior to the lock change was not injured and suffered no damage.  *Id.* at 10.  Nationstar asserted that there were 115 such properties and Ms. Jordan's expert segregates these properties from its calculation of damages.  *Id.*; 224 at ¶ 2.  At oral argument, Ms. Jordan further clarified that the Class is only seeking partial summary judgment for those members who had their locks changed prior to foreclosure.

Nationstar asserts that there is a triable issue as to whether Ms. Jordan and other borrowers consented to the rekeying of their properties.  ECF No. 222 at 12.  Nationstar cites that, in February 2011, Ms. Jordan told Nationstar that she did not intend to make future payments, had no interest in keeping the property, and wanted to foreclose.  *Id.*  Yet, Ms. Jordan merely stated that "she had used up all her savings.  And has no intent to pay …"  ECF Nos. 3-3 at 15 (Ex. 50); *see* 166-1 at 3 (Ex. 1).  There is no evidence that she consented to the lock change, which made her believe she had to move out of her home.  ECF No. 166-1 at 9 (Ex. 1).  Additionally, Nationstar contends that other borrowers arguably consented to

Nationstar's rekeying of their doors, such as Steven Siegfried, Stacy Powers, and David Lalonde. ECF No. 222 at 13.

At oral argument, Ms. Jordan asserted that the issue of consent is not relevant to the instant motion, but should be asserted as an affirmative defense at trial. However, borrowers who consented to the rekeying of their homes are already excluded from the Class definition, which states "entering a Class member's property without notice to the Class member; and/or without the express contemporaneous consent of the Class member; and/or without permission of the court…" ECF No. 207 at 26. Therefore, the Court's ruling on this Motion only applies to those Class members who did not consent to the rekeying of their homes, thereby fitting within the Class definition, and at trial Nationstar may assert evidence of any individual class member's consent as a defense.

Additionally, Nationstar argues that Ms. Jordan fails to prove that some Class members have standing because approximately 547 Class members filed Chapter 7 bankruptcy petitions. ECF Nos. 222 at 12; 226 at ¶ 4. Ms. Jordan concedes that it may be appropriate to narrow the Class to exclude members who filed for bankruptcy after a lockout and enter judgment against members who surrendered their properties in bankruptcy proceedings. ECF No. 237 at 11.

The Court is not convinced that it should so easily dismiss this subclass. The bankruptcy code endows the bankruptcy trustee with the exclusive right to sue

on behalf of the estate. *Estate of Spirtos v. One San Bernardino Cty. Superior Court Case Numbered SPR 02211*, 443 F.3d 1172, 1176 (9th Cir. 2006). "[A] trustee, as the representative of the bankruptcy estate, is the proper party in interest, and is the only party with standing to prosecute causes of action belonging to the estate." *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004). "Section 541 of the Bankruptcy Code provides that virtually all of a debtor's assets, both tangible and intangible, vest in the bankruptcy estate upon the filing of a bankruptcy petition." *Id.* citing 11 U.S.C. § 541(a)(1) (providing that the bankruptcy estate includes "all legal or equitable interest of the debtor in property as of the commencement of the case"). "Such property includes causes of action belonging to the debtor at the commencement of the bankruptcy case." *Id.* "On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(b). "At the close of the bankruptcy case, property of the estate that is not abandoned under § 554 and that is not administered in the bankruptcy proceedings remains the property of the estate." *Parker*, 365 F.3d at 1272 (citing 11 U.S.C. § 554(d)).

Where an action is originally brought by a party other than the real party in interest, Rule 17 provides that a court "may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a

reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). If the real party in interest ratifies, joins, or is substituted, the "action proceeds as if it had been originally commenced by the real party in interest." *Id.*; *Copelan v. Techtronics Industries Co., Ltd.*, 95 F.Supp.3d 1230, 1234 (S.D.Cal. 2015).

Since the trustees of the 547 Chapter 7 bankruptcy cases have not been provided notice and an opportunity to ratify, join or be substituted, it is premature to dismiss these claims.

**B.      Trespass Claim**

To establish common law intentional trespass, a plaintiff must show "(1) an invasion of property affecting an interest in exclusive possession, (2) an intentional act, (3) reasonable foreseeability that the act would disturb the plaintiff's possessory interest, and (4) actual and substantial damages." *Ofuasia v. Smurr*, 198 Wash. App. 133, 149 (2017) (quoting *Grundy v. Brack Family Tr.*, 151 Wash. App. 557, 567 (2009)); *Bradley v. Am. Smelting & Ref. Co.*, 104 Wash. 2d 677, 692–93 (1985) ("(1) invaded the plaintiff's interest in the exclusive possession of his property, (2) been committed intentionally, (3) been done with the knowledge and reasonable foreseeability that the act would disturb the plaintiffs' possession, and (4) caused actual and substantial damages").

//

### 1. Invasion of property affecting an interest in exclusive possession

The Washington Supreme Court found "that Nationstar's conduct constituted possession" because its actions were representative of control. Rekeying the door had the "effect of communicating to Jordan that Nationstar now controlled the property." ECF No. 89 at 15–16. The Washington Supreme Court emphasized that even though Ms. Jordan had access to the lockbox, she "could no longer access her home without going through Nationstar." *Id.* at 16. Therefore, the Washington Supreme Court determined that Nationstar "effectively ousted" Ms. Jordan when it changed the locks and exercised control of the property. *Id.*

The Court finds there is no genuine issue of material fact as to whether Ms. Jordan suffered an invasion of her right to exclusive possession. The Court also determines that those Class members who had their homes rekeyed meet the first element of the intentional trespass claim. Accordingly, the Court concludes that the first element of common law trespass is met for all such Class members as they were either effectively ousted from their homes or, at a minimum, were no longer in exclusive possession.

### 2. Intentional act

At oral argument, Nationstar conceded that it did not submit evidence to contravene this issue. It is clear Nationstar intended to change the locks on the doors of borrowers' homes, but Nationstar claims it did not intend to exclude Class

members from their homes because it made a key available. The Washington Supreme Court found this lockbox argument insufficient, determining that the lockbox was an expression of control and Ms. Jordan could not access her home without going through Nationstar as a "middle man." ECF Nos. 89 at 16; 217 at 15. The Court agrees that Nationstar acted intentionally in excluding Class members from exclusive possession of their homes by installing lockboxes.

### 3. Reasonable foreseeability that the act would disturb possessory interest

Nationstar also admitted that it did not submit evidence to contravene this element at oral argument. The Court finds that it was reasonably foreseeable that Nationstar's action of changing the locks would interfere with Class members' possessory interest. The Washington Supreme Court determined that Nationstar's action left Ms. Jordan without a way of entering her property and she was only able to access her home through Nationstar. ECF No. 89 at 16. Accordingly, the Court finds that the third element of the intentional trespass claim is met because changing locks on debtors' homes is a reasonably foreseeable interference of their possessory interest.

### 4. Actual and substantial damages

Ms. Jordan alleges that Class members are entitled to the amount Nationstar charged for the installation of the lock and the fair market rental value of their

homes during Nationstar's possession.  ECF No. 217 at 16.  Nationstar disputes that Ms. Jordan can prove actual and substantial damages.  ECF No. 222 at 14.

"Damages for a temporary invasion or trespass are the cost of restoration and the loss of use."  *Olympic Pipe Line Co. v. Thoeny*, 124 Wash. App. 381, 393–94 (2004).  As already determined by the Washington Supreme Court, the lock change effectively ousted the borrowers and thus, Nationstar's argument that the lockbox caused no substantial harm and that the owner did not need to replace the lock to enjoy possession of his or her home is rejected.  ECF Nos. 89 at 16; 222 at 15.  Therefore, the cost of restoring the home to its original state prior to rekeying the properties is properly estimated by Nationstar's lock-change fees totaling $535,376 to 3,433 loans on the Class list.  ECF Nos. 217 at 16, 166 at ¶ 14.

Additionally, Ms. Jordan and Class members are entitled to the fair market rental value of their homes.  The Washington Supreme Court has held that when a mortgagee takes possession of a mortgaged property without the consent of the owner, the owner is entitled to reasonable rent.  *Howard v. Edgren*, 62 Wash.2d 884, 886 (1963); *see* ECF No. 217 at 27.  The Class submitted its expert report calculating the reasonable rental value of each Class member's home from the time Nationstar changed the locks until the date the loan was brought current or the house sold.  ECF Nos. 217 at 28–29; 196 at ¶ 2.  Ms. Jordan admits that the accuracy of these calculations is a factual question for trial and thus only requests

entry of judgment declaring that each Class member is entitled to recover the reasonable rental value. ECF No. 217 at 29. At oral argument, Nationstar asserted that many class members continued to occupy their properties and thus [full] fair rental value would not be appropriate.

The Court finds that Class members are entitled to the cost of restoration regarding the rekeying of the debtors' locks, equivalent to Nationstar's lock change fees in the amount of $535,376. Class members are also entitled to the reasonable rental value from the date Nationstar locked a house to the cure of any default or when the property was properly liquidated, the exact calculation to be determined at trial. Nationstar may supply evidence at trial as to those Class members who continued to occupy their homes after rekeying and their damages may be reduced accordingly, but this issue is reserved for trial.

### 5. Statute of limitations issue

Nationstar contends that some Class members' claims are barred by the statute of limitations. ECF No. 222 at 17. Nationstar argues that while the Class is comprised of borrowers whose properties were deemed abandoned by Nationstar within four years of the filed complaint, the statute of limitations for trespass upon real property is only three years. *Id.* at 17–18; RCW 4.16.080(1). Yet, Ms. Jordan emphasizes that the earliest lock change the Class relied on occurred on September 2, 2011. ECF Nos. 237 at 16; 238 at ¶ 10. Nationstar fails to provide specific

Class members or a general number of those borrowers who do not fall within the trespass statute of limitations. The Court determines that should Nationstar provide this information at trial, then those Class members may properly be excluded. The possibility of such borrowers' existence at the summary judgment stage does not create a genuine issue of material fact to preclude partial summary judgment.

Accordingly, the Court concludes that all Class members whose homes were rekeyed are entitled to summary judgment on their intentional trespass claim, as there is no genuine issue of material fact.

### C.     CPA Claim

Under RCW 19.86.020, the CPA requires a plaintiff to establish: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; and (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Titles Ins. Co.*, 105 Wash.2d 778, 780 (1986).

### 1. Unfair or deceptive act or practice

The question of whether an act or practice is unfair or deceptive is a question of law. *Panag v. Farmers Ins. Co. of Washington*, 166 Wash.2d 27, 47 (2009) (citing *Leingang v. Pierce Cty. Med. Bureau, Inc.*, 131 Wash.2d 133, 150 (1997)). The Washington Supreme Court has held that "a claim under the Washington CPA

may be predicated upon a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." *Klem v. Washington Mut. Bank*, 176 Wash.2d 771, 787 (2013). An act or practice can be unfair without being deceptive because the "or" is disjunctive. *Id.* The Court addresses both prongs in order to illustrate that Nationstar's practice is both unfair and deceptive.

First, Nationstar's practice of rekeying the locks prior to foreclosure is unfair. The Washington Supreme Court held that changing the locks on a person's home prior to foreclosure violates RCW 7.28.230. ECF No. 89 at 17. While Plaintiff conceded at oral argument that changing the locks was not a per se CPA violation, she argued that the act is still illegal and thus unfair. The Washington Supreme Court noted, "What is illegal and against public policy is per se an unfair trade practice." *Hangman Ridge*, 105 Wash.2d at 786. The illegal act of rekeying a borrower's home is then an unfair practice under this standard.

Nationstar emphasizes the standard outlined in *Klem* that a practice is unfair if it "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and is not outweighed by countervailing benefits." *Klem*, 176 Wash.2d at 787 (citation and quotation

omitted).[3] Nationstar contends that the practice is not unfair because the rekeying did not cause substantial injury. This Court disagrees because, as the Washington Supreme Court found, Nationstar exercised its control over Class members' homes and in Ms. Jordan's case, effectively ousted her from her home. ECF 89 at 16.

Additionally, Nationstar asserts that Class members could have avoided injury by not defaulting on their loans and abandoning their properties. ECF No. 222 at 20. Yet, there is no evidence that Ms. Jordan abandoned her property when she left for work in the morning and returned in the evening to find her home locked. ECF No. 166-1 at 5–6 (Ex. 1). It is not illegal to default on a loan or even abandon property. Nationstar had other lawful remedies it could have pursued short of repossessing the property in violation of Washington law. Nationstar's contention that the alleged countervailing benefits outweighs the substantial injury is also not persuasive. The benefit of repairing a roof, winterizing a home, or

---

[3] This statement was considered dicta by a later case, which noted that this standard is "one, but not the only, meaning of 'unfair act or practice.'" *Deegan v. Windermere Real Estate/Ctr.-Isle, Inc.*, 197 Wash. App. 875, 889 n.47 (2017) (citations omitted). Here, both parties address this standard and thus the Court will consider it in determining unfairness.

maintaining a pool or lawn does not outweigh the injury of being ousted from one's home. ECF Nos. 222 at 20; 181 at ¶ 11. Examples of maintenance and one isolated incident of repairing a roof does not negate the substantial injury here. Therefore, Nationstar's rekeying of homes was an unfair practice under both standards, as it was an illegal act and caused substantial injury.

Second, Nationstar's practice is also deceptive. "A plaintiff need not show that the act in question was *intended* to deceive, but that the alleged act had the *capacity* to deceive a substantial portion of the public." *Hangman Ridge*, 105 Wash.2d at 785 (citation omitted, emphasis in original); *Panag*, 166 Wash.2d at 47. Here, Nationstar asserts that each Class member entered into a deed of trust allowing Nationstar to enter their properties following abandonment and that Nationstar could reasonably protect their property. ECF No. 222 at 21. Yet, the Washington Supreme Court held that these entry provisions were unenforceable and violated Washington law. ECF No. 89 at 17. Therefore, Nationstar's practice of rekeying homes was deceptive because it had the capacity to lead borrowers to believe they could no longer occupy their homes, which conduct is illegal under Washington law.

Additionally, Nationstar's practice of posting a notice sign within the window of a borrower's home was deceptive. The notice stated that the property was found unsecure or vacant and was locked to protect the interest of the owner

and mortgagee in accordance with the terms of the mortgage. ECF No. 166-4 at 3 (Ex. 36-4). The sign also stated, "The key will be available to the owner of the property or the representative only." *Id.* After reading this sign, Ms. Jordan called the number listed for further information and believed that she had to move out of her home and was only able to enter to remove her personal items. ECF No. 166-1 at 9 (Ex. 1). This belief highlights that the notice had the capacity to deceive the borrowers into believing they could no longer live in their homes when they found their doors locked and a sign posted that the mortgagee locked it in accordance with the mortgage.

Accordingly, the Court concludes that Nationstar's practice of rekeying homes before foreclosure was unfair and deceptive, thus satisfying the first element of the CPA claim.

**2. Trade or commerce**

Nationstar does not address whether the second element of the CPA claim is met and it is clear that Nationstar's practice of rekeying homes was conduct occurring in trade or commerce. Under RCW 19.86.010, trade or commerce is defined as "any commerce directly or indirectly affecting the people of the state of Washington." RCW 19.86.010(2); *Panag*, 166 Wash.2d at 39. A consumer or business relationship is not required between the plaintiff and the actor, but merely that the violation causes injury to the plaintiff's business or property. *Panag*, 166

Wash.2d at 39. Here, there was a business relationship between the borrowers and Nationstar, but the violation also caused injury to the borrowers' property by changing the locks. Therefore, the Court finds that the second element of the CPA claim is met.

### 3. Public interest impact

Nationstar also does not contest the public interest element, which is met. In a consumer transaction there are five relevant factors in accessing public interest: (1) whether the alleged acts were committed in the course of defendant's business; (2) whether the acts were part of a pattern or generalized course of conduct; (3) whether repeated acts were committed prior to the act involving plaintiff; (4) whether there is a real and substantial potential for repetition of defendant's conduct after the act involving plaintiff; and (5) if the act involved a single transaction, whether many consumers were affected or likely to be affected. *Hangman Ridge*, 105 Wash.2d at 790.

Here, Nationstar's practice of rekeying homes was committed in the course of its business and was part of its uniform practice of rekeying allegedly abandoned homes. It is less likely that Nationstar will repeat its practice after the Washington Supreme Court ruled it was unlawful, but many consumers were still affected. Ms. Jordan alleges that 5,131 Washington homeowners were affected.

1  ECF No. 217 at 22.  Overall, these factors illustrate that public interest is impacted

2  and the third element is met.

3  **4. Injury to business or property**[4]

4  Injury is defined "liberally to include when 'the plaintiff's property interest

5  or money is diminished … even if the expenses caused by the statutory violation

6  are minimal." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1135 (9th Cir. 2016)

7  (citing *Panag*, 166 Wash.2d at 57).  The Ninth Circuit emphasized that this

8  element has only been used to exclude suits for personal injury or emotional

9  distress and that the injury "need not be great, or even quantifiable." *Id.* (citation

10  omitted).

11  Here, borrowers who had their homes rekeyed prior to foreclosure suffered

12  injury to their property, which the Washington Supreme Court determined ousted

13  them from their homes.  ECF No. 89 at 16.  The Class members were harmed by

14  the drilling and removal of their own locks, the installation of replacement locks,

15  and the entrance of Nationstar into their homes.  ECF No. 166-7 at 14–15 (Ex. 7).

16

17  [4] Nationstar argues that Ms. Jordan and Class members do not establish the

18  fourth element because some members did not have their locks rekeyed, but the

19  Court already ruled that it will only address the claims of Class members who had

20  their homes rekeyed before foreclosure.  ECF No. 222 at 22.

Under this broad definition of injury, the Court finds that the Class members' property was diminished and thus they suffered injury.

**5. Causation**

Under the final element, "[a] plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury." *Schnall v. AT&T Wireless Servs., Inc.*, 171 Wash.2d 260, 278 (2011). Here, the Class members are able to establish proximate cause because the injury to their property was caused by Nationstar rekeying their homes. But for Nationstar's unfair and deceptive practice of rekeying homes before foreclosure according to its unlawful entry provisions, the Class members would not have suffered the injury of having new locks put onto their doors and being ousted from their homes.

Accordingly, the Court concludes that Ms. Jordan and Class members have established their CPA claim for all members who had their homes rekeyed by Nationstar prior to foreclosure. The Court grants summary judgment for all such Class members.

**D.   Damages**

**1. Physical injuries to properties and fair market rental value**

As discussed above, the Court determined that Class members who had their homes rekeyed prior to foreclosure are entitled to $535,376 for lock changes.

Plaintiff argues that this amount may be trebled under the CPA, but "such increased damage award for violation of RCW 19.86.020 may not exceed twenty-five thousand dollars." RCW 19.86.090; but see *Smith v. Behr Process Corp.*, 113 Wash. App. 306, 346, 54 P.3d 665, 686 (2002) ("Although the decision to award treble damages is discretionary, the trial court erred in concluding that it had no discretion [to award treble damages] as to the represented class members."). The Court reserves this issue of trebled damages under the CPA until trial on the remaining actual damages.

The Court also previously determined that Class members are entitled to the fair market rental value during the time in which Nationstar rekeyed their homes to when the default was cured or the property was liquidated. The exact calculation of the reasonable rental value is left as a factual question for trial.

**2. Disgorgement of ill-gotten profits**

Ms. Jordan also contends that Nationstar must disgorge the profits obtained by its trespass on the Class members' property. ECF No. 217 at 29. Ms. Jordan requests the amount of fees that Nationstar received from Class members for its property preservation services, excluding inspection fees because some were performed without entry onto the properties. *Id.* at 30. Ms. Jordan asserts that Nationstar should not be permitted to retain the benefits from its unlawful trespass on Class members' property. ECF No. 237 at 30 (citing *Restatement (Third) of*

*Restitution and Unjust Enrichment* § 40 (2011)).  Ms. Jordan asserts that some

Class members paid the fees when they sold their homes, obtained loan

modifications, or brought their loans current.  *Id*.  Others fees were paid to

Nationstar from foreclosure or short sale proceeds.  *Id*.

Nationstar asserts that Ms. Jordan did not pray for disgorgement of these

profits in her complaint.  ECF No. 222 at 26.  At oral argument, Nationstar

emphasized that there can be no disgorgement because the Class members did not

pay any preservation fees.

"Under Washington law, disgorgement of fees is a remedy "—not a cause of

action.  *Block v. Law Offices of Ben F. Barcus & Assocs., PLLC*, 189 Wash. App.

1006 (2015) (citation omitted); see also *Young v. Young*, 164 Wash. 2d 477, 487–

88 (2008) ("the trial court . . . has tremendous discretion to fashion a remedy "to do

substantial justice to the parties and put an end to the litigation.").  Plaintiff sought

other just and equitable relief in her Second Amended Complaint for Damages.

ECF No. 2-19 at 15.  Accordingly, disgorgement is an available remedy.

The Court reserves application of the disgorgement remedy for trial as

genuine disputes of material fact remain and more evidence is required to make a

determination.

//

//

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Partial Summary Judgment (ECF No. 217) is

    **GRANTED in part**, as indicated herein. Partial summary judgment is

    **GRANTED** as to liability for common law trespass and Consumer

    Protection Act violations for all Class members who had their properties

    rekeyed prior to foreclosure.

2.  The District Court Executive is directed to enter this Order and furnish

    copies to counsel.

    **DATED** November 21, 2017.



THOMAS O. RICE
Chief United States District Judge