1    John A. Knox, WSBA #12707                     HON. THOMAS O. RICE
     WILLIAMS, KASTNER & GIBBS PLLC
2    601 Union Street, Suite 4100
     Seattle, WA 98101-2380
3    Telephone:  (206) 628-6600
4    Fax:  (206) 628-6611
     Attorneys for Defendant
5
     [Additional Counsel Appear On Last Page]
6

7                       UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF WASHINGTON
8

9    LAURA ZAMORA JORDAN,                    NO. 2:14-cv-00175 TOR

10           Plaintiff,                      **NATIONSTAR MORTGAGE
                                             LLC'S TRIAL BRIEF**
11       v.

12   NATIONSTAR MORTGAGE, LLC,

13           Defendant,

14       and

15
     FEDERAL HOUSING FINANCE
16   AGENCY,

17           Intervenor.

18

19

20

21

22

23

80001.0006/11006366.1 NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF
6254522.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

TABLE OF CONTENTS

*Page*

1  I.    INTRODUCTION .................................................................1

2  II.   JORDAN CANNOT PROVE HER STATUTORY TRESPASS
3        CLAIM ............................................................................4

4        A.    Nationstar Had No Actual Or Constructive Knowledge That It
             Lacked Authorization.................................................5

5        B.    Statutory Trespass Applies To Lock Change Damages Only ..............10

6  III.  JORDAN AND THE CLASS ARE NOT ENTITLED TO THE
7        DAMAGES SHE SEEKS ...................................................11

8        A.    Class Members Cannot Recover Property Preservation Fees..............11

9              1.    Property Preservation Fees Are Not Recoverable Under
                   The CPA ..............................................................11

10             2.    Class Members Cannot Recover Both Rent And Profit .............13

11             3.    No Disgorgement May Be Recovered For Post-
12                  Foreclosure Property Preservation Fees ...................14

13             4.    Nationstar Did Not Profit From Reimbursement Of
                   Property Preservation Costs It Advanced.................15

14             5.    Any Recovery Of Property Preservation Fee "Profits"  Is
15                  Fully Offset Under The Special Benefits Rule..........16

16       B.    Jordan Miscalculates Rental Value Damages .....................17

17             1.    Kilpatrick Ignores Ownership of the Property ..........17

18             2.    Kilpatrick's Study Wrongly Awards Re-Occupiers Full
19                  Damages.................................................................18

20             3.    Kilpatrick's Study Ignores The Avoidable Consequences
                   Doctrine ..........................................................19

21             4.    Kilpatrick Miscomputes The Rental Value Period...................19

22                  (a)    Kilpatrick Uses Incorrect Beginning Dates.....................20

23                  (b)    Kilpatrick Uses Wrong Ending Dates .............................20

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - i
6254522.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

TABLE OF CONTENTS

*Page*

5.    Kilpatrick Uses Improperly Inflated Rental Values ...................21

(a)    Kilpatrick's AVM Method Wrongly Inflates
Rental Value ........................................................................21

(b)    Kilpatrick Fails To Deduct Ownership Expenses
Nationstar Paid ..................................................................22

(c)    Full Rental Value Is Inappropriate For Limited
Interference ........................................................................25

C.    Lock Change Damages Should Be Awarded Only To Owners............27

D.    The Court Should Not Treble Damages Under The CPA ...................30

IV.    TRIAL PROCEDURES ..........................................................................32

A.    A Class Action Does Not Alter A Claim's Elements Or Burden
Of Proof................................................................................32

B.    Jordan's Burden Of Proving The Three Major Individual Issues........34

C.    The Burden Of Proving These Individual Issues
Cannot Be Shifted To Nationstar ..........................................38

D.    The Court's Proposed Method For Handling Bankrupt Class
Members Would Violate Rule 23's Prohibition On One-Way
Intervention ........................................................................39

V.    CONCLUSION ...........................................................................41

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - ii
6254522.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

# TABLE OF AUTHORITIES

*Page(s)*

*CASES*

*Allen v. Mickelson*, 43 Wn.2d 509 (1953) ........................................................... 17, 35

*Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974) ....................................... 40, 41

*Bailey v. Outdoor Media Grp.*,
    155 Cal.App.4th 778, 66 Cal.Rptr.3d 322 (2007) ............................................. 15

*Bert Kuty Revocable Living Tr. ex rel. Nakano v. Mullen*,
    175 Wn. App. 292 (2013) ................................................................................... 12

*Blaz v. Belfer*, 368 F.3d 501 (5th Cir. 2004) ........................................................... 32

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) ................... 3, 33, 35

*Cimino v. Raymark Industries, Inc.*, 151 F.3d 297 (5th Cir. 1998) ...................... 3, 33

*Clipse v. Michels Pipeline Const., Inc.*, 154 Wn. App. 573 (2010) ..................... 4, 10

*Columbia & P.S.R. Co. v. Histogenetic Medicine Co.*,
    14 Wash. 475 (1896) ........................................................................................... 25

*Cracchiolo v. State*, 146 Ariz. 452, 706 P.2d 1219 (Ariz. App. 1985) ................... 26

*Demopolis v. Galvin*, 57 Wn. App. 47 (1990) ......................................................... 11

*DeNike v. Mowery*, 69 Wn.2d 357 (1966) ............................................................... 24

*Eastlake Const. Co. v. Hess*, 102 Wn.2d 30 (1984) ................................................ 24

*Fairchild v. Wilson*, 168 S.W. 409 (Tex. App. 1914) .............................................. 26

*Fireman's Fund Mortgage Corp. v. Zollicoffer*,
    719 F.Supp. 650 (N.D. Ill. 1989) ....................................................................... 7

*Harbeson v. Parke-Davis, Inc.*, 98 Wn.2d 460 (1983) ........................................... 16

*Howard v. Edgren*, 62 Wn.2d 884 (1963) ............................................................... 25

*In re Kelly*, 643 Fed. Appx. 400 (5th Cir. 2016) ................................................... 3, 24

*Jordan v. Nationstar Mortgage, LLC*, 185 Wn.2d 876 (2016) ................... 5, 7-10, 36

*Katz v. Carte Blanche Corp.*, 496 F.2d 747 (3d Cir. 1974) .................................... 40

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - iii

6254522.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

## TABLE OF AUTHORITIES

*Page(s)*

*CASES*

*Kim v. O'Sullivan*, 133 Wn. App. 557 (2006) .........................................................24

*Kohne v. White*, 12 Wash. 199 (1895) ....................................................................24

*Krejci v. Capriotti*, 16 Ill.App.3d 245, 305 N.E.2d 667 (1973) ...............................13

*Lightfoot v. MacDonald*, 86 Wn.2d 331 (1976) .....................................................30

*Martin v. Comcast Cablevision Corp. of California, LLC*,
    338 P.3d 107 (N.M. App. 2014)..........................................................................13

*Miller v. Ghirardelli Chocolate Co.*,
    No. 12–cv–04936–LB, 2015 WL 758094 (N.D. Cal. 2015)..........................35

*Morales v. Riley*,
    28 A.D.3d 623, 813 N.Y.S.2d 518 (N.Y. App. Div. 2006)..........................26

*N. Shore Energy, L.L.C. v. Harkins*, 501 S.W.3d 598 (Tex. 2016) .........................16

*Obermiller v. Baasch*, 284 Neb. 542, 823 N.W.2d 162 (2012)................................16

*Odmark v. Westside Bancorporation, Inc.*,
    No. C85-1099R, 1988 WL 108288 (W.D. Wash. 1988) ..............................31

*Ofuasia v. Smurr*, 198 Wn. App. 133 (2017) ........................................................10

*Penn Furniture Co. v. Ratliff*, 194 Ky. 162, 238 S.W. 393 (1922) .........................26

*Pepper v. J.J. Welcome Const. Co.*, 73 Wn. App. 523 (1994) ...............................24

*Phillips v. King Cty.*, 87 Wn. App. 468, 490 (1997) ...............................................24

*Platts v. Arney*, 50 Wn.2d 42 (1957) ....................................................................24

*PSG Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    417 F.2d 659 (9th Cir. 1969)..............................................................................15

*Pugel v. Monheimer*, 83 Wn. App. 688 (1996) .....................................................24

*Rex v. Chase Home Fin. LLC*, 905 F.Supp.2d 1111 (C.D. Cal. 2012)....................12

*Robert v. Scarlata*, 96 Conn.App. 19, 899 A.2d 666 (2006)....................................26

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

TABLE OF AUTHORITIES

*Page(s)*

CASES

*Rounds v. Union Bankers Ins. Co.*, 22 Wn. App. 613 (1979) ...................................30

*Safeco Ins. Co. v. Burr*, 551 U.S. 47 (2007).........................................................8, 10

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) ...........................................................................3, 32, 33

*State v. Anderson*, 72 Wn. App. 253 (1993)...............................................................36

*St. Paul Fire & Marine Ins. Co. v. Updegrave*, 33 Wn. App. 653 (1983) ...............30

*Sw. Bell Tel. Co. v. Hamil*, 116 S.W.3d 798 (Tex. App. 2003)................................26

*Tyson Foods, Inc. v. Bouaphakeo*,
    __ U.S. __, 136 S. Ct. 1036 (2016) ..................................................................34

*United Truck Rental Equip. Leasing, Inc. v. Kleenco Corp.*,
    84 Haw. 86, 929 P.2d 99 (Haw. App. 1996)...................................................24

*Villa v. San Francisco Forty-Niners, Ltd.*,
    104 F.Supp.3d 1017 (N.D. Cal. 2015) ............................................................41

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)..............................................34

*Young v. Young*, 164 Wn.2d 477 (2008)....................................................................27

*Young v. Widbey Island Bd. of Realtors*, 96 Wn.2d 729 (1982) ..................19, 31, 32

STATUTES

United States Code
    Title 28, section 2072 .......................................................................................32

Code of Federal Regulations
    Title 24, section 203.377 .....................................................................................6
    Title 38, section 36.4350 .....................................................................................6

Federal Rules of Civil Procedure
    Rule 17..............................................................................................................41
    Rule 23....................................................................................................32, 40, 41

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - v

6254522.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

TABLE OF AUTHORITIES

*Page(s)*

*STATUTES*

California Civil Code
    Section 3334 .................................................................................13

Revised Code of Washington (RCW)
    RCW 4.24.630 ..............................................................1, 4, 5, 10, 11
    RCW 7.28.230 ........................................................................6, 37
    RCW 19.86.090 ............................................................11, 30, 34
    RCW 59.04.050 ........................................................................36, 37
    RCW 61.24.070 ........................................................................12
    RCW 61.24.080 ........................................................................13


*OTHER AUTHORITIES*

Comment, Reasonable Attorneys' Fees and Treble Damages—
    Balancing the Scales of Consumer Justice,
    10 Gonz.L.Rev. 593 (1975) ...............................................30

Fannie Mae Single Family 2012 Servicing Guide (Mar. 14, 2012)
    Part III, sections 301-303 .................................................6

Freddie Mac Single-Family Seller/Servicer Guide (2014)
    Sections 65.30, 65.33, 65.34, 67.27, 67.28 .......................6

Daniel Friedmann, Restitution for Wrongs: The Measure of Recovery,
    79 Tex. L. Rev. 1879 (2001) .............................................13

HUD Handbook 4330.1 REV-5(Sept. 29, 1994)
    Section 9-9 .......................................................................6

Restatement (Third) of Restitution
    Section 40 ...............................................................13, 14, 26-27
    Section 51 ........................................................................15

Restatement (Second) of Torts
    Section 920 ......................................................................16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - vi
6254522.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

# I.

## INTRODUCTION

Nationstar Mortgage LLC ("Nationstar") submits this trial brief, mindful of the rulings that have already been entered by both this Court and the Washington Supreme Court. It understands that certain issues have been decided in Jordan's favor. However, contrary to Jordan's assertions, many factual and legal issues remain to be resolved at trial.

Jordan's effort to treble the already outsized damages she seeks should be denied. Nationstar performed property preservation activities in good faith, following procedures that were authorized by the borrowers' deeds of trust and that Nationstar, like all other servicers of Washington loans believed were perfectly legal, as did the FHA and GSEs[1] and Washington state regulators. A divided Washington Supreme Court has since held that the entire industry was wrong in this regard. But Nationstar could not forecast that result any better than this Court could. No credible evidence will be offered to show that Nationstar knew or should have known it lacked authorization for its conduct. For that reason, this Court should deny trebling under Washington's Consumer Protection Act ("CPA") as well as under RCW 4.24.630, the statutory trespass statute.

For several reasons, the Court should also deny Jordan's claim for "disgorge-

---

[1]    The Government Sponsored Entities or GSEs are Fannie Mae and Freddie Mac, both in conservatorship under the supervision of intervenor Federal Housing Finance Agency ("FHFA").

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 1
6254522.2

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1    ment" of property preservation fees. Those fees are not recoverable under the CPA

2    because they do not represent injury to class members' business or property.  Jordan

3    cannot show class members paid those fees, so they are not recoverable as damages.

4    The fees cannot be ordered disgorged on an unjust enrichment theory if the Court

5    awards rental value damage since doing so would allow class members double

6    recovery for Nationstar's alleged "occupation" of class members' properties.

7    Moreover, Nationstar did not profit and received no unjust benefit from the property

8    preservation fees.  The fees were charged in an effort to recoup amounts it expended

9    to preserve the properties, thereby benefiting the property and its class member

10    owner by an amount that must be offset under the special benefits doctrine.

11         The Court should also reject Jordan's request for millions of dollars in

12    supposed rental value damages.  Her only evidence on that issue is an expert report

13    that is rife with error, arriving at a damages estimate vastly in excess of fair and

14    reasonable compensation for Nationstar's limited "occupancy" of class members'

15    houses for a variety of reasons including those explained below.

16         The expert's report and his methodology ignore the class definition, this

17    Court's legal rulings, and the legally required elements for an award of rental value

18    damages, and are statistically invalid.  The expert used an improper and needlessly

19    complicated method for estimating rental value, relying on data from non-

20    comparable rental listings, and failing to take into account pertinent individual

21    characteristics of the properties, such as their condition.  The expert also used

22    incorrect beginning and ending dates for his rental value damage calculations, based

23    on assumptions that lack evidentiary support and are factually incorrect.

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 2
6254522.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1    In addition, Jordan's expert vastly increases the supposed rental value dam-

2    ages by improperly relying on gross rental values without proper reduction for

3    expenses of ownership, such as property taxes, insurance and maintenance costs,

4    that class members avoided, forcing Nationstar to pay those expenses during the

5    period it supposedly occupied their houses.  Class members also did not pay the

6    most significant cost of homeownership during that period:  their mortgage obliga-

7    tions.  Awarding gross rental value without deducting for ownership expenses that

8    Nationstar paid and class members did not would give class members an unwar-

9    ranted windfall, not just compensation.  A recent Fifth Circuit decision so holds.  *In*

10    *re Kelly*, 643 Fed. Appx. 400, 403-04 (5th Cir. 2016).

11    Certification of this case as a class action merely allows this Court to adjudi-

12    cate many parties' claims at once.  It leaves the parties' legal rights and duties intact

13    and the rules of decision unchanged.  *Shady Grove Orthopedic Assocs., P.A. v. All-*

14    *state Ins. Co.*, 559 U.S. 393, 407 (2010).  Certification "does not alter the required

15    elements that must be found to impose liability and fix damages (or the burden of

16    proof thereon)."  *Cimino v. Raymark Industries, Inc.*, 151 F.3d 297, 312 (5th Cir.

17    1998).  Hence, at trial, "the plaintiff class must carry the burden of proving every

18    element of its claims to prevail on the merits."  *Briseno v. ConAgra Foods, Inc.*,

19    844 F.3d 1121, 1131 (9th Cir. 2017).  Neither Jordan nor the Court may lighten that

20    burden or simplify the case by shifting the burden of proof or omitting elements of

21    Jordan's claims that are difficult or impossible for her to prove on a classwide basis.

22    Four issues, in particular, will require individual proof at trial: (1) a lock on

23    the class member's house was rekeyed before foreclosure; (2) the class member

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 3
6254522.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1  owned the property at the time a lock was rekeyed and continued to do so through-

2  out the period during which rental value damages are sought; (3) the class member

3  did or did not continue occupying or reoccupy the house after the lock was rekeyed;

4  and (4) the class member did or did not give post-default consent to Nationstar's

5  actions.

6      Since entitlement and amount of any damages awardable to a class member

7  depend on that individual evidence, proof on these issues cannot be avoided or

8  curtailed. Once the Court has heard the evidence and considered the authorities

9  cited below, it should enter a judgment that justly compensates class members for

10  any real loss suffered but avoids conferring the vast windfall Jordan seeks.

## II.

## JORDAN CANNOT PROVE HER STATUTORY TRESPASS CLAIM

13      Jordan's statutory trespass claim under RCW 4.24.630 requires proof of all

14  the elements of her common law trespass claim, plus proof that Nationstar knew or

15  should have known it lacked authorization for its conduct. *See Clipse v. Michels*

16  *Pipeline Const., Inc.,* 154 Wn. App. 573, 574-75, 580 (2010). Jordan cannot prove

17  that critical element of the claim.

18      If Jordan were able to establish liability for statutory trespass, she could

19  recover treble damages, but only for injury to improvements. Of the damages

20  Jordan seeks, only the lock change damages could conceivably fit that description.

21  Nationstar continues to maintain that replacing one lock with another does not

22  constitute damage to the improvements, but it acknowledges that this Court has

23  ruled to the contrary in granting Jordan's motion for partial summary judgment.

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 4
6254522.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1    ECF No. 262 at 15-16.  The other damages Jordan seeks cannot be trebled under

2    RCW 4.24.630.

3    **A.    Nationstar Had No Actual Or Constructive Knowledge**
        **That It Lacked Authorization**

4
        Jordan cannot prove that Nationstar knew or should have known that it lacked

5
     authorization to enter class members' houses and change a lock on one door.

6
        The deed of trust's entry provisions expressly authorized that very conduct.

7
     Section 9 of the Fannie Mae/Freddie Mac Uniform Instrument provides:

8
                If (a) Borrower fails to perform the covenants and

9               agreements contained in this Security Instrument, … or
                (c) Borrower has abandoned the Property, then Lender

10              may do and pay for whatever is reasonable or appropriate
                to protect Lender's interest in the Property and rights

11              under this Security Instrument, including … securing
                and/or repairing the Property.  …  Securing the Property

12              includes, but is not limited to, entering the Property to
                make repairs, change locks, replace or board up doors and

13              windows, drain water from pipes, eliminate building or
                other code violations or dangerous conditions, and have

14              utilities turned on or off.

15
16   *See Jordan v. Nationstar Mortgage, LLC,* 185 Wn.2d 876, 883-84 (2016).

17       Nationstar had no actual or constructive knowledge that this express contrac-

18   tual authorization to enter and change a lock was unenforceable.  Quite to the

19   contrary, Nationstar had every reason to think the entry provision was entirely

20   proper and gave valid consent to entry.

21       The entry provisions have been included in every version of the Fannie Mae/

22   Freddie Mac Uniform Instruments and the FHA Model Mortgage since those form

23   documents were first promulgated in the early 1970s.  The GSEs and the FHA

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 5
6254522.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1   revise their form documents periodically, and in doing so attempt to assure that their

2   terms are in accordance with applicable law.

3        The GSEs and FHA went beyond drafting form loan documents that expressly

4   authorized entry and changing a lock on an abandoned property. The GSEs' servic-

5   ing guidelines and the FHA's Housing Handbooks required loan servicers to enter

6   and secure vacant or abandoned properties securing GSE-owned or FHA-insured

7   loans. *See* Fannie Mae Single Family 2012 Servicing Guide, Pt. III, §§ 301-303

8   (Mar. 14, 2012); Freddie Mac Single-Family Seller/Servicer Guide, §§ 65.30, 65.33,

9   65.34, 67.27, 67.28 (2014); 24 C.F.R. § 203.377 (FHA-insured loans); HUD

10  Handbook 4330.1 REV-5, § 9-9 (Sept. 29, 1994) (same); 38 C.F.R. §36.4350(i)

11  (VA-insured loans).

12       Nationstar reasonably relied on the GSEs and the FHA to research applicable

13  laws. Like all loan servicers in Washington and throughout the country, Nationstar

14  did as the GSEs' guidelines and FHA's handbooks directed. Nationstar also relied

15  on its property preservation vendors to notify Nationstar of state or local laws

16  affecting property preservation activities. These same vendors contract with and act

17  for other loan servicers as well. None of the vendors indicated there was any legal

18  impediment to entry and securing vacant properties in Washington. To assure legal

19  compliance, Nationstar also monitors new federal and state legislation and regula-

20  tions affecting its operations. However, RCW 7.28.230 has not been amended in

21  recent years, so it had no reason to revisit the statute or consider whether it banned

22  long-standing industry practice in Washington as well as other states.

23       Moreover, entering and securing vacant properties was not a practice unique

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 6

6254522.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

to Nationstar; it was an industry-wide practice in all 50 states right up to entry of the Washington Supreme Court's decision in *Jordan*.  That decision stunned the industry, as shown by FHFA's intervention in this case, as well as a flurry of industry news bulletins, seminars and legislative efforts to abrogate the decision.   And, despite *Jordan*, entry and securing vacant properties is still the industry-wide practice in the other 49 states.

Loan owners and servicers were not the only ones who believed the practice was legal.  Cities across the country, including Spokane and Bremerton, did as well. They passed ordinances legally obligating lenders to change locks and secure abandoned properties pre- as well as post-foreclosure.  Nationstar is licensed and regulated by Washington's Department of Financial Institutions ("DFI").  Nationstar provided extensive information to the DFI about its property preservation practices. The DFI never raised any concern about those practices.

Other states' courts, including courts in lien-theory states like Washington, have considered and repeatedly enforced the entry provisions and loan servicers' entry and lock change practices under those provisions.  *See Fireman's Fund Mortgage Corp. v. Zollicoffer,* 719 F.Supp. 650, 657-59 (N.D. Ill. 1989) and other authorities cited at ECF No. 45 at 14-15.

Even after full briefing, this Court could not predict whether the Washington Supreme Court would decide that the entry provisions were enforceable, so it certified that question to the state court. See ECF No. 72 at 1:11-2:2, 3:7-4:9.  After even more extensive briefing, the Washington Supreme Court split 6-3 on that issue. *Jordan*, 185 Wn.2d at 894.  Nationstar cannot be deemed to have had advance,

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 7

6254522.2

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1    constructive knowledge of how this closely divided legal issue would be resolved.

2         Against this array of evidence disproving actual or constructive knowledge,

3    Jordan offers three arguments to prove advance knowledge of wrongdoing.

4         First, she claims that the *Jordan* opinion, like all judicial decisions, is given

5    retroactive effect. ECF No. 190 at 14. Retroactive effect does not mean retroactive

6    knowledge. There is no authority for Jordan's proposition that private parties are

7    deemed to have known in advance how a Supreme Court will decide a closely

8    contested legal issue. As Nationstar pointed out before, the United States Supreme

9    Court held just to the contrary in *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 69-70 (2007),

10   interpreting the Fair Credit Reporting Act's provision for enhanced civil remedies

11   for "willful" violations. *See* ECF No. 178 at 2-3; ECF No. 192 at 6-7.

12        Second, Jordan claims that Nationstar should have known its practices were

13   unauthorized once it received her counsel's demand letter. ECF No. 190 at 18-19.

14   She is wrong. The letter cited no authority and presented no argument to support its

15   assertion that Nationstar's entry and lock change on Jordan's property was "without

16   any claim of right." The letter did not mention the deed of trust's entry provisions

17   or suggest any reason why those provisions were not fully enforceable or failed to

18   authorize Nationstar's conduct. Furthermore, a litigant's demand letter conveys

19   only knowledge of a claim, not knowledge that the claim has merit, particularly on

20   an issue of law that this Court and the Washington Supreme Court later found

21   questionable even after full briefing.

22        Third, Jordan argues that Nationstar's appellate brief in the Washington

23   Supreme Court somehow showed that Nationstar knew that the entry provision was

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 8
6254522.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1   unenforceable because Nationstar admitted that the issue turned on whether entry

2   and changing a lock constituted possession and, in resolving that issue, the Wash-

3   ington Supreme Court drew on "established legal principles."  ECF No. 190 at 2, 5-

4   14.  While this argument may have sufficed to avoid summary judgment on this

5   claim,[2] it cannot prevail at trial.

6       The countervailing evidence is overwhelming.  Nationstar's summary judg-

7   ment motion in this Court made the exact same arguments that were reiterated in its

8   Supreme Court brief, including the same "concession" that the key issue was

9   whether entering and changing a single lock constituted "possession" of the

10  premises.  *See* ECF No. 45 at 7; ECF No. 60 at 1.  The same "established legal

11  principles" that the *Jordan* majority later relied on were debated in the summary

12  judgment papers, citing the same cases.  *See* ECF No. 57 at 5-7, 9-10; ECF No. 60 at

13  3-4; ECF No. 68 at 1, 3, 4.

14      Despite having the same arguments and authorities before it, this Court found

15  the issue of enforceability of the entry provisions had *not* been clearly determined

16  by existing Washington law.  ECF No. 72 at 1, 4.  Three of the Washington

17  Supreme Court's nine judges reviewed those same arguments and authorities and

---

18

19  [2]     In denying summary judgment on this claim, the Court found that Jordan had

20  raised a triable issue of fact as to Nationstar's actual or constructive knowledge

21  because "its briefing may suggest that it did, in fact, know (or should have known)

22  that it lacked authorization to trespass, i.e., changing locks and thereby categorically

23  exercising control and thus, possession."  ECF No. 207 at 12.

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 9
6254522.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1   agreed with Nationstar that "the entry provisions at issue are not inconsistent with

2   Washington's lien theory of mortgages and RCW 7.28.230(1)" and that the "estab-

3   lished legal principles" on which the majority relied were "inapposite." *Jordan*,

4   185 Wn.2d at 895.  Nationstar cannot be held to a foreknowledge of the ultimate

5   resolution of this closely contested legal issue which this Court and three of the nine

6   Supreme Court justices lacked.  *See Safeco Ins. Co.*, 551 U.S. at 69-70.

7   **B.    Statutory Trespass Applies To Lock Change Damages Only**

8          Jordan's statutory trespass claim applies to and allows trebling of, at best,

9   only one type of damages Jordan seeks in this action; namely, lock change

10  "damages."

11         RCW 4.24.630 "establishes liability for three types of conduct occurring upon

12  the land of another: (1) removing valuable property from the land, (2) *wrongfully*

13  causing waste or injury to the land, and (3) *wrongfully* injuring personal property or

14  real estate improvements on the land." *Clipse,* 154 Wn. App. at 577-78; *Ofuasia v.

15  Smurr*, 198 Wn. App. 133, 147 (2017).  The statute further provides that one who

16  commits that type of conduct "is liable to the injured party for treble the amount of

17  the damages caused by the removal, waste, or injury." RCW 4.24.630.

18         Thus, the statute clearly limits trebling to damages caused by removal of

19  property, waste or injury to improvements and does not allow trebling of other sorts

20  of damage caused by a trespass, even if the defendant knew it lacked authorization.

21         Of the three types of damages Jordan seeks in this action, none are for

22  removal of valuable property or waste.  Only one could conceivably be for injury to

23  real property improvements; namely, lock change damages.

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 10
6254522.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1    The other types of damage Jordan seeks to recover—rental value damages

2   and disgorgement of property preservation fees—do not arise from or measure any

3   removal, waste or injury to improvements.  Hence, class members cannot obtain any

4   trebling of those types of damage under RCW 4.24.630, even if Jordan could prove

5   liability under that statute.

6                                          **III.**

7                   **JORDAN AND THE CLASS ARE NOT ENTITLED
                     TO THE DAMAGES SHE SEEKS**

8   **A.    Class Members Cannot Recover Property Preservation Fees**

9        The Court's recent summary judgment order left for trial whether and to what

10  extent class members may recover property preservation fees based on Jordan's

11  equitable disgorgement theory.  ECF No. 262 at 25-26.  For the reasons stated

12  below, that theory fails, so no property preservation fee damages should be awarded.

13       **1.    Property Preservation Fees Are Not Recoverable Under The CPA**

14       Class members cannot recover equitable disgorgement of property preserva-

15  tion fees on the CPA claim without proof they paid those fees.  Jordan cannot prove

16  class members paid the fees, either through application of foreclosure proceeds or

17  otherwise.

18       The CPA allows for recovery only for injury to the plaintiff's business or

19  property.  RCW 19.86.090.  A plaintiff is not injured in business or property by

20  charges a third party pays and so cannot recover those fees as damages in a CPA suit

21  even if the defendant benefited unjustly from those third-party-paid charges.  As

22  *Demopolis v. Galvin*, 57 Wn. App. 47, 55 (1990) holds:

23            [Plaintiff] Demopolis did not pay the broker's loan fee that

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 11
6254522.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1
2
3
4

> causes this transaction to be usurious. Instead, he is paying
> a legal rate of interest on an $18,000 note …. It is there-
> fore irrelevant to him whether Primeau, the recipient of the
> loan proceeds, received funds representing the full amount
> of the loan, or an amount substantially reduced by a usuri-
> ous loan fee. We hold that in this circumstance, no CPA
> injury is present.

5
6

Jordan has no evidence to prove she or other class members paid any property preservation fees, or if so, how much.

7
8
9
10
11
12
13
14
15
16
17

There is also no merit to Jordan's theory that class members "pay" property preservation fees when their properties were foreclosed upon or sold via short sale. Rarely is money paid at a foreclosure sale. Instead, the investor that owns the loan buys the property through a credit bid, "paying" the bid price through offset against some or all of the secured debt.[3] The foreclosure sale of Jordan's property is a good example. The investor bought it through a credit bid for less than the full amount Jordan owed in principal and accrued interest. There was nothing left to pay any property preservation fees. The same is true of short sales which by definition are sales at a price lower than the balance of the loan that the property secures. See *Rex v. Chase Home Fin. LLC*, 905 F.Supp.2d 1111, 1119 n. 4 (C.D. Cal. 2012).

18
19

Moreover, how Nationstar applied any foreclosure sale proceeds—whether to principal and interest first or to fees first—is irrelevant to whether class members

---

[3]    See *Bert Kuty Revocable Living Tr. ex rel. Nakano v. Mullen*, 175 Wn. App. 292, 304 (2013) ("The beneficiary may bid up to the amount of its secured obliga-tion without paying the trustee additional sums by making a "credit bid.""); RCW 61.24.070(2).

20
21
22
23

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 12
6254522.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1  paid the property preservation fees.  Sale proceeds are the property of the investor

2  that owns the loan, not the property of the defaulted, foreclosed borrower.  *See*

3  RCW 61.24.080(1), (2) (foreclosure sale proceeds are paid first to defray foreclosure

4  costs, then to pay the secured obligation).  Evidence at trial will confirm that sale

5  proceeds are the investor's property.  When those proceeds are applied to pay

6  property preservation fees, it is the investor, not the borrower, who pays the fees.

7        **2.      Class Members Cannot Recover Both Rent And Profit**

8        Equitable disgorgement of "profits" that Nationstar supposedly obtained

9  through its entry onto properties is also improper because Jordan also seeks to

10  recover the rental value of class members' properties.  Under the law of restitution,

11  rental value and profits are alternative measures of a defendant's unjust enrichment,

12  not amounts that may both be awarded for a single wrong.  *See* Restatement (Third)

13  of Restitution, § 40, cmts. b, c; Daniel Friedmann, Restitution for Wrongs: The

14  Measure of Recovery, 79 Tex. L. Rev. 1879, 1892-96 (2001).

15        California's Civil Code section 3334, that state's equivalent of RCW

16  59.04.050, makes this point expressly in subsection (b)(1):  "the value of the use of

17  the property shall be the greater of the reasonable rental value of that property or the

18  benefits obtained by the person wrongfully occupying the property by reason of that

19  wrongful occupation."  But even without a statute on the subject, courts reach the

20  same conclusion because both "profits" and rental value measure the same thing:

21  the benefit the defendant has gained from its wrongful use of the property.  *See*

22  *Martin v. Comcast Cablevision Corp. of California, LLC*, 338 P.3d 107, 111 (N.M.

23  App. 2014); *Krejci v. Capriotti*, 16 Ill.App.3d 245, 248, 305 N.E.2d 667, 670 (1973)

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 13
6254522.2

1  ("profits wrongfully derived from the use of the land" properly measured by "the

2  fair market rental value for the period of the trespass").

3  **3.    No Disgorgement May Be Recovered For Post-Foreclosure Property Preservation Fees**

4

5  A substantial part of the property preservation fees Jordan seeks to recover

6  are fees that Nationstar assessed for property preservation work its vendors per-

7  formed *after* a class member's property had been sold on foreclosure.

8  Those fees cannot properly be awarded to class members on Jordan's equit-

9  able disgorgement theory. Jordan's theory rests on the principle stated in Restate-

10  ment (Third) of Restitution, section 40, which requires restitution "to the victim of

11  the wrong" of a benefit obtained by "an act of trespass or conversion, [or] by

12  comparable interference with other protected interests in tangible property."

13  After foreclosure, the investor or third party purchaser at the foreclosure sale

14  owned the property, not the foreclosed class member. So Nationstar's or its ven-

15  dor's entry and property preservation activities after foreclosure involved no tres-

16  pass or comparable interference with any interest then owned by the class member.

17  The Court reached a similar conclusion, limiting its summary judgment order to

18  class members who had their locks rekeyed prior to foreclosure. ECF No. 262 at 8.

19  For the same reason, the class member was not the "victim of the wrong"

20  when property preservation activities took place after foreclosure or some other

21  transfer of the property. Rather, the victim of any trespass or similar wrong at that

22  point would be the new owner of the property, not the foreclosed class member.

23

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 14
6254522.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1

    **4.**    **Nationstar Did Not Profit From Reimbursement
Of Property Preservation Costs It Advanced**

2

3           Jordan's equitable disgorgement theory also fails because Nationstar did not

4  "profit" or unjustly "benefit" from property preservation fees.  Quite to the contrary,

5  the fees were charged in an effort to recoup amounts that Nationstar advanced to

6  preserve and maintain properties class members had abandoned.

7           Even when those fees were paid by the investor, Nationstar still suffered a

8  loss since it did not receive interest for the period between its advance of funds and

9  later repayment by the investor.  As Nationstar did not engage in intentionally

10  wrongful conduct, it can, at most, be held liable in unjust enrichment only for any

11  net profit, not gross revenue.  *See, e.g.,* Restatement (Third) of Restitution,

12  § 51(4)(c); *Bailey v. Outdoor Media Grp.*, 155 Cal.App.4th 778, 783-87, 66 Cal.

13  Rptr.3d 322, 327-30 (2007).  Jordan cannot prove that Nationstar received any net

14  profit at all from property preservation activities.

15           Jordan claims to have evidence that Nationstar "marked up" some property

16  preservation fees.  But that evidence shows only that an affiliated entity was paid

17  some portion of certain fees for a portion of the class period.  Jordan has no

18  evidence regarding the expenses incurred by this affiliated entity, or that Nationstar

19  profited by this practice, or by how much.  An award of damages or equitable

20  disgorgement cannot be based on speculation or guesswork.  *See PSG Co. v. Merrill*

21  *Lynch, Pierce, Fenner & Smith, Inc.*, 417 F.2d 659, 663 (9th Cir. 1969).

22

23

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 15
6254522.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

**5.      Any Recovery Of Property Preservation Fee "Profits"
Is Fully Offset Under The Special Benefits Rule**

Unjust enrichment is an equitable concept, subject to the equitable limitation of the special benefit doctrine.  Any restitution a class member might claim from having paid property preservation fees are completely offset by the benefit the property preservation measures conferred.  Restatement (Second) of Torts, section 920 states the relevant principle:

> When the defendant's tortious conduct has caused harm to the plaintiff or to his property and in so doing has conferred a special benefit to the interest of the plaintiff that was harmed, the value of the benefit conferred is considered in mitigation of damages, to the extent that this is equitable.

The Washington Supreme Court cited section 920 and applied this principle in *Harbeson v. Parke-Davis, Inc.*, 98 Wn.2d 460, 475 (1983).

The evidence will show that class members as well as the general public benefited from the property preservation measures Nationstar took on vacant or abandoned properties.  Repairing a roof, maintaining a pool and winterizing a home, for example, either improved the property or protected it against harm, thus conferring a special benefit on the class member-owner as well as adjoining neighbors.

The reasonable value of the benefit is at least equal to and very likely much greater than the expenses Nationstar incurred to hire vendors to engage in those property preservation measures, thus fully offsetting any recovery class members might be entitled to on an unjust enrichment or equitable disgorgement theory.

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 16
6254522.2

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

**B.     Jordan Miscalculates Rental Value Damages**

The Court's summary judgment order holds that Jordan is entitled "to the reasonable rental value from the date Nationstar locked a house to the cure of any default or when the property was properly liquidated, the exact calculation to be determined at trial."  ECF No. 262 at 16.  The order awards similar damages to class members whose properties were rekeyed before foreclosure, while the class member still owned the property, and who did not give post-default consent to Nationstar's entry.  ECF No. 262 at 8-10.

Jordan will attempt to quantify those damages at trial through the testimony of her expert John Kilpatrick.  His opinion and calculation of rental value damages should be rejected for the following reasons, among others.

**1.     Kilpatrick Ignores Ownership of the Property**

It is black-letter law that a plaintiff must own real property to recover for trespass. *Allen v. Mickelson,* 43 Wn.2d 509, 511 (1953).[4]  Similarly, the CPA allows recovery only for "[a]ny person who is injured in *his* or *her* business or property," not property owned by someone else.  RCW 19.86.090 (emphasis added).

---

[4]     *Accord, N. Shore Energy, L.L.C. v. Harkins*, 501 S.W.3d 598, 605 (Tex. 2016) (To prove a trespass claim, the plaintiff must show that it owned the property or had a right to exclude others from the property.");  *Obermiller v. Baasch*, 284 Neb. 542, 557, 823 N.W.2d 162, 173 (2012) ("To bring an action in trespass, the complaining party must have had title to or legal possession of the land when the acts complained of were committed.")

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 17
6254522.2

1    Both Jordan and the Court acknowledged this principle in connection with

2  Jordan's partial summary judgment motion.  Jordan conceded that a class member

3  whose property was disposed of before a lock change was not injured and suffered

4  no damage. ECF No. 237 at 10.  The Court's order acknowledged this concession

5  and excluded those class members from any recovery.  ECF No. 262 at 9.

6    Yet Kilpatrick has not limited his damage analysis to borrowers who owned

7  their properties and are thus members of the class, nor has he properly accounted for

8  sales or other dispositions of class members' properties in his damage analysis.  He

9  ignored the critical issue of ownership in his initial damage analysis.  In later

10  versions of his report, Kilpatrick removed some properties from his damage

11  computations in response to Nationstar and its experts providing anecdotal examples

12  of transfers.  But to recover rental value, Jordan and Kilpatrick must affirmatively

13  show that each class member not only owned the property when the lock was

14  changed, but continued in ownership throughout the damage period calculated by

15  Kilpatrick.  Plaintiffs cannot prove this key element of their rental value damage

16  claim.

17    **2.    Kilpatrick's Study Wrongly Awards Re-Occupiers Full Damages**

18    The Court's summary judgment order states that damages will be reduced

19  where class members continued to occupy their properties.  *See* ECF No. 262 at 16.

20  Although it is difficult, if not impossible, to provide individual proof about the

21  occupancy of 3,000+ properties given the Court's prior rulings, *see* p. 38 below,

22  Nationstar will present evidence that a significant number of class members either

23  never left their properties after they were rekeyed or re-entered their homes and

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 18
6254522.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1  occupied them once again after the rekeying.  Those class members cannot justly be

2  awarded full rental value damages for their properties, and they should, at most, be

3  awarded damages only for any period during which they were unable to occupy the

4  property by reason of the lock change.

5    **3.    Kilpatrick's Study Ignores The Avoidable Consequences Doctrine**

6    More generally, Kilpatrick's study ignores the doctrine of avoidable conse-

7  quences which applies to the CPA as well as tort claims under Washington law.  *See*

8  *Young v. Widbey Island Bd. of Realtors*, 96 Wn.2d 729, 732-33 (1982).  Under that

9  doctrine, "one injured by a tort of another is not entitled to recover damages for any

10  harm that he could have avoided by the use of reasonable effort or expenditure after

11  the commission of the tort."  *Id.* at 732.  Here, the evidence will show that class

12  members could have avoided the harm for which they seek recovery in this case by

13  simply calling Nationstar or its vendor, saying they were occupying or maintaining

14  their homes, and demanding the keys to the rekeyed door or the installation of a new

15  lock to which Nationstar lacked a key.

16    In accordance with the avoidable consequences doctrine, rental value dam-

17  ages should be awarded only for the period before a class member who used reason-

18  able effort would have ended Nationstar's "possession" by this easy means.

19    **4.    Kilpatrick Miscomputes The Rental Value Period**

20    Under the Court's summary judgment order, class members are entitled to

21  rental value damages between the date their houses were rekeyed ("beginning date")

22  and the date that the class member cured the default or the property was liquidated

23  ("ending date").  ECF No. 262 at 16, 25.  Kilpatrick miscomputes both of those

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 19
6254522.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

dates for many class members.

### (a)   Kilpatrick Uses Incorrect Beginning Dates

In the absence of an invoice or credible evidence of the date on which a house was rekeyed, Kilpatrick simply assumed that each house was rekeyed seven days after the date it was determined to be vacant.  The evidence at trial will show that this assumption is wrong.  Many times rekeying never occurred after a vacancy determination or was long delayed due to a variety of factors.  For example, Nationstar did not rekey properties if the borrower was in bankruptcy, even if the property was determined to be vacant.  In such a case, rekeying might be delayed months or years until after the bankruptcy case closed.

### (b)   Kilpatrick Uses Wrong Ending Dates

Kilpatrick also chose the wrong ending date in many instances.  In this regard, numerous errors plagued his study.

Kilpatrick failed to consider the transfer or "liquidation" date of properties, beyond a cursory review of some of Nationstar's records that contain incomplete information on disposals of properties.[5]

Kilpatrick ignored deeds and other publicly available information that he gathered for his study, and that were in his possession.  Instead, he only corrected

---

[5]   Kilpatrick tries to blame his reliance on partial data on Nationstar, but the evidence at trial will show that Nationstar produced all the information that Jordan requested in discovery.  If that information was insufficient to support Kilpatrick's expert opinion, the fault lies with Jordan, not Nationstar.

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 20
6254522.2

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1  errors when and as they were brought to his attention by Nationstar and its experts.

2  Though Kilpatrick issued three different damage reports in this case, even his final

3  report still fails to take into consideration numerous instances in which class

4  members sold or otherwise lost their ownership interest in the subject properties.

5          **5.    Kilpatrick Uses Improperly Inflated Rental Values**

6              **(a)    Kilpatrick's AVM Method Wrongly Inflates Rental Value**

7          Kilpatrick estimates of the rental value of class member properties are

8  significantly inflated for a variety of reasons, as the evidence at trial will show.

9          Kilpatrick presents no direct evidence of the rental value of any class

10  member's property.  Instead, he first calculates rental value "ratios" that compare

11  the asking rents for other properties to their fair market values, then he multiplies

12  those ratios by his estimates of the values of class members' properties.  The

13  approach itself is a needlessly complicated means of determining rental value.  And

14  the various factors used in his calculation are inflated or incorrectly calculated by

15  Kilpatrick, as the evidence at trial will show.

16          For example, he primarily uses multiple listing services rental listings that

17  reflect a small segment of the rental market.  At trial, Nationstar's experts will

18  explain that this small sample is not only statistically invalid but is also skewed

19  toward higher end homes in good condition.  Kilpatrick's rental value calculation

20  does not take into consideration the condition of the premises at the time Nationstar

21  rekeyed a door or adjust for the superior condition of the high end properties he uses

22  to calculate his "rent to price ratio."  Nationstar's expert will confirm the self-

23  evident point that a house's condition affects its rental value.  Houses in poor

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 21
6254522.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1   condition rent for less than those that have been spruced up for rental. The evidence

2   at trial will show that many of the class members' houses were in very poor

3   condition when rekeyed.  Kilpatrick ignores this, both in estimating the value and

4   rental value of class members' properties.

5           **(b)    Kilpatrick Fails To Deduct Ownership Expenses Nationstar Paid**

6           Kilpatrick also fails to compute a "fair" or "reasonable" rental value of class

7   members' properties because he does not take into account the fact that Nationstar

8   paid many of the costs that a landlord would have to pay in order to rent a single

9   family home.  For example, the vast majority of class members failed to pay

10  property taxes, insurance and maintenance expenses after default as well as principal

11  and interest on their mortgage.  Nationstar paid taxes, insurance and maintenance

12  expenses to protect the investor's interest in the property.

13          Nevertheless, Kilpatrick calculates rental values based on the rents charged by

14  owners who are paying these expenses of property ownership.  To award full rental

15  value based on that comparison—where the defendant has paid these expenses of

16  ownership of the property—would be to give the class member an improper

17  windfall, not proper compensation for any injury suffered or disgorgement of any

18  benefit Nationstar obtained by any occupation of the premises.

19          As the Fifth Circuit recently held:

20          "[T]he measure of damages in a trespass case is the sum
            necessary to make the victim whole, no more, no less."
21          When calculating trespass damages in cases involving
            rental property, it makes sense to begin with a reasonable
22          rental rate.  In this case, the bankruptcy court found—
            based on Wiggins's testimony—that the reasonable rental
23

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 22
6254522.2

rate was $4,000 per month. …

Next, adjustments must be made to this reasonable rental rate to account for the facts underlying the trespass. See *Mullendore v. Muehlstein*, 441 S.W.3d 426, 428 (Tex. App.—El Paso 2014, pet. abated) ("The calculation of damages for temporary injuries to real property should be tailored to the circumstances of the specific case."). This is evident from the Texas Supreme Court's admonition that damages in a trespass case endeavor to make the victim whole, not provide a windfall. The bankruptcy court correctly applied this principle when it reduced the total damages by the amount of taxes Wiggins paid on the property. Taxes were owed regardless of who possessed the property. Since Northrup did not make those payments, awarding her the full amount of a rental rate without deducting Wiggins's tax payments would constitute a windfall.

*       *       *

The bankruptcy court's failure also to adjust the reasonable rental rate by deducting the insurance and note payments is a windfall for Northrup. Wiggins testified that the "fair market rental" value of the property was $4,000 per month. As the gross rental rate, that rate would have covered all the regular expenses of maintaining and operating the rental property. *See Rexam Bev. Can Co. v. Bolger*, 620 F.3d 718, 733 (7th Cir.2010) ("In a gross rent situation, a landlord needs to use some of the rent payments (or other funds under his control) to cover utilities, insurance, taxes, and other 'costs and expenses of maintaining the property.' "). The property's expenses would necessarily have included insuring the property and paying the notes: the notes would remain payable no matter who possessed the property and the deeds of trust required the property to be insured. Awarding Northrup the full amount of the rental rate without deducting Wiggins's payments on behalf of the property constitutes a windfall.

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 23
6254522.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1  *Kelly*, 643 Fed. Appx. at 403-04 (citations & fns. omitted).[6]

2     Texas law, which *Kelly* applied, does not differ from Washington law in any

3  respect pertinent to the calculation of rental value damages.  Under Washington law,

4  as under Texas law, "[t]he goal of awarding damages is to fully compensate the

5  plaintiff for loss or injury. One should not recover any windfall in the award of

6  damages, but should receive an award which does no more than put the plaintiff in

7  his or her rightful position." *Pepper v. J.J. Welcome Const. Co.*, 73 Wn. App. 523,

8  543 (1994), abrogated on other grounds, *Phillips v. King Cty.*, 87 Wn. App. 468, 490

9  (1997); *accord, Eastlake Const. Co. v. Hess*, 102 Wn.2d 30, 48 (1984) (quoting and

10  adopting Rest.2d Contracts § 348); *DeNike v. Mowery*, 69 Wn.2d 357, 358 (1966);

11  *Kim v. O'Sullivan*, 133 Wn. App. 557, 564 (2006); *Pugel v. Monheimer*, 83 Wn.

12  App. 688, 692 (1996).

13     Thus, under Washington law, as under Texas law, lost profits or lost income

14  damages are limited to net profits or income—i.e., revenue less expense of produc-

15  ing the revenue. *Compare Platts v. Arney,* 50 Wn.2d 42, 47 (1957).  Similarly,

16  under Washington law, recovery for a landlord's breach of a lease is limited to the

17  net rental value of the premises—that is, gross rental value less the expenses

18  incurred in generating that rental value. *Kohne v. White*, 12 Wash. 199, 204 (1895).

19  _____

[6]     See also *United Truck Rental Equip. Leasing, Inc. v. Kleenco Corp.*, 84 Haw.

20  86, 98, 929 P.2d 99, 111 (Haw. App. 1996) ("The rental value awarded as the

21  measure of loss of use damages should have been reduced by the amount that United

22  saved in overhead or other associated costs while not in possession of the truck.").

23

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 24
6254522.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1    Kilpatrick's damage calculation is improperly based on the gross rental value

2  of the class members' properties without subtracting the expenses, such as taxes,

3  insurance and mortgage payments, that class members would necessarily incur to

4  obtain that gross rental value.  As the just-cited authorities show, it is legally impro-

5  per to award damages based on gross rental values, particularly when Nationstar has

6  paid the expenses of property ownership and maintenance that  class members have

7  avoided.  As Nationstar's expert will confirm, a tenant normally pays less in rent if

8  it must also pay some or all of the ownership and maintenance costs.  Kilpatrick

9  fails to take this into account and so grossly overestimates proper rental value.

10    **(c)    Full Rental Value Is Inappropriate For Limited Interference**

11    Kilpatrick's rental value figures are also improper under the circumstances of

12  this case because they are premised on the complete occupancy of the premises, not

13  the limited "possession" that Nationstar exercised in most circumstances.

14    The cases on which Jordan relies for her rental value claim involved complete

15  occupation of the entire premises and so awarded damages based on the rental value

16  of the entire building the defendant had wrongly used.  *See Howard v. Edgren*,

17  62 Wn.2d 884 (1963); *Columbia & P.S.R. Co. v. Histogenetic Medicine Co.*,

18  14 Wash. 475 (1896).

19    But here, with the possible exception of Jordan herself, Jordan has no evi-

20  dence that Nationstar occupied the entire premises or "ousted" the owner so as to

21  preclude their reentry.  The evidence will show that Nationstar changed a single lock

22  on a side or back door of most class members' houses and thereafter accessed the

23  house through that door only when necessary to maintain and preserve the premises.

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 25
6254522.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1    The owner was free to enter and exit from the front door, which was not rekeyed.

2    As the post-lock change notice also made clear, the owner could obtain access

3    through the rekeyed door as well simply by telephoning Nationstar's vendor.  No

4    class member other than Jordan will testify that he or she felt excluded or ousted

5    from the dwelling, and the evidence will show that many class members understood

6    they could continue to occupy their properties and in fact continued to do so.

7    Neither this Court nor the Washington Supreme Court has considered such

8    circumstances, because the only fact pattern presented has been Jordan's oft-

9    repeated claim that she personally concluded she had been "ousted" from her

10    property and was unable to return.

11         When a trespasser occupies only a portion of the owner's property, the owner

12    can recover only the rental value of the occupied portion, not the rental value of the

13    entire parcel.  *Morales v. Riley*, 28 A.D.3d 623, 624, 813 N.Y.S.2d 518, 519 (N.Y.

14    App. Div. 2006) ("[T]he measure of damages is the rental value of the area actually

15    occupied by the defendant."); *Robert v. Scarlata*, 96 Conn.App. 19, 25, 899 A.2d

16    666, 669-70 (2006) (same); *Sw. Bell Tel. Co. v. Hamil*, 116 S.W.3d 798, 800 (Tex.

17    App. 2003) (same); *Fairchild v. Wilson*, 168 S.W. 409, 411 (Tex. App. 1914).

18    Similarly, when the owner's interest in the property is restricted, she can recover

19    only the rental value of the land subject to that restriction.  *See Cracchiolo v. State*,

20    146 Ariz. 452, 460, 706 P.2d 1219, 1227 (Ariz. App. 1985); *Penn Furniture Co. v.

21    Ratliff*, 194 Ky. 162, 238 S.W. 393, 395 (1922).

22         Also, rental value damages for the wrongful use of another's property is a

23    form of equitable recovery for unjust enrichment.  *See* Restatement (Third) of

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 26
6254522.2

1 Restitution, § 40.  As Jordan, herself, urges, the Court has "tremendous discretion"

2 to fashion a remedy "to do substantial justice to the parties and put an end to the

3 litigation."  *Young v. Young*, 164 Wn.2d 477, 488 (2008).  In exercising that

4 discretion in this case, the Court can and should use a rental value that reflects the

5 actual extent of Nationstar's "use" of class members' houses, not the full rental

6 value of the entire premises.

7      Here, the evidence will show that Nationstar did not occupy the entire

8 premises, but at most interfered temporarily and partially with the class member's

9 exclusive possession.  As the foregoing cases illustrate, any award of rental value

10 damages must be tailored to the extent of the defendant's actual invasion of the

11 plaintiff's right to possession.  Hence, Jordan and Kilpatrick err in claiming for class

12 members rental value damages based on the full rental value of the premises as if

13 Nationstar had moved into the house and set up shop or fully occupied it as an

14 owner or squatter would.  Such an award would be neither "fair" nor "reasonable"

15 under the circumstances of this case.

16 **C.    Lock Change Damages Should Be Awarded Only To Owners**

17      The Court's partial summary judgment order is unclear regarding the amount

18 of lock change damages to be awarded class members.  The Court should not award

19 those damages to any class member who did not own the property when the door

20 was rekeyed.

21      The summary judgment order expressly applies only "to those Class members

22 who had their locks rekeyed prior to foreclosure."  ECF No. 262 at 8.  It notes that

23 Jordan's evidence showed that "3,433 loans were charged with lock-change fees

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 27
6254522.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

totaling $535,376" but also that "the locks on the homes of [only] 3,066 Class members [were rekeyed] while they owned their homes." *Id*. at 8-9. The order also acknowledges that Jordan concedes "that any Class member who sold or disposed of his or her property prior to the lock change was not injured and suffered no damage." *Id*. at 9.

Nevertheless, the order concludes that "the cost of restoring the home to its original state prior to rekeying the properties is properly estimated by Nationstar's lock-change fees totaling $535,376 to 3,433 loans on the Class list." *Id*., at 15; see also *id*., at 24 ("Class members who had their homes rekeyed prior to foreclosure are entitled to $535,376 for lock changes").

As Jordan concedes, the $535,376 damage figure includes lock change fees charged on at least 367 properties that the class member no longer owned when the door was rekeyed (3,433 – 3,066 = 367). ECF No. 237 at 9. Just excluding those 367 class members would reduce the lock change damages from about $57,233 to $478,143.[7]

Moreover, Jordan's 3,066 figure is inflated. Her expert's declaration states that Nationstar's records show that only 2,865 class members had locks rekeyed before a "liquidation event"—that is, a short sale, foreclosure, or deed in lieu transfer. ECF No. 239 at 2 ¶ 5. To arrive at 3,066, Jordan added in 201 properties on which a lock was rekeyed but Nationstar's records do not include any date for a

---

[7]    The reduction is calculated by multiplying 367 by the average lock change fee computed by dividing total lock change fees ($535,376) by 3,433 loans.

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 28
6254522.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1   "liquidation event." *Id.* at 2-3 ¶ 6.  For those 201 properties, Jordan has no evidence

2   to prove that the door was rekeyed before foreclosure.[8]  Absent such evidence, lock

3   change damages may not properly be awarded because Jordan bears the burden of

4   proof on each element necessary to a class member's recovery.  *See* pp. 32-35

5   below.

6        Jordan's count of 3,066 also overstates the number of class members entitled

7   to recover lock change damages because it does not exclude class members who, for

8   reasons other than a "liquidation event" shown on Nationstar's records, no longer

9   owned the property when the door was rekeyed.  Ownership of the property when

10  the lock was rekeyed is an element of Jordan's trespass and CPA claims on which

11  Jordan bears the burden of proof.  *See* pp. 17-18 above and pp. 32-35 below.

12       The Court has allowed Jordan the opportunity to prove at trial that additional

13  class members are entitled to lock change damages.  ECF No. 262 at 9.  Lock

14  change damages must, therefore, be re-examined at trial in any event.  So, the Court

15  should also reconsider the $535,376 damage figure cited in its summary judgment

16  order.  That dollar amount is overstated because it awards damages to class

17  members who no longer owned the property at the time the lock was rekeyed, due to

18  a prior "liquidation event" or other transfer of ownership.

19

20  _____

[8]      As already noted, p. 20 n. 5 above, Jordan's lack of evidence on this point is

21  due to her own failure to request it in discovery or obtain it from other sources, not

22  due to any fault of Nationstar in keeping records or responding to discovery.

23

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 29
6254522.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

**D.    The Court Should Not Treble Damages Under The CPA**

Under the CPA, "the court may, in its discretion, increase the award of damages to an amount not more than three times the actual damages sustained" or $25,000, whichever is less.  RCW 19.86.090.

The statute provides no guidance for the exercise of this discretion.  Case law on the subject is also sparse.

In denying damage recovery under the CPA, two early decisions suggested, in dictum, that the CPA's treble damage and reasonable attorneys' fees provisions were intended to "enlist the aid of private individuals … to assist in the enforcement of the [CPA]" and to provide "sufficient financial rewards to victorious consumers … to enable the injured plaintiff to pursue his own claim; and … to reimburse the individual plaintiff and his counsel for enforcing the Act on behalf of the general citizenry."  *Lightfoot v. MacDonald*, 86 Wn.2d 331, 335-36 (1976), *disapproved on other grounds, see Rounds v. Union Bankers Ins. Co.*, 22 Wn. App. 613, 615 (1979); *St. Paul Fire & Marine Ins. Co. v. Updegrave,* 33 Wn. App. 653, 658 (1983) (quoting Comment, Reasonable Attorneys' Fees and Treble Damages—Balancing the Scales of Consumer Justice, 10 Gonz.L.Rev. 593, 598 (1975)).

In this case, trebling of damages for absent class members is not needed to and will not accomplish those purposes.  The damages the Court has already indicated it will award are more than ample to enable Jordan to pursue this claim on class members' behalf.  Also, absent class members have not prosecuted this case and have incurred none of its costs.  So they require no reimbursement.  Increasing financial awards to those who did not prosecute the suit will not better enable suit by

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 30
6254522.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1   those who do sue.

2       Two other decisions suggest that the most important factor in deciding

3   whether to award treble damages under the CPA is the defendant's culpability.  In

4   *Young*, 96 Wn.2d at 736-38, the Washington Supreme Court affirmed denial of

5   treble damages under the CPA.  There, the trial court had found that though it acted

6   intentionally in causing plaintiff's damages, the defendant had acted under the

7   mistaken impression its conduct was legal.  *Id*. at 736.  The Supreme Court agreed,

8   holding that defendant's good faith but mistaken conduct sufficient reason to deny

9   treble damages.

10          Inasmuch as the officers of the defendant board could
            reasonably believe as the evidence shows they did, that the
11          requirements which they imposed upon the plaintiff were
            not objectionable under the law, we find no abuse of
12          discretion on the trial court's part in refusing to order
            punitive damages.
13

14  *Id*. at 738.

15      By contrast, in *Odmark v. Westside Bancorporation, Inc*., No. C85-1099R,

16  1988 WL 108288, at *6 (W.D. Wash. 1988), the district court found an award of

17  treble damages under the CPA against officers and directors of a federal savings and

18  loan association who had made material misstatements and omissions that had the

19  capacity to deceive the public both as investors and depositors.  In the court's view,

20  "[a]n award of treble damages to deter such double violations of the public trust is

21  more than justified."  *Id*.[9]

22  _____

23  [9]     In addition the court found that awarding treble damages to the individual

(Fn. cont'd)

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 31
6254522.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

Here, for the reasons already stated in connection with Jordan's statutory trespass claim, *see* pp. 5-10 above, Nationstar acted in the actual and reasonable belief that its entries onto borrowers' vacant or abandoned properties to secure and maintain those properties was "not objectionable under the law."  *Young*, 96 Wn.2d at 738.  So, as in *Young*, the Court should not award treble damages.

# IV.

## TRIAL PROCEDURES

### A.    A Class Action Does Not Alter A Claim's Elements Or Burden Of Proof

" 'The class action is a procedural device intended to advance judicial economy by trying claims together that lend themselves to collective treatment. It is not meant to alter the parties' burdens of proof … or the substantive prerequisites to recovery under a given tort.' "  *Blaz v. Belfer*, 368 F.3d 501, 504 (5th Cir. 2004) (citation omitted).

In the United States Supreme Court's words:  "In the Rules Enabling Act, Congress authorized this Court to promulgate rules of procedure subject to its review, 28 U.S.C. § 2072(a), but with the limitation that those rules 'shall not abridge, enlarge or modify any substantive right,' § 2072(b)."  *Shady Grove Orthopedic Assocs., P.A.*, 559 U.S. at 406-07.  Rule 23 complies with that limitation because it "governs only 'the manner and the means' by which the litigants' rights

---

(Fn. cont'd)

plaintiffs who had joined in prosecuting the action "would further the CPA's remedial goals, compensating the plaintiffs for their inconvenience, substantial loss of time, and the expense of pursuing their individual claims."  *Id*.

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 32

6254522.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1    are 'enforced,'" and does not alter " 'the rules of decision by which [the] court will

2    adjudicate [those] rights.' "  *Id.* at 407.

3              A class action … merely enables a federal court to
              adjudicate claims of multiple parties at once, instead of in
4              separate suits. And like traditional joinder, it leaves the
              parties' legal rights and duties intact and the rules of
5              decision unchanged.

6    *Id.* at 408.

7
         The elements of a claim and the burden of proving them are substantive rules
8
     of decision that define the parties' legal rights and duties and guide a court in adju-
9
     dicating them.  Rule 23 does not and cannot alter what a named plaintiff or class
10
     member must prove in order to recover; that is substantive law the rule leaves
11
     untouched.  Thus, a class action "does not alter the required elements that must be
12
     found to impose liability and fix damages (or the burden of proof thereon)."
13
     *Cimino*, 151 F.3d at 312.
14
         That is why "if the case proceeds past the [class] certification stage, the
15
     plaintiff class must carry the burden of proving every element of its claims to prevail
16
     on the merits."  *Briseno*, 844 F.3d at 1131.
17
         It is true, of course, that in a class action, a plaintiff may introduce common
18
     proof of those elements of a class' claims which are susceptible of proof by common
19
     evidence.  And a class plaintiff may use statistical or representative evidence to do
20
     so—but only when that same evidence would be admissible to prove a plaintiff's or
21
     class member's claim if brought as an individual action.
22
              In a case where representative evidence is relevant
23              in proving a plaintiff's individual claim, that

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 33
6254522.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

> evidence cannot be deemed improper merely because the claim is brought on behalf of a class. To so hold would ignore the Rules Enabling Act's pellucid instruction that use of the class device cannot "abridge ... any substantive right." 28 U.S.C. § 2072(b).

*Tyson Foods, Inc. v. Bouaphakeo*, ___ U.S. ___, 136 S. Ct. 1036, 1046 (2016).

However, when a class member's recovery depends on proof of an element of a claim that is not susceptible of common proof, the plaintiff must offer individual evidence on that element for each class member. The plaintiff can no more use the class device to avoid the need to prove individual elements of class members' claims than she can employ the class procedure to deprive a defendant of its defenses. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011) ("Because the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right,' … a class cannot be certified on the premise that Wal-Mart will not be entitled to litigate its statutory defenses to individual claims.")

**B.    Jordan's Burden Of Proving The Four Major Individual Issues**

In this case, Jordan bears the burden of proof on four issues that are not susceptible of common proof:  (1) a lock on the class member's house was rekeyed; (2) the class member's ownership of the property when a lock was rekeyed and throughout the period during which rental value damages are sought; (3) the class member's post-default consent (or lack of consent) to Nationstar's entry to preserve and protect the property; (4) the class member's occupancy of the premises.

The Court's summary judgment order grants relief only to class members whose houses were rekeyed by Nationstar or its vendors when the class member

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 34
6254522.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1  owned the property, i.e., before foreclosure.  ECF No. 262 at 8.  Jordan must present

2  individual evidence to prove the rekeying of any class member's house beyond the

3  3,000 or so reflected in Nationstar's computerized records.

4      As already pointed out, ownership of the property is a key element of

5  Jordan's trespass and CPA claims.  *See* pp. 17-18 above; *Allen*, 43 Wn.2d at 511;

6  RCW 19.86.090.  Ownership cannot be established by any proof common to all

7  class members.  Jordan has not presented any common evidence to prove this

8  element of class members' claims, so ownership can be established only by

9  introduction of the testimony of class members or other individual evidence

10  regarding class member properties.

11      Post-default consent (or lack of consent) to entry and property preservation is

12  a key element as well.  Ordinarily, consent is an affirmative defense to trespass and

13  thus an issue on which the defendant would bear the burden of proof.  *See* ECF No.

14  237 at 8.  But in this case, Jordan must prove lack of consent for two reasons.

15      First, as the Court said in granting Jordan partial summary judgment:

16  "[B]orrowers who consented to the rekeying of their homes are already excluded

17  from the Class definition, which states 'entering a Class member's property without

18  notice to the Class member; and/or without the express contemporaneous consent of

19  the Class member; and/or without permission of the court…' ECF No. 207 at 26."

20  ECF No. 262 at 10.  The named plaintiff and class members bear the burden of

21  proving that each person seeking to recover actually fits within the class definition

22  and thus is a member of the class.  *See Briseno*, 844 F.3d at 1131-32; *Miller v.*

23  *Ghirardelli Chocolate Co*., No. 12–cv–04936–LB, 2015 WL 758094, at *10 (N.D.

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 35

6254522.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1  Cal. 2015).

2  　　Second, lack of consent is an element on which Jordan bears the burden of

3  proof in seeking rental value damages under RCW 59.04.050.  That statute

4  expressly makes lack of consent an element of the affirmative case for recovery of

5  rental value damages, providing:

6  　　　　Whenever any person ***obtains possession of premises
   ***without the consent of the owner*** or other person having

7  　　　　the right to give said possession, he or she shall be deemed
   　　　　a tenant by sufferance merely, and shall be liable to pay

8  　　　　reasonable rent for the actual time he or she occupied the
   　　　　premises ….

9

10  RCW 59.04.050 (emphasis added).

11  　　Since the statute imposes treble damage liability only on a person who obtains

12  possession without the owner's consent, the plaintiff must prove lack of consent as

13  an element of her claim under RCW 59.04.050.  *See State v. Anderson*, 72 Wn. App.

14  253, 260 (1993) ("[A] claimant generally has the burden of proving the facts

15  necessary to sustain his or her claim.").  Jordan has no evidence to prove lack of

16  consent at trial.

17  　　Finally, Jordan properly bears the burden of proving that Nationstar occupied

18  each class member's house after rekeying the door, and the class member did not

19  reoccupy the premises.  RCW 59.04.050 makes a defendant liable "liable to pay

20  reasonable rent [only] for the actual time he or she ***occupied*** the premise."

21  (Emphasis added.)

22  　　Contrary to Jordan's argument, the Washington Supreme Court did not deter-

23  mine that Nationstar occupied every house on which it changed a lock.  The court

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 36
6254522.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1   considered only the facts relating to Jordan, individually, not those regarding class

2   members. *See Jordan*, 185 Wn.2d at 888-89. And it determined only that those

3   facts showed an exercise of control of the premises sufficient to constitute "posses-

4   sion" offending RCW 7.28.230. *Id*.

5          Washington has enforced RCW 7.28.230 strictly to prevent a mortgagee from

6   interfering in any way with the borrower's right to exclusive possession of the

7   property prior to foreclosure. An interference with possession short of squatting on

8   the property can, and in *Jordan* was held to, offend RCW 7.28.230.

9          RCW 59.04.050, however, serves a different purpose—allowing a property

10  owner reasonable compensation for a wrongful use or occupancy of the property.

11  And it permits recovery of rental value only for the period a defendant "occupied"

12  the property.

13         The Washington Supreme Court did not determine that Nationstar "occupied"

14  a house for purposes of RCW 59.04.050 by simply rekeying one lock on one door.

15  Rather, it held only that by rekeying the lock on Jordan's door Nationstar interfered

16  with her right to exclusive possession sufficiently to offend RCW 7.28.230.

17         Occupancy of the premises for purposes of RCW 59.04.050 was not decided

18  by *Jordan*. It remains a factual issue at trial. Jordan properly bears the burden of

19  proof on that issue as RCW 59.04.050 permits recovery of reasonable rental value

20  only during the period the defendant "occupied" the premises.

21         In granting partial summary judgment, the Court appears to have shifted the

22  burden of proof on this issue to Nationstar, stating that it "may supply evidence at

23  trial as to those Class members who continued to occupy their homes after rekeying

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 37

6254522.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1   and their damages may be reduced accordingly.  ECF No. 262 at 16.  But for the

2   reasons just stated and those stated immediately below, it is both legally improper

3   and unfair to require Nationstar to disprove this element of Jordan's claim for rental

4   value damages.

5   **C.      The Burden Of Proving These Individual Issues**
            **Cannot Be Shifted To Nationstar**
6

7       Jordan cannot shift the burden of proving these elements of class members'

8   claims to Nationstar.  As already stated, the class action nature of this lawsuit does

9   not alter the elements of Jordan's claims or shift the burden of proving those

10  elements.

11      Moreover, the prior procedural rulings made in this case at Jordan's request

12  have hamstrung Nationstar, preventing it from obtaining critical evidence on

13  ownership, occupancy, and consent.  In its motion to decertify, Nationstar pointed

14  out that individual class member evidence would be needed to prove the damages

15  Jordan sought.  ECF No. 119 at 14-20; ECF No. 178 at 7-16.  The Court denied

16  decertification.  ECF No. 207.  Nationstar also tried to ascertain how Jordan planned

17  to prove these individual elements of class members' claims, propounding discovery

18  about Jordan's trial plan.  Jordan objected, and the Court denied Nationstar's motion

19  to compel answers to that discovery.  ECF No. 171.  Nationstar then noticed the

20  depositions of individual class members on subjects including ownership and

21  consent.  Jordan moved to quash Nationstar's subpoenas and that motion was

22  granted.  ECF No. 186.  So it would violate Nationstar's due process rights and be

23  grossly unfair to saddle it now with the burden of proving the very issues on which

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 38
6254522.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1    it was blocked from obtaining the relevant evidence.

2    **D.    The Court's Proposed Method For Handling Bankrupt Class Members
         Would Violate Rule 23's Prohibition On One-Way Intervention**

3
4        As the Court's summary judgment order acknowledges, a class member who

5    filed a Chapter 7 bankruptcy after Nationstar rekeyed a door on her house lacks

6    standing to bring the claims on which Jordan sues.  ECF 262 at 10-11.  The claims

7    belong to her bankrupt estate, and only the bankruptcy trustee may prosecute them.

8    *Id*.

9        Nationstar placed Jordan on notice of this problem more than a year ago.  The

10   August 26, 2016 Joint Certification of Rule 26(f) Conference disclosed:

11               Nationstar also contends that ***some class members' claims are***
               ***barred because*** they filed bankruptcy proceedings and did not
12             list the claims in their bankruptcy schedules and so are now
               judicially estopped from suing on those claims and/or because
13             ***the claims belong to their bankruptcy estates*** rather than the
               class members individually.
14   ECF No. 88 p. 4:14-20 (emphasis added).

15       Had Jordan desired to litigate claims of class members who filed bankruptcy

16   petitions, it was her burden to notify their bankruptcy trustees and seek their consent

17   to prosecution of this case on their behalf or request abandonment of the claims to

18   the bankrupt class members.  Jordan took no action to do so.  As a consequence,

19   bankruptcy trustees have never been made part of this action.  The third amended

20   class definition includes only present or former property owners, not their

21   bankruptcy trustees.  ECF No. 207 at 25.

22       The Court's partial summary judgment order suggests that Jordan might fix

23   this problem of her own making by sending trustees notice after trial, giving them an

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 39
6254522.2

"opportunity to ratify, join or be substituted." ECF No. 262 at 10-12. Respectfully, the time has already passed for adding or substituting new class members, and it certainly will have expired by the time trial is held.

Rule 23(c)(2) was adopted in 1966 to end the possibility of "one-way intervention"—that is, the intervention of a plaintiff in a class action after an adjudication favoring the class had taken place. *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 546-49 (1974); *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 759-60 (3d Cir. 1974).

> A recurrent source of abuse under the former Rule lay in the potential that members of the claimed class could in some situations await developments in the trial or even final judgment on the merits in order to determine whether participation would be favorable to their interests. If the evidence at the trial made their prospective position as actual class members appear weak, or if a judgment precluded the possibility of a favorable determination, such putative members of the class who chose not to intervene or join as parties would not be bound by the judgment. This situation—the potential for so-called 'one-way intervention'—aroused considerable criticism upon the ground that it was unfair to allow members of a class to benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one. The 1966 amendments were designed, in part, specifically to mend this perceived defect in the former Rule and to assure that members of the class would be identified before trial on the merits and would be bound by all subsequent orders and judgments.

*Am. Pipe & Constr. Co.*, 414 U.S. at 547 (fns. omitted).

In granting Jordan's motion for partial summary judgment on class members' claims, the Court has already ruled on the merits of class members' claims. It is

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 40
6254522.2

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1   now too late for the Court to substitute in new parties who will exercise their option

2   to ratify or be joined with full knowledge of the Court's ruling in their favor. *See*

3   *Villa v. San Francisco Forty-Niners, Ltd.*, 104 F.Supp.3d 1017, 1021 (N.D. Cal.

4   2015) (denying plaintiff's pre-certification partial summary judgment motion on

5   liability for this reason). Waiting until after trial will only make the Rule 23(c)(2)

6   violation worse. The rule was adopted specifically "to assure that members of the

7   class would be identified *before trial* on the merits." *Am. Pipe & Constr. Co.*,

8   414 U.S. at 547 (emphasis added).

9        Accordingly, Rule 23(c)(2) will not permit the suggested post-trial notice to

10   bankruptcy trustees, allowing them to choose whether to join the action after the

11   Court's ruling on the merits of class members' claims. To comply with that rule and

12   also Rule 17, the Court should simply adopt the course that Nationstar suggested

13   and Jordan conceded—that is, award the bankrupt class members nothing, leaving

14   bankruptcy trustees free to prosecute their claims in a later proceeding.

15                   **V.  CONCLUSION**

16        Based on the evidence at trial and the authorities cited above, the Court

17   should enter a judgment that justly compensates class members for any real loss

18   suffered but avoids conferring the vast windfall Jordan seeks.

19

20

21

22

23

1    DATED:  December 1, 2017.

2
s/ *Andrew W. Noble*
3    Jan T. Chilton (admitted *pro hac vice*)
Mark D. Lonergan (admitted *pro hac vice*)
4    Mary Kate Sullivan (admitted *pro hac vice*)
Andrew W. Noble, WSBA #50137
5    SEVERSON & WERSON, PC
One Embarcadero Center, 26th Floor
6    San Francisco, CA 94111
Phone:  415-398-3344; Fax: 415-956-0439
7    jtc@severson.com; mks@severson.com;
awn@severson.com
8

9    John A. Knox, WSBA #12707
WILLIAMS, KASTNER & GIBBS PLLC
10    601 Union Street, Suite 4100
Seattle, WA 98101-2380
11    Phone:  206-628-6600; Fax: 206-628-6611
jknox@williamskastner.com
12

13    Attorneys for Defendant
Nationstar Mortgage LLC
14

15

16

17

18

19

20

21

22

23

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 42
6254522.2

1

## **DECLARATION OF SERVICE**

2

3         I hereby declare under penalty of perjury under the laws of the United States

that on the 1st day of December, 2017, the foregoing document was efiled with the

4

Clerk of the Court via CM/ECF which caused a true and correct copy of it to be

5

6    emailed to counsel of record below:

7    Clay M. Gatens, WSBA #34102           Michael D. Daudt, WSBA #25690
     Michelle A. Green, WSBA #40077        DAUDT LAW PLLC
8    JEFFERS, DANIELSON, SONN &            2200 Sixth Avenue, Suite 1250
     AYLWARD, P.S.                         Seattle, WA 98121-1820
9    P.O. Box 1688                         T: 206-445-7733
     Wenatchee, WA  98807-1688             F: 206-445-7399
10   T:  509-662-3685                      Email: mike@daudtlaw.com
     F:  509-662-2452
11   E-mail:  clayg@jdsalaw.com;
     michelleg@jdsalaw.com
12

13   Beth E. Terrell, WSBA #26759          Daniel J. Gibbons, WSBA #33036
     Blythe H. Chandler, WSBA #43387       WITHERSPOON KELLEY
14   TERRELL MARSHALL LAW                  422 West Riverside Ave., Suite 1100
     GROUP PLLC                            Spokane, Washington 99201
15   936 North 34th Street, Suite 300      T: (509) 624-5265
     Seattle, WA 98103-8869                F: (509) 458-2728
16   T: 206-816-6603                       E-mail: djg@witherspoonkelley.com
     F: 206-319-5450
17   E-mail:  bterrell@terrellmarshall.com;
     bchandler@terrellmarshall.com
18

19   Howard N. Cayne, (Pro Hac Vice)
20   David B. Bergman, (Pro Hac Vice)
     Asim Varma, (Pro Hac Vice)
21   ARNOLD & PORTER LLP
     601 Massachusetts Avenue, N.W.
22   Washington, D.C. 20001
     T: 202- 942-5656
23   F: 202-942-5999

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 43

6254522.2

1  E-mail: howard.cayne@aporter.com;
   david.bergman@aporter.com;
2  asim.varma@aporter.com

3       Signed at San Francisco, California this 1st day of December, 2017.

4
                                    _s/ Andrew W. Noble_____
5                                   Jan T. Chilton (admitted pro hac vice)
                                    Mark D. Lonergan (admitted pro hac vice)
6                                   Mary Kate Sullivan (admitted pro hac vice)
                                    Andrew W. Noble, WSBA #50137
7                                   SEVERSON & WERSON, PC
                                    One Embarcadero Center, 26th Floor
8                                   San Francisco, CA 94111
                                    Phone:  415-398-3344; Fax: 415-956-0439
9                                   jtc@severson.com; mks@severson.com;
                                         awn@severson.com
10

11

12

13

14

15

16

17

18

19

20

21

22

23

NATIONSTAR MORTGAGE LLC'S
TRIAL BRIEF - 44
6254522.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600