Beth E. Terrell, WSBA #26759
Blythe H. Chandler, WSBA #43387
Attorneys for Plaintiff and the Class
TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450
Email: bterrell@terrellmarshall.com
Email: bchandler@terrellmarshall.com

[Additional Counsel Appear On Signature Page]

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF WASHINGTON

LAURA ZAMORA JORDAN, as her
separate estate, and on behalf of others
similarly situated,

           Plaintiff,

   v.

NATIONSTAR MORTGAGE LLC, a
Delaware limited liability company,

           Defendant,

   and

FEDERAL HOUSING FINANCE
AGENCY,

           Intervenor.

NO. 2:14-cv-00175-TOR

**PLAINTIFF'S TRIAL BRIEF**

CLASS ACTION

# TABLE OF CONTENTS

Page

I.      INTRODUCTION .......................................................................................1

II.     STATEMENT OF FACTS......................................................................1

III.    ARGUMENT & AUTHORITY ................................................................4

        A.     Statutory trespass..............................................................................4

        B.     Damages ...........................................................................................8

               1.     The amount it would have cost to restore Class
                      member properties to their pre-lock change condition.........10

               2.     The fair market rental value of Class members' homes .......11

               3.     Disgorgement of Nationstar's ill-gotten profits....................12

               4.     Class member bankruptcies ...................................................13

IV.     CONCLUSION .......................................................................................14

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Anderson v. Bureau of Indian Affairs,*
    764 F.2d 1344 (9th Cir. 1985) ................................................................12

**STATE CASES**

*Allen v. Am. Land Research,*
    95 Wash.2d 841 (1981) .................................................................8

*Chem. Bank v. Wash. Pub. Power Supply Sys.,*
    102 Wash.2d 874 (1984) ..............................................................13

*Clipse v. Michels Pipeline Constr. Co.,*
    154 Wash. App. 573 (2010) ..........................................................5

*Columbia & P.S.R. Co. v. Histogenic Med. Co.,*
    14 Wash. 475 (1896) ..................................................................11

*Cox v. O'Brien,*
    150 Wash. App. 24 (2009)...........................................................12

*Howard v. Edgren,*
    62 Wash.2d 884 (1963) ............................................................7, 11

*Jordan v. Nationstar Mortg. LLC,*
    185 Wash.2d 876 (2016) ...........................................................6, 7

*Jordan v. Nationstar Mortgage, LLC,*
    No. 92081-8 (Wash. Oct. 27, 2015) .............................................6

*Olwell v. Nye & Nissen Co.,*
    26 Wash.2d 282 (1946) ...............................................................8

*Olympic Pipe Line Co. v. Theony,*
    124 Wash. App. 381 (2004) .........................................................10

*Messenger v. Frye*,
  176 Wash. 291 (1934) ............................................................................10

*State v. Nw. Magnesite Co.*,
  28 Wash.2d 1 (1947) .................................................................................7

*State Farm Gen. Ins. Co. v. Emerson*,
  102 Wash.2d 477 (1984) ..........................................................................7

*W. Loan & Bldg. Co. v. Mifflin*,
  162 Wash. 33 (1931) .............................................................................6, 7

*Young v. Young*,
  154 Wash.2d 477 (2008) ..........................................................................8

## STATE STATUTES

RCW 4.24.630(1) ...........................................................................................4

RCW 7.28.230................................................................................... *passim*

RCW 59.04.050 .............................................................................................11

## OTHER AUTHORITIES

Colo. Rev. Stat. Ann. § 38-35-117 ........................................................7

Idaho Code Ann. § 6-104 ............................................................................7

Nev. Rev. Stat. § 40.050 ............................................................................7

Okla. Stat. Ann. tit. 42 § 10 .......................................................................7

Utah Code Ann. § 78B-6-1310) ................................................................7

Restatement (Second) of Restitution § 1 (1983)................................13

Restatement (Third) of Property (1997) ..............................................7

Restatement (Third) of Restitution and Unjust Enrichment,
§ 40 & cmt. b (2011) ...........................................................................11, 12

# I.  INTRODUCTION

The Court's order granting in part Plaintiff's motion for partial summary judgment (ECF No. 262) has significantly narrowed the issues for trial. Liability is established for all members of the Class who experienced a lock change prior to foreclosure on their common law trespass and Washington Consumer Protection Act ("CPA") claims. At trial, the Class will present evidence on the following unresolved issues: (1) the number of Class members who experienced a lock change prior to foreclosure; (2) the scienter element of the Class's statutory trespass claims; and (3) damages. The Class anticipates that Nationstar will present evidence relating to its affirmative defense of consent and its argument that some Class members' damages should be reduced because they re-occupied their homes after Nationstar unlawfully took possession of the homes by changing the locks. The Class does not yet know exactly what evidence Nationstar will present to support its defenses and arguments for reduction in damages.

# II.  STATEMENT OF EVIDENCE

The evidence at trial will show that Nationstar changed the locks on the homes of 3,451 Class members. Nationstar's summary data reflects that it changed the locks on the homes of 3,066 Class members while they owned their homes. Plaintiff will present evidence from the loan files of an additional 411 Class members, showing that Nationstar changed the locks on those Class

members' homes prior to foreclosure. Based on both Nationstar's summary data and the additional evidence of lock changes the Class will present at trial, the Class' expert has determined that Nationstar changed the locks on the homes of 3,451 Class members while those Class members owned their homes.

The Class will present evidence that Nationstar had a written policy of forcibly entering and changing the locks on the homes of Washingtonians who had defaulted on their mortgages when one of Nationstar's vendors determined the home was vacant. Nationstar required its vendors to change the locks on homes even when the homes were already secure. Nationstar expected vendors to either drill out the existing lock or take the knob "completely off" and install a new lock. Nationstar's policy did not require any attempt to contact the homeowner before changing the locks. Nationstar did not call such borrowers. Nationstar did not seek the borrower's permission or court approval before entering the property.

The Class will present evidence that Nationstar acted with knowledge of the wrongfulness of its conduct. The Class will present evidence that Nationstar failed to conduct any specific evaluation to determine whether its lock change practices complied with Washington law. Nationstar failed to review the lawfulness of its lock change practice, even after Ms. Jordan's counsel sent Nationstar a letter stating that the practice violated RCW 7.28.230. Nationstar did

1  not remove the locks from Ms. Jordan's home in response to the letter. Even after

2  the Supreme Court ruled that Nationstar's lock change practices violated RCW

3  7.28.230, Nationstar did not remove its own locks and restore homeowners'

4  locks. Although Nationstar asserts that it believed its lock change policy was

5  permissible because borrowers' deeds of trust permitted lock changes, Nationstar

6  had no policy of reviewing deeds of trust before changing the locks on borrowers'

7  homes. Nationstar knew that borrowers retained the rights and title to their homes

8  until Nationstar completed a legal action such as foreclosure. According to

9  Nationstar, because it did not have "exclusive rights to the property

10  preforeclosure," it could not have had possession of the property prior to

11  foreclosure.

12       The Class will present evidence that Nationstar's fee schedules called for a

13  charge of $60 to change the locks on a person's home. Each of the 3,451 Class

14  members whose locks Nationstar changed, and against whom Nationstar fails to

15  prove an affirmative defense, is entitled to an award of $60.

16       The Class's expert will present evidence that the fair market rental value of

17  the 3,451 Class members' homes during the period they were excluded from the

18  homes is at least $57,810,841.00.

19       In addition to changing the locks, Nationstar directed its vendors to

20  perform other "property preservation" measures at Class members' homes,

including winterizing homes, boarding up doors and windows, and other "health and safety" measures. Nationstar charged property preservation fees totaling $8,904,077.16 to 3,968 of the loans on the Class List. Class members' money or property was used to pay the fees Nationstar assessed. Class members paid the fees to Nationstar when they sold their homes, obtained loan modifications, or brought their loans current. Other fees were paid to Nationstar from foreclosure or short sale proceeds, which would otherwise have been disbursed to Class members or used to reduce the total amount of the Class member's debt written off for tax purposes.

## III.  ARGUMENT & AUTHORITY

The Court is already familiar with the elements of the Class' common law trespass and Washington Consumer Protection Act ("CPA") claims, and has ruled that Class has established liability on each of those claims for every Class member whose lock Nationstar changed prior to foreclosure, short sale, cure of the default, or other disposal of the property by the Class member.

**A.    Statutory trespass**

To prove statutory trespass, the Class must show that Nationstar "wrongfully committed waste or injury" to the Class' property. RCW 4.24.630(1). Nationstar's conduct was wrongful if it "intentionally or unreasonably committed one or more acts *and* knew or had reason to know that

[it] lacked authorization." *Clipse v. Michels Pipeline Constr. Co.*, 154 Wash. App. 573, 580 (2010). As set forth in the Court's order granting in part Plaintiff's motion for partial summary judgment, Nationstar's trespasses were intentional acts that injured Class members' properties (ECF No. 262 at 13–16). The sole issue for trial is whether Nationstar acted wrongfully because it knew or had reason to know it lacked authorization to change the locks on Class members' homes.

Nationstar contends that it could not have known it lacked authorization to forcibly enter borrowers' homes, destroy the existing locks, and install its own locks before foreclosure until the Washington Supreme Court answered the questions certified to it by this Court. But as the Court previously concluded: "Despite that Nationstar now argues that it could not have known that the entry provisions conflict with RCW 7.28.230(1), its briefing may suggest that it did, in fact, know (or should have known) that it lacked authorization to trespass, i.e., changing locks and thereby categorically exercising control and thus, possession." ECF No. 207 at 12.

Nationstar's own statements, found in its briefing to the Washington Supreme Court on the certified questions presented in this case, combined with its admissions that it failed to undertake any serious investigation into the legality of its lock changes practices, even after receiving a letter from Ms. Jordan's counsel

1  stating that the policy violates Washington law, establish that Nationstar had

2  reason to know its trespasses were unauthorized.

3  Nationstar never disputed that Washington law prohibited it from gaining

4  possession of Plaintiff's and Class members' homes before foreclosure. *See*

5  *Jordan v. Nationstar Mortg. LLC*, 185 Wash.2d 876, 884-85 (2016)

6  ("Importantly, the parties agree on this point; under state law, a secured lender

7  cannot gain possession of the encumbered property before foreclosure.").

8  Nationstar also "concede[d] that the borrower's right to possession cannot be

9  overcome by a contrary provision in the mortgage or deed of trust because such a

10  provision would be unenforceable as it would contravene Washington law." *Id.* at

11  886; *see also* Answering Brief of Nationstar Mortgage, LLC at 9-11, *Jordan v.*

12  *Nationstar Mortgage, LLC*, No. 92081-8 (Wash. Oct. 27, 2015). Nationstar **knew**

13  that the entry provisions did not authorize it to take any actions that constituted

14  "possession" of Plaintiff's and Class members' homes.

15  In explicitly prohibiting lenders from possessing borrowers' homes before

16  foreclosure, RCW 7.28.230(1) "essentially codified Washington's lien theory of

17  mortgages." *Jordan*, 185 Wash.2d at 885. The lien theory of mortgages views the

18  mortgage as a lien upon the property rather than a conveyance that entitles the

19  mortgage to possession of the property. *Id.* (citing *W. Loan & Bldg. Co. v. Mifflin*,

20  162 Wash. 33, 39 (1931)). As long ago as 1963, the Washington Supreme Court

"interpreted RCW 7.28.230(1) to mean that a mortgagor's default does not disrupt the mortgagor's right to possession of real property, and that the mortgagor retains the right to possession until there has been foreclosure and sale of the property." *Id.* (citing *Howard v. Edgren*, 62 Wash.2d 884, 885 (1963)).

Nationstar had to concede that RCW 7.28.230(1) prohibited a lender from gaining possession of a borrower's home before foreclosure because of longstanding Washington law interpreting the statute. *See, e.g.*, *Howard*, 62 Wash.2d at 885; *Mifflin*, 162 Wash. at 39. Nationstar also had to concede that an agreement that purported to contract around RCW 7.28.230(1) was unenforceable, again in recognition of longstanding Washington law. *See State Farm Gen. Ins. Co. v. Emerson*, 102 Wash.2d 477, 481 (1984); *State v. Nw. Magnesite Co.*, 28 Wash.2d 1, 26 (1947). The Washington Supreme Court cited these cases and section 4.1 of the Restatement (Third) of Property (1997), which states that agreements allowing mortgagees to possess property prior to foreclosure conflict with lien theory statutes. *Jordan*, 185 Wash.2d at 885.

The Supreme Court also cited statutes from other lien theory jurisdictions that it said expressly invalidate agreements between lenders and borrowers that allow lenders to take possession of the borrower's property prior to foreclosure. *Id.* at 886 (citing Colo. Rev. Stat. Ann. § 38-35-117; Idaho Code Ann. § 6-104; Nev. Rev. Stat. § 40.050; Okla. Stat. Ann. tit. 42 § 10; Utah Code Ann. § 78B-6-

1310).[1] While the Supreme Court noted that Washington's legislature did not expressly invalidate agreements allowing mortgagees to take possession, *id.*, the absence of explicit language in the statute is irrelevant because Nationstar admitted that agreements authorizing a lender to gain possession of a borrower's home before foreclosure would be unenforceable.

The arguments and evidence at trial will show that Nationstar acted wrongfully when it entered Class members' properties and changed the locks on their homes prior to foreclosure.

## B. Damages

Nationstar deprived Class members of the exclusive use of their homes—the "very essence" of their property—when it changed the locks on their homes. *Olwell v. Nye & Nissen Co.*, 26 Wash.2d 282, 286 (1946). As a result, Nationstar "cannot be heard to say that [its] wrongful invasion of the [Class members'] property right to exclusive use is not a loss compensable in law." *Id.* At trial, the Court will determine whether the Class is entitled to disgorgement of Nationstar's ill-gotten profits—in addition to damages for physical injury to their property and the fair market rental value of their homes, to which the Court has already said

---

[1] The cited statutes are very similar to Washington's statute, and only the Oklahoma statute references "agreements to the contrary." *See* Appendix A.

the Class is entitled. The Court will also use evidence provided by the parties' experts and found in Nationstar's records to calculate the amount of damages.

Within the legally permissible measures of damages, this Court has "tremendous discretion to fashion a remedy to do substantial justice to the parties and put an end to the litigation." *Young v. Young*, 154 Wash.2d 477, 487–88 (2008). This Court has wide discretion in determining the measure of damages under the CPA. *Allen v. Am. Land Research*, 95 Wash.2d 841, 852 (1981) (holding that trial court's use of restitution as the measure of damages under the CPA was permissible and upholding court's order of rescission of a contract for sale of land).

The Court has ruled that the Class may provide evidence on three measures of damages at trial: (1) the amount it would have cost to restore Class members' properties to their condition before Nationstar changed Class members' locks, measured by the amount Nationstar customarily charged borrowers to change locks; (2) the fair market rental value of Class members' property; and (3) Nationstar's profits from its unlawful trespasses and unfair acts at Class member properties, measured by the fees Nationstar charged Class members for property preservation work done at their homes.

1. The amount it would have cost to restore Class member properties to their pre-lock change condition.

Because Nationstar trespassed upon Class members' properties, the Class is entitled to recover the amount of money reasonably necessary to restore the properties to their condition prior to the trespass. *See Messenger v. Frye*, 176 Wash. 291, 298-99 (1934); *Olympic Pipe Line Co. v. Theony*, 124 Wash. App. 381, 393-394 (2004) ("Damages for a temporary invasion or trespass are the cost of restoration and the loss of use."). It is undisputed that Nationstar destroyed at least 3,451 Class members' locks when it forcibly entered their homes. Each of those 3,451 Class members is entitled to recover the amount it would have cost to restore his or her property to its original condition by removing Nationstar's locks and installing the homeowner's own lock.

After drilling out and destroying the owner's locks, Nationstar installed its own locks, and charged a $60.00 fee for that service. Class members would have had to pay at least as much as Nationstar charged to remove Nationstar's locks and replace them with their own. Therefore, those fees represent a conservative measure of the Class members' damages for physical injury to property.

The evidence at trial will show that the amount of this damage is $207,060.00, before any trebling of damages, and subject to any reductions the Court deems necessary based on Nationstar's defenses. The Court previously found that Class members were entitled to recover all amounts Nationstar's

summary data showed were charged for lock changes to people on the Class List

Nationstar produced. The Class has refined its calculation of this damage amount

by limiting to the Class List to individuals who suffered a lock change while they

owned the property and claiming only one payment per Class member for

physical injury to Class members' properties.

  2. <u>The fair market rental value of Class members' homes.</u>

  Washington has long held a defendant who takes possession of someone

else's property liable for all the damages caused by the wrongful possession of

the property, including the reasonable rental value of the property. *Columbia &*

*P.S.R. Co. v. Histogenic Med. Co.*, 14 Wash. 475, 481 (1896). The Washington

Supreme Court has held that a lender who takes possession of property in

violation of RCW 7.28.230 is liable for damages under Washington's tenancy by

sufferance statute, RCW 59.04.050, and the remedy is the reasonable rent for the

time the lender possessed the premises. *Howard v. Edgren*, 62 Wash.2d 884, 886

(1963). In addition, it is the well-established common-law rule that a property

owner can recover the reasonable rental value of a property unlawfully possessed

by a defendant. *Restatement (Third) of Restitution and Unjust Enrichment* § 40 &

cmt. b (2011) ("*Restatement of Restitution*") ("To the extent that the defendant's

unjust enrichment may be identified with ordinary rental value, the owner's

entitlement to restitution is captured in the claim to damages for 'use and

occupation'"); *see also Cox v. O'Brien*, 150 Wash. App. 24, 36 (2009) (adopting the *Restatement (Third) of Restitution and Unjust Enrichment*).

The evidence at trial will show that the amount of this damage is $57,810,841.00 before any trebling of damages, and subject to any reductions the Court deems necessary based on Nationstar's defenses.

3. <u>Disgorgement of Nationstar's ill-gotten profits.</u>

A defendant must disgorge the profits obtained by the defendant's trespass upon or unauthorized use of the plaintiff's property. The Restatement recognizes a "general rule directing the restitution of benefits obtained through interference with legally protected property interests." *Restatement of Restitution* § 40, cmt. a. Further "a conscious wrongdoer will be stripped of gains from unauthorized interference with another's property" while an innocent wrongdoer's liability is the "value obtained in the transaction." *Id.*, cmt. b. Under common law principles, a party who possesses land knowing it lacks authority to do so is liable for more than just the rental value of property. *Anderson v. Bureau of Indian Affairs*, 764 F.2d 1344, 1347–48 (9th Cir. 1985) (ordering disgorgement of profits of crops grown on land owned by another and explaining that it would be "neither fair nor reasonable" to limit the landowner to recovery of the reasonable rent).

The equities favor disgorgement of Nationstar's profits here because the fees it collected for its wrongful trespasses and unfair and deceptive acts were

paid by the Class. Permitting Nationstar to retain the fees it collected from Class members for property preservation services—other than the inspections Nationstar's vendors performed—would be unjust. *See Chem. Bank v. Wash. Pub. Power Supply Sys.*, 102 Wash.2d 874, 909–910 (1984) (explaining that when a defendant obtains a benefit from the plaintiff by infringement of the plaintiff's interest it must make restitution in the amount necessary to prevent unjust enrichment, citing *Restatement (Second) of Restitution* § 1 (1983)). Ms. Jordan and the Class do not seek recovery of the inspection fees because some inspections were performed without any entry onto their properties.

The Court will be able to use Nationstar's fee data to calculate the amount of this damage once it has determined whether any Class members are subject to Nationstar's defenses.

4. Class member bankruptcies

Nationstar argues that Class members who filed for bankruptcy have lost their claims (ECF No. 222). The Class has reviewed the bankruptcy data produced by Nationstar (N007717) and compared the dates of the bankruptcies with the dates of the lock changes the Class has used to calculate damages. The Class has identified 31 lock changes that occurred after the date of dismissal for the Class member's bankruptcy listed in Nationstar's data. The Class has identified 332 lock changes that occurred after the date of discharge listed in

Nationstar's data. Class counsel intend to confer with Nationstar further regarding

its bankruptcy data before the pretrial conference.

## IV.  CONCLUSION

The Class is prepared to provide additional detail on the matters covered in

this trial brief at the pretrial conference or upon the Court's request.

RESPECTFULLY SUBMITTED AND DATED this 1st day of December,

2017.

TERRELL MARSHALL LAW GROUP PLLC

By:   /s/ Beth E. Terrell, WSBA #26759
    Beth E. Terrell, WSBA #26759
    Blythe H. Chandler, WSBA #43387
    Attorneys for Plaintiff and the Class
    936 North 34th Street, Suite 300
    Seattle, Washington 98103
    Telephone: (206) 816-6603
    Facsimile: (206) 319-5450
    Email:  bterrell@terrellmarshall.com
    Email:  bchandler@terrellmarshall.com

    Clay M. Gatens, WSBA #34102
    Michelle A. Green, WSBA #40077
    Attorneys for Plaintiff and the Class
    JEFFERS, DANLIELSON, SONN
      & AYLWARD, P.S.
    2600 Chester Kimm Road
    P.O. Box 1688
    Wenatchee, Washington 98807-1688
    Telephone: (509) 662-3685
    Facsimile: (509) 662-2452
    Email: clayg@jdsalaw.com
    Email: michelleg@jdsalaw.com

Michael D. Daudt, WSBA #25690
Attorneys for Plaintiff and the Class
DAUDT LAW PLLC
2200 Sixth Avenue, Suite 1250
Seattle, Washington 98121
Telephone: (206) 445-7733
Facsimile: (206) 445-7399
Email: mike@daudtlaw.com

## CERTIFICATE OF SERVICE

I, Beth E. Terrell, hereby certify that on December 1, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

John A. Knox, WSBA #12707
Attorneys for Defendant
WILLIAMS, KASTNER & GIBBS PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
Telephone:(206) 628-6600
Facsimile: (206) 628-6611
Email: jknox@williamskastner.com

Andrew W. Noble, *Admitted Pro Hac Vice*
Jan T. Chilton, *Admitted Pro Hac Vice*
Mary Kate Sullivan, *Admitted Pro Hac Vice*
Mark D. Lonergan, *Admitted Pro Hac Vice*
Attorneys for Defendant
SEVERSON & WERSON, P.C.
One Embarcadero Center, 26th Floor
San Francisco, California 94111
Telephone: (415) 677-3344
Facsimile: (415) 956-0439
Email: awn@severson.com
Email: jtc@severson.com
Email: mks@severson.com
Email: mdl@severson.com

Daniel J. Gibbons, WSBA #33036
Attorneys for Intervenor Federal Housing Finance Agency
WITHERSPOON KELLEY
422 West Riverside Avenue, Suite 1100
Spokane, Washington 99201
Telephone: (509) 624-5265
Facsimile: (509) 458-2728
Email: djg@witherspoonkelley.com

Howard N. Cayne, *Admitted Pro Hac Vice*
David B. Bergman, *Admitted Pro Hac Vice*
Asim Varma, *Admitted Pro Hac Vice*
Attorneys for Intervenor Federal Housing Finance Agency
ARNOLD & PORTER LLP
601 Massachusetts Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 942-5656
Facsimile: (202) 942-5999
Email:  howard.cayne@aporter.com
Email: david.bergman@aporter.com
Email: asim.varma@aporter.com

DATED this 1st day of December, 2017.

TERRELL MARSHALL LAW GROUP PLLC

By:   /s/ Beth E. Terrell, WSBA #26759
        Beth E. Terrell, WSBA #26759
        Attorneys for Plaintiff and the Class
        936 North 34th Street, Suite 300
        Seattle, Washington 98103
        Telephone: (206) 816-6603
        Facsimile: (206) 319-5450
        Email:  bterrell@terrellmarshall.com