UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LAURA ZAMORA JORDAN, as her separate estate, and on behalf of others similarly situated, | NO. 2:14-CV-0175-TOR |
| Plaintiff, | ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS AND SERVICE AWARD |
| v. | |
| NATIONSTAR MORTGAGE, LLC, a Delaware limited liability company, | |
| Defendant, | |
| and | |
| FEDERAL HOUSING FINANCE AGENCY, | |
| Intervenor. | |

BEFORE THE COURT are Plaintiff's Motion for Final Approval of Class

Action Settlement (ECF No. 388) and Motion for Award of Attorney's Fees, Costs

and Service Award (ECF No. 376), the Special Master's Request for Approval of

Payment of Fees and Costs (ECF No. 383) and Nationstar's Joinder in Plaintiff's

ORDER GRANTING FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND GRANTING MOTION FOR AWARD OF
ATTORNEYS' FEES AND COSTS ~ 1

Motion for Final Approval of Settlement (ECF No. 393).  These matters were heard with oral argument on March 21, 2019, for the purpose of determining the fairness of the proposed terms of the class action settlement and the requested fees and costs.  The Court has reviewed the record and files herein, and is fully informed.  For the reasons discussed below, Plaintiffs' Motion for Final Approval of Class Action Settlement (ECF No. 388) and Nationstar's Joinder (ECF No. 393) are **GRANTED**, Plaintiff's Motion for Award of Attorney's Fees, Costs and Service Award (ECF No. 376) is **GRANTED**, and the Special Master's Request for Approval of Fees and Costs (ECF No. 383) is **GRANTED**.

## BACKGROUND

This case arises from actions taken by Defendant Nationstar Mortgage LLC affecting Washington homeowners' residential properties in default.  ECF No. 2-4.  In her Second Amended Complaint, Plaintiff and Class Representative Laura Zamora Jordan ("Ms. Jordan") asserted the following causes of action: trespass; intentional trespass, RCW 4.24.630; violation of the Consumer Protection Act (CPA), RCW 19.86 *et seq.*; and breach of contract.  ECF No. 2-19 at 10-16.  The Chelan County Superior Court certified the class under Washington Civil Rule 23 on May 19, 2014.  ECF No. 1-3 (Ex. C).  Thereafter, Defendant removed the action to this Court and moved to decertify the class.  ECF Nos. 1; 119.  This Court denied Defendant's motion and certified the following class:

All persons who own or owned real property in Washington subject to a deed of trust or a mortgage serviced or held by Nationstar, whose property Nationstar or its agents deemed vacant prior to the completion of a foreclosure sale and between April 3, 2008 and July 31, 2016.

ECF No. 207 at 25.

On November 25, 2017, Ms. Jordan moved for partial summary judgment on liability. ECF No. 217. The Court granted partial summary judgment as to liability for common law trespass and CPA violations for all class members who had their properties rekeyed prior to foreclosure. ECF No. 262.

The parties entered into mediation on November 27, 2017, with the assistance of Louis D. Peterson of Hillis Clark Martin & Peterson P.S. ECF No. 361 at ¶ 7. The parties did not reach a settlement during mediation, but continued negotiations with Mr. Peterson's assistance. *Id*. The parties reached an agreement in principle just before trial was set to commence on December 18, 2017, but were unable to reach a final agreement on several settlement terms. *Id*. at ¶ 8. The Court set a new trial date of July 30, 2018. *Id*. at ¶ 9.

The parties had filed trial briefs and were set to start trial when they once again reached a settlement, this time including final agreement on the remaining disputed settlement terms. *Id*. The parties then sought preliminary approval of their class action settlement and moved the Court to schedule a final fairness hearing. ECF No. 360. On November 26, 2018, the Court granted the motion for

preliminary approval and scheduled a final fairness hearing for March 21, 2019. ECF No. 369.

## DISCUSSION

### I.      Approval of Class Action Settlement

Approval of a proposed class action settlement is governed by Federal Rule of Civil Procedure 23(e). As Class Counsel observes, Rule 23 was recently amended to address issues related to settlement, and also to take account of issues that have emerged since the rule was last amended in 2003. ECF No. 388 at 11-12; *see* Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. Particularly relevant here, the 2018 amendment to Rule 23(e) establishes core factors district courts must consider when evaluating a request to approve a proposed settlement. As amended, Rule 23(e) now provides that the Court may approve a class action settlement "only after a hearing and only on a finding that it is fair, reasonable, and adequate after considering whether":

> (A)   the class representatives and class counsel have adequately represented the class;
>
> (B)   the proposal was negotiated at arm's length;
>
> (C)   the relief provided for the class is adequate, taking into account:
>
>> (i)      the costs, risks, and delay of trial and appeal;
>>
>> (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  The amendments took effect on December 1, 2018.

Under Rule 23(e), both its prior version and as amended, fairness, reasonableness, and adequacy are the touchstones for approval of a class-action settlement.  Over the years, courts have generated lists of factors to analyze whether a proposed settlement meets these requirements.  In the Ninth Circuit, for example, courts consider the eight *Churchill* factors when assessing the fairness of a post-certification settlement.[1]  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009) (citation omitted); *Churchill Vill., L.L.C., v. Gen. Elec.*, 361 F.3d

---

[1]     The *Churchill* factors include: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009) (citation omitted); *Churchill Vill., L.L.C., v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). Additionally, "the settlement may not be the product of collusion among the negotiating parties."  *Churchill*, 361 F.3d at 576.

ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS ~ 5

566, 575 (9th Cir. 2004)).  The purpose of the amendment to Rule 23(e)(2) is

establish a consistent set of approval factors to be applied uniformly in every

circuit, without displacing the various lists of additional approval factors the circuit

courts have created over the past several decades.  As the Advisory Committee

Notes explain, "[t]he goal of this amendment is not to displace any factor, but

rather to focus the court and the lawyers on the core concerns of procedure and

substance that should guide the decision whether to approve the proposal."  Fed. R.

Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.  While the Ninth

Circuit has yet to address the amendment to Rule 23(e)(2), the Court observes that

the factors in amended Rule 23(e)(2) generally encompass the list of relevant

factors previously identified by the Ninth Circuit.

For reasons discussed below, the Court concludes that the Settlement

Agreement satisfies the requirements of amended Rule 23(e)(2).

**A. Adequate Representation**

First, the Court finds that Class Counsel and the Class Representative, Ms.

Jordan, have adequately represented the Class.  As discussed in the Court's

preliminary approval of the proposed settlement agreement, Class Counsel

engaged in extensive discovery while actively litigating this case over the past six

years.  Class Counsel produced multiple sets of written discovery, took numerous

depositions, and engaged in significant expert work in preparation for trial.  ECF

No. 361 at ¶¶ 3-5.  Class Counsel's work produced significant results for the Class, including class certification in state court, a favorable ruling by the Washington Supreme Court on questions certified by this Court, and various other rulings beneficial to the Class.  Class Counsel survived dispositive motion practice and proceeded not only toward, but past, class certification.  Moreover, Class Counsel's work, professionalism and performance during the mediation process ultimately resulted in an excellent settlement for the Class.

As Class Representative, Ms. Jordan has expended significant time and effort assisting class counsel in this case over the past six years.  Ms. Jordan participated in responding to discovery, she was deposed by Defendant, and she prepared for both the December 2017 and July 2018 trials.  ECF No. 362 at 2-3. Notably, in 2013, Ms. Jordan rejected a settlement offer from Defendant of $25,000 because it would have provided no relief to the Class.  *Id*. at 3, ¶6.

Accordingly, the Court finds that Class Counsel and Ms. Jordan have been diligent in their representation of the class.

**B. Arm's Length Negotiations**

Regarding the negotiation process, the Court finds that the Settlement Agreement is the result of an adversarial, non-collusive, and arms-length negotiation.  As discussed in the Court's Preliminary Approval Order, the parties initially entered into mediation on November 27, 2017, with the assistance of

Louis D. Peterson, who has substantial experience litigating and settling complex civil cases. ECF No. 361 at ¶ 7. Although they reached an agreed settlement, the parties were unable to agree on several settlement terms at that time. The parties resumed litigation, but continued settlement discussions. ECF No. 360 at 24. The parties had filed trial briefs and were set to start trial when they once again reached a settlement with Mr. Peterson's assistance, this time including final agreement on the remaining disputed settlement terms. ECF No. 361 at ¶ 9. Thus, the Settlement Agreement was achieved under the supervision of a trusted third-party mediator following extensive settlement negotiations, which assures the Court that the negotiations were conduct at arm's-length and without collusion among the parties. Accordingly, the Court finds no signs of conflicts of interest, collusion, or bad faith in the parties' settlement negotiation process.

## C. Adequate Relief

The Court concludes that the relief provided for the Class is adequate. First, the amount offered in settlement and the proposed payment to class members appears fair. The Settlement Agreement requires Defendants to pay $17,000,000 into the non-reversionary Settlement Fund. ECF No. 361-1 at 5, III. ¶ 1 (Ex. 1). Class counsel estimates that class members will receive awards ranging between $75 and $52,165.34. ECF Nos. 361 at ¶ 18; 388 at 15. In view of the substantial

amount offered in settlement and the estimated range of awards, the Court concludes that the settlement amount is fair and reasonable.

The Court also finds that the expected relief for Class Members is adequate considering the four factors listed in Rule 23(e)(2)(C). As noted, amended Rule 23(e)(2)(C) identifies four discrete subtopics that courts should always consider when assessing the adequacy of relief provided for a class. The Court discusses each subtopic below.

**(i)** *Costs, risks, and delay of trial and appeal*

Given the circumstances of this case, it is difficult to predict the precise range and likelihood of class-wide recovery had this case proceeded to a litigated outcome. While the Court granted partial summary judgment in Plaintiff's favor on her claims for trespass and CPA violations, Defendant maintains that the measure of damages and individual class members' entitlement to any relief remained hotly disputed. ECF No. 393 at 3. Specifically, had the case proceeded to trial, Defendant was prepared to show that Plaintiff's expert's methodology for calculating damages was fundamentally flawed and Class Members were only be entitled to a fraction of the damages Plaintiff claimed for them. *Id*. at 5-6. Given the uncertainty of recovery, the Court agrees with Class Counsel that the $17,000,000 settlement, which provides between $75 and $52,165.34 to each Class Member, is an excellent result for the Class.

Moreover, regardless of the result at trial, a lengthy and expensive trial and appeals process would be expected in this case. Defendant confirms that at the time the parties reached the proposed settlement, it remained prepared to appeal any significant award of damages on numerous grounds, including liability, the propriety of adjudicating liability and damages on a class-wide basis, and the measure of damages. *Id*. at 7; ECF No. 364 at 6. It is certainly possible that the outcome of an appeal would result in no recovery or substantially reduced damages for Class Members. The risk, complexity, and expenses involved in this litigation are further reflected in the many motions briefed by the parties.

As an additional consideration, Class Counsel note that a federal district court recently decertified and dismissed a similar class action after years of litigation. *See Bund v. Safeguard Properties, Inc.*, 2018 WL 5112642 (W.D. Wash. Oct. 19, 2018). Prior to dismissing the case, the court ruled that a property preservation vendor hired by Nationstar could not be held liable for CPA violations predating the Washington Supreme Court's decision in *Jordan*. ECF No. 388 at 17-18; *see Bund v. Safeguard Properties LLC*, 2018 WL 4008039 (W.D. Wash. Aug. 20, 2018). The decision is currently on appeal. At minimum, the decision reflects the inherent risks facing the Class in pursuing this consumer class action and the very real potential for recovering little or nothing if this case proceeded through trial and appeal.

**(ii)** *Effectiveness of proposed method of distributing relief to the class*

The Settlement Agreement provides a straightforward process for distributing the Settlement Fund to Class Members. Under the terms of the agreement, Defendant will deposit $17,000,000, less the Class Administrator's fees, into the Settlement Fund. ECF No. 361-1 at 5, ¶¶ 1-2. Rather than requiring Class Members to submit claims as a condition of recovery, settlement award checks will be mailed to all Settlement Class Members for whom the Class Administrator has a deliverable address. *Id.* at 5, ¶ 4. Settlement award checks will be valid for 90 days from the date on the check. *Id.* Generally speaking, the Court determines that the proposed method of distribution should equitably and effectively distribute relief to the Class.

The Court notes that, as of May 6, 2019, 419 mailed Notices have been returned to the Class Administrator without any additional address information, meaning they "are ultimately undeliverable." ECF No. 389 at 5. The Settlement Award payments previously allocated to the 419 Class Members with no deliverable address amounts to over $1,325,000. *Id.* Pursuant to the Settlement Agreement, this balance will be distributed amongst the Class Members with a deliverable address. This means that the settlement awards will be slightly higher than the estimated awards listed in the notices mailed to those Class Members. *Id.*

While the Court is fully satisfied with the proposed distribution plan, there is the issue of 262 Settlement Class Members who filed for bankruptcy. Their claims were analyzed by a Court appointed Special Master to determine whether unused exemptions would ultimately allow the debtor to receive the settlement amount or whether the settlement amount is economically substantial enough that the Bankruptcy Courts (e.g., the U.S. Trustees) should be notified so that it may be administered through those Courts to the creditors and debtor. The Special Master divided the 262 bankruptcy involved class members into seven categories, identified on Exhibits B - G of his report. ECF Nos. 381, 384.

The Court then provided notice to the eighteen (18) United States Trustees for the Bankruptcy Courts where those 262 cases were filed. ECF No. 385. The United States Trustees filed a response outlining their statutory duties and authority. ECF No. 392. Given the parameters of their authority and using the Special Master's categorization of the bankruptcy cases, the United States Trustees indicated that they would not move to reopen the cases listed in Categories B, C, D, and H. *Id.*; ECF No. 381, 384. Consistent with the Court's prior Order, ECF No. 385 at 6-7, the Court finds that Categories B and C members have sufficient unused exemptions to cover the entire settlement award, or expect less than approximately $5,000 net proceeds after any unused exemptions are applied, and it would not be economically feasible for the bankruptcy courts to administer those

funds. The Court finds that the Category H members' chapter 13 cases were dismissed, so the settlement proceeds belong to those debtors. The Court finds that the Category D members' bankruptcy cases involved 100% distribution to creditors, so the settlement proceeds would belong to those debtors. Similarly, the Court directs that the five closed chapter 11 and 13 cases in Category E be distributed to those five debtor class members (Iola Newhart, Vaughn Jensen, Larry Bethel, Estate of Elizabeth Short, and Gerock Vestman).

The United States Trustees sought additional time to move to reopen and to appoint trustees to evaluate the proposed settlements in the remaining Category E cases. Also, the United States Trustees sought proper notice and an opportunity for the trustees to be heard in the open cases in Categories F and G. The Court directed that notice be provided to these trustees and allowed until April 30, 2019 for the trustees to "opt-out . . . or object to the Settlement" and to "indicate whether they ratify the Settlement and direct that the settlement award be sent to the bankruptcy court for administration and disbursement." ECF No. 400 at 5-6. The Court finds that adequate notice has now been provided to the bankruptcy trustees (ECF Nos. 400, 402 and reservice, 403 and reservice) and the U.S. Trustees (ECF No. 385).

Bankruptcy trustee Dennis Lee Burman expressly ratified the settlement for the benefit of debtors Thomas M. Grennan (and Jennifer D. Grennan) (ECF No.

396) and James Moonen (ECF No. 398) and directed that their settlement funds be sent directly to them.  The bankruptcy trustees only sought payment of the settlement proceeds into the bankruptcy proceedings for eleven (11) other class members' that are listed below.  Accordingly, the Court directs that all remaining settlement awards for the bankruptcy class members in categories E, F, and G, be sent directly to the debtors as these awards have not been timely claimed by the trustees.

### (iii)  *Terms of any proposed award of attorney's fees*

The Court discusses at length the proposed award of attorney's fees in Part II of this Order.  To avoid needless repetition, the Court briefly summarizes its findings here.  Class Counsel seek attorneys' fees of $4,250,000 for over six years of work on a contingency basis, which equals the Ninth Circuit's 25% benchmark for common fund cases.  ECF No. 376.  The fees will be paid out of the Settlement Fund and will be paid only after the Settlement is finally approved by the Court, the time for any appeal has elapsed, or any appeal has been resolved, and the Settlement has taken effect.  ECF No. 388 at 19.  After payment of the proposed attorneys' fees and costs, more than $12,000,000 of the Settlement Fund will be distributed directly to the Class.  *Id*. at 7.  Considering the proposed attorneys' fees, including the timing of payment, the Court finds that the relief actually delivered to the Class is fair and reasonable.

1    **(iv)**    *Any agreement required to be identified under Rule 23(e)(3)*

2          The Court has not been advised of any side agreements made in connection

3    with the proposed settlement pursuant to Rule 23(e)(3).  Thus, there is nothing for

4    the Court to consider.

5    **D. The Settlement Agreement Treats Class Members Equitably**

6          The Court finds that the apportionment of relief among Class Members takes

7    appropriate account of differences among their claims.  Here, Class Counsel

8    estimates that Class Members will receive awards ranging between $75 and

9    $52,165.34.  ECF No. 361 at ¶ 18.  The variation in awards primarily turns on the

10   relative strength or weakness of the evidence supporting each class member's

11   claim for damages, the amount of time individual Class Members were allegedly

12   excluded from their properties as a result of a lock change, and variances in the fair

13   market rental value of Class Members' homes.  ECF No. 388 at 21.

14         The $75 award will be paid to class members who do not have evidence of a

15   lock change or of property preservation measures involving entry onto the class

16   member's property.  ECF Nos. 361-1 at 5, III. ¶ 3 (Ex. 1); 360 at 26; 388 at 20-21.

17   Class members with evidence of a lock change will receive a pro rata payment

18   based on the rental value damages calculated by Plaintiff's expert.  ECF Nos. 361-

19   1 at 5, III. ¶ 3 (Ex. 1); 388 at 20-21.  The average estimated award for Class

20   Members with evidence of a lock change is $3,589.92.  ECF Nos. 361 at ¶ 18; 388

at 21.  According to Class Counsel, at least 2,595 Class Members will be entitled to payments that exceed $1,000.  ECF No. 388 at 21.  In the Court's view, the differences in treatment of Class members, including the apportionment of relief and the variance in individual settlement awards, are fair and equitable in light of the differences in the values and facts of the Class Members' underlying claims.

Further, as of March 6, 2019, there had only been one objection to the Settlement Agreement and four exclusion requests, despite the comprehensive and wide-reaching notice plan.  ECF Nos. 388 at 22; 389 at 6-7.  The Court finds the notice program was reasonably calculated to provide actual notice to class members, and was fully adequate and effective; it reached over 92% of all Class Members and fully satisfies due process and applicable law.  ECF No. 388 at 24-25.  No one appeared at the March 21, 2019 final fairness hearing to object to the settlement.  These numbers suggest to the Court that the vast majority of the notified Class—over 99.9%—find the terms of the proposed settlement unobjectionable and agree to be bound by the Settlement Agreement.  Based on the evident benefit of obtaining relief through the class action mechanism for numerous Class Members, as opposed to requiring them to bring individual claims, the favorable reaction of Class Members to the Settlement Agreement, and the apparent willingness of Defendants to pay a class settlement in order to obtain

finality, the Court concludes that the Settlement Agreement treats Class Members equitably relative to each other.

The one objection to the Settlement Agreement is based on the amount that a class member who does not have evidence of a lock change would receive, $75. The objector suggested everyone should share in the settlement pro rata, without consideration of the value of the property or the length of lockout period. ECF No. 389-6. The objector alleges she was locked out *after* a Sheriff's foreclosure sale and that she lost certain personal property. However, this class action does not concern lost personal property. The Court otherwise finds the objector's proposal to be a fundamentally unfair method of valuation and **overrules** her objection.

In sum, the Court determines that the proposed Settlement is fair, reasonable, and adequate. Class Counsel and Ms. Jordan have sufficiently represented the Class, the Settlement Agreement was negotiated at arm's length, the relief provided to the Class is adequate, and the Settlement Agreement treats Class Members equitably relative to each other and their claims.

## II. Attorneys' Fees and Costs

Plaintiff seeks final approval of an award of attorneys' fees to Class Counsel pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2) in the total combined amount of $4,250,000, plus reimbursement of litigation costs of

$208,245, to be paid from the $17,000,000 settlement fund.  ECF No. 376 at 8, 13.

The requested fees represent 25% of the gross settlement amount.  *Id*. at 8.

Federal Rule of Civil Procedure 54(d)(2) specifies that requests for

attorney's fees and costs shall be made by motion "unless the substantive law

requires those fees to be proved at trial as an element of damages," but the rule

does not itself authorize the awarding of fees.  Fed. R. Civ. P. 54(d)(2).  Federal

Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court

may award reasonable attorney's fees and nontaxable costs that are authorized by

law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  "While attorneys' fees

and costs may be awarded in a certified class action where so authorized by law or

the parties' agreement, courts have an independent obligation to ensure that the

award, like the settlement itself, is reasonable, even if the parties already agreed to

an amount."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th

Cir. 2011) (citation omitted).  An attorney is entitled to "recover as part of the

award of attorney's fees those out-of-pocket expenses that would normally be

charged to a fee paying client."  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir.

1994) (quotation and citation omitted).

**A. Attorneys' Fees**

"Where a settlement produces a common fund for the benefit of the entire

class," as in this case, district courts have discretion to employ either the lodestar

method or the percentage-of-the-fund method to determine the reasonableness of an award of attorneys' fees. *In re Bluetooth Headset*, 654 F.3d at 942; *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). However, in diversity actions such as this one, the Ninth Circuit applies state law to determine the right to fees and the method for calculating them. *Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). Under Washington law, the percentage-of-the-fund method is used to calculate class action attorneys' fees in common fund cases. *Vizcaino*, 290 F.3d at 1047; *Bowles v. Dep't of Ret. Sys.*, 121 Wash.2d 52, 72 (1993) (holding that in common fund cases, "the size of the recovery constitutes a suitable measure of the attorneys' performance."). Because Class Counsel's efforts created a $17,000,000 common fund for the benefit of the Class, the Court finds that the percentage method is appropriate in this case.

The Ninth Circuit has established 25% of the settlement fund as the "benchmark" award for reasonable attorneys' fees in common fund cases. *Vizcaino*, 290 F.3d at 1047; *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (citing *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). However, the 25% benchmark rate is only the "starting point for analysis." *Vizcaino*, 290 F.3d at 1048. "Selection of the benchmark or any other rate must be supported by findings that take into account

all of the circumstances of the case." *Id*. Specifically, in arriving at a particular

percentage, courts must consider not only the size of the fund, but also:

> the extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case …, and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015)

(quoting *Vizcaino*, 290 F.3d at 1048-50) (quotations omitted).

Here, Class Counsel seek 25% of the non-revisionary common fund

generated for the benefit of the Class, which is the benchmark fee award. ECF No.

376 at 8. After reviewing the record and surrounding circumstances, the Court

determines that Class Counsel's percentage of recovery fee request is reasonable.

### 1. Results Achieved and Risk of Litigation

Class Counsel achieved exceptional results for the Class. In a common fund

case, "the size of the recovery constitutes a suitable measure of the attorneys'

performance." *Bowles*, 121 Wash.2d at 72. Here, the Settlement Agreement

requires Defendant to pay $17,000,000 into the non-reversionary Settlement Fund

to compensate Class Members for lock changes and property preservation

measures performed at their homes by Defendant. In addition to the size of the

award, the settlement constitutes an excellent result for Class Members because

Class Counsel pursued this case in the absence of supporting precedents and against Defendants' vigorous opposition over more than six years of litigation.

Also, Class Counsel took a significant risk in pursuing this case. Class Counsel represented Plaintiff and the Class on a contingent basis, investing over 6,000 hours of work into the case and advancing substantial sums to cover litigation costs for more than six years. ECF No. 376 at 17. Significantly, when Class Counsel initially took this case, there was no Washington appellate court decision specifically holding that a homeowner may recover damages for a lock change or other property preservation measures performed prior to foreclosure. *Id*. at 8. The high risk Class Counsel faced is also shown by the vigorous defense of the case by Nationstar, and several law firms, for several years.

Accordingly, the Court finds that Plaintiffs and Class Counsel's recovery of $17,000,000 constitutes an exceptional result for the Class given these obstacles and the risks of litigation.

### 2. Counsel's Performance and Burdens

Class Counsel litigated this case with great skill and performed high quality work, as reflected in the results obtained. Class Counsel has demonstrated their diligence in this action and their experience in litigating class action cases. *See* ECF Nos. 376 at 19-20; 377 at 11-14, 18-20; 378 at 2-5; 379 at 2-3. Over the past six years, this case has been vigorously litigated not only in this Court, but also in

the Chelan County Superior Court, the Washington Court of Appeals, the U.S.

Court of Appeals for the Ninth Circuit, and the Washington Supreme Court.  Class

Counsel conducted substantial discovery and investigation regarding class

certification and the merits of the case.  Class Counsel prevailed in many key

moments in the course of litigation, achieving favorable results for the Class

through their skill and experience.  As noted above, Class Counsel's representation

of the Class—on a purely contingency basis—extended over six years, entailed

hundreds of thousands of dollars of expense, and posed a significant financial

burden on Class Counsel.  These factors weigh in favor of granting the requested

fee.

### 3.  Market Rate

The Ninth Circuit has rejected the requirement that a court should determine

a reasonable fee by attempting to replicate the market rate.  *Vizcaino*, 290 F.3d at

1049.  "[I]n most cases it may be more appropriate to examine lawyers' reasonable

expectations, which are based on the circumstances of the case and the range of fee

awards out of common funds of comparable size."  *Id.* at 1050.

Here, Plaintiffs emphasize that Washington courts routinely award

attorneys' fees of more than 25% of the common fund in consumer class actions.

ECF No. 376 at 20-21.  And, Class Counsel's requested award is at the Ninth

Circuit benchmark for common fund cases. These factors also weigh in favor of granting the requested attorneys' fees.

**B. Lodestar Cross-Check**

District courts often use the lodestar method as a cross-check on the reasonableness of the percentage award. *Vizcaino*, 290 F.3d at 1050. The lodestar method involves multiplying the number of hours reasonably expended on the claim or motion by a reasonable hourly rate. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008); *Scott Fetzer Co. v. Weeks*, 122 Wash.2d 141, 149-50 (1993). The calculation of reasonable hours and hourly rate is entrusted to the discretion of the court applying the principles set forth in *Hensley v. Eckerhart*, in light of the court's first-hand contact with the litigation and attorneys involved. *Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d 1132, 1135 (9th Cir. 2012).

**1. Hours Expended**

When determining the reasonableness of the hours expended, a court should not consider hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Here, Class Counsel spent 6,445.03 total hours on this litigation, which excludes the time spent preparing the final approval motion papers and attending the final approval hearing. *See* ECF Nos. 377 at 119; 378 at 14; 379 at 45. Class Counsel have provided the Court with their detailed billing records, which show the work performed by each attorney and staff member

included in Class Counsel's lodestar calculation. ECF No. 376 at 22. Based on the thoroughness of the billing records, the advanced stage of this litigation, and the complex issues litigated up to this point, the Court finds nothing in the record to suggest that any of the hours claimed should be disallowed.

### 2. Hourly Rate

When determining the reasonableness of the attorney's proposed hourly rate, the court looks to hourly rates prevailing in the relevant legal community for similar work performed by attorneys of comparable skill, experience, and reputation. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (citation omitted). A reasonable hourly rate should account for factors such as the attorney's customary hourly billing rate, the level of skill required by the litigation, the time limitations imposed on the litigation, the amount of potential recovery, the attorney's reputation, and the undesirability of the case. *Bowers v. Transamerica Title Ins. Co.*, 100 Wash.2d 581, 597 (1983).

Here, the hourly rates charged by Class Counsel range from $75 for legal secretaries to $390 for senior partners. ECF No. 376 at 24. The Court, based on its independent review as well as its review of the supporting documents submitted by Plaintiff, finds the rates billed by Class Counsel are commensurate with the prevailing rates for similar representation in the relevant market. *See Ingram*, 647 F.3d at 928 (holding that a district court may rely on its own knowledge and

experience when determining a reasonable hourly rate for the services performed). Class Counsel also has extensive experience in class action litigation, as previously discussed.

The declarations and other materials filed by Class Counsel show that their fees for work done on this case, if charged at current hourly rates, would come to nearly $2 million. *See* ECF Nos. 377; 378; 379. Using the roughly $2 million lodestar, Class Counsel's requested award of 25% of the Settlement Fund results in a lodestar multiplier of 2.125. In common fund cases, multipliers ranging from one to four are frequently awarded. *Vizcaino*, 290 F.3d at 1051 n.6 (describing range of multipliers in common fund cases). Because the lodestar multiplier is well within the range of what the Ninth Circuit considers appropriate, the Court finds that the requested attorneys' fees appears reasonable in this case.

## C. Litigation Costs

Class Counsel requests an award of costs in the amount of $208,245.67. ECF No. 376 at 28. The itemized list of expenses provided by counsel supports a conclusion that the expenses were reasonably incurred in prosecution of this litigation and were reasonably necessary. *See* ECF Nos. 377 at 17-18; 378 at 16. Class Counsel asserts that the costs are reasonable and were primarily incurred on witness fees, provision of notice to the Class, and general litigation expenses, including travel, disposition transcripts, photocopying, legal research, and mail.

*See* ECF No. 376 at 28.  The Court finds that the requests for costs is reasonable and reflects necessary expenditures to obtain a favorable settlement.

### D. Special Master Fees

The Court has thoroughly reviewed the Special Master's detailed statement of time expended and services rendered and finds the rates and hours reasonable and fair.  ECF No. 383.  No objections have been made.  Accordingly, Special Master Bruce Kriegman shall be paid $63,864.50 for fees and $1,191.65 for his reasonable costs from the Settlement Fund.

### III.    Class Representative Service Awards

The Court also preliminarily concludes that the compromised amount for the class representative's incentive award is reasonable.  ECF No. 376 at 28-29.  "Incentive awards that are intended to compensate class representatives for work undertaken on behalf of a class are fairly typical in class action cases."  *Online DVD-Rental*, 779 F.3d at 943.  Incentive awards are generally approved so long as the awards are reasonable and do not undermine the adequacy of the class representatives.  *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1164 (9th Cir. 2013).  In assessing the reasonableness of an incentive award, courts look to the number of plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment.  *Online DVD-Rental*, 779 F.3d at 947.

Here, Ms. Jordan is the sole named plaintiff to receive an incentive payment. The requested incentive payment—$20,000—makes up roughly .12% of the total settlement award. Although the incentive payment is noticeably greater than the $1,033.51 median estimated award for all unnamed class members, Ms. Jordan has expended significant time and effort assisting class counsel in this case over the past six years. ECF No. 362 at 2-3. Ms. Jordan participated in responding to discovery, she was deposed by Defendant, and she prepared for both the December 2017 and July 2018 trials. *Id*. Notably, in 2013, Ms. Jordan rejected a settlement offer from Defendant of $25,000 because it would have provided no relief to the Class. *Id*. at 3, ¶6. The Court concludes that the requested incentive award of $20,000 is reasonable.

## IV. *Cy Pres* Distribution

The parties' proposed plan for distribution of the Settlement Fund provides that any settlement funds still undisbursed after the second distribution to Settlement Class Members shall be paid to the following *cy pres* recipients: Northwest Justice Project and Parkview Services in essentially equal payments. *Cy pres* distributions to those recipients further the objectives of the statutes on which this suit was brought because they serve Washington homeowners facing financial distress and mortgage default. *Cy pres* distributions to those recipients will also account for Class Members' interests, including their geographical

distribution, because both organizations serve Washington residents. The Court finds the *cy pres* distributions necessary, proper and reasonable, especially to account for the non-reversionary nature of the Settlement Fund.

**ACCORDINGLY, IT IS ORDERED:**

1.     Plaintiffs' Motion for Order Granting Final Approval of Class Action Settlement (ECF No. 388) and Nationstar's Joinder (ECF No. 393) are **GRANTED**.

2.     The Court finds that Notice to the Settlement Class has been completed in conformity with the Preliminary Approval Order, was reasonably calculated to provide actual notice to the class members and satisfies due process and other applicable law. ECF No. 369.

3.     There has been one timely-filed objection to the settlement. ECF No. 389-6. That objection is **OVERRULED**.

4.     The terms set forth in the settlement are approved as being fair, adequate, and reasonable in light of the degree of recovery obtained in relation to the risks faced by the Settlement Class in litigating the claims. The Settlement Class is properly certified as part of this settlement. The relief provided to the Settlement Class under the settlement agreement is appropriate as to the individual members of the Settlement Class and as a whole.

5.     The Class Administrator shall deduct and receive its fees and costs in full payment for its services, not to exceed $45,000 from the Settlement Fund.

6.     Plaintiffs' Motion for Order Granting Award of Attorneys' Fees and Costs (ECF No. 376) and the Special Master's Request for Approval of Payment of Fees and Costs (ECF No. 383) are **GRANTED**.  The Court approves the payment of $4,250,000 in attorneys' fees to Class Counsel as fair and reasonable.  The Court approves the payment of $208,245.67 to Class Counsel as reimbursement for litigation costs.  The Court approves the payment of $63,864.50 in fees and $1,191.65 in costs to Special Master Bruce Kreigman, both deducted from the Settlement Fund.

7.     The Court approves the service award of $20,000 to Laura Zamora Jordan as Class Representative.

8.     Four individuals have timely and properly excluded themselves from the Settlement Class: Jack Grant, Kimberly Smack, Pamela Turner, and Richard Rutkowski. ECF No. 389-5.  Aside from those four identified individuals, all members of the Settlement Class are bound by this Order.

9.     The parties' proposed plan for distribution of settlement proceeds is hereby approved.  Each member of the Settlement Class shall be entitled to receive an individual settlement share proportional to the calculated damages from the remainder of the Settlement Fund as set forth in the Settlement Agreement.  The

ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS ~ 29

Court orders the parties to comply with and carry out all terms and provisions of the Settlement, to the extent that the terms do not contradict or conflict with this Order and Judgment, in which case the provisions of this Order and Judgment shall take precedence and supersede the Settlement.

10. After paying costs of notice and administration as set forth in paragraph 5 above and paying the sums set forth in paragraphs 6 and 7 above, the Class Administrator shall, within the time period set forth in paragraph III.4 of the Settlement Agreement, pay the funds remaining in the Settlement Fund to Settlement Class Members in the following amounts:

a. To each Settlement Class Member for whom the Class Administrator has a deliverable address but there is no evidence of a Lock Change:  a payment of $75.

b. To each Settlement Class Member for whom the Class Administrator has a deliverable address and there is evidence of a Lock Change:  a pro rata payment based on the rental value damage calculated by Plaintiff's expert in this matter using the following formula—RF x RVD/TRVD—where RF is the remaining amount of settlement funds after payment of all other amounts, RVD is the amount of rental value damages calculated for the Class Member by Plaintiff's expert, and TRVD is the total amount of rental value damages calculated by Plaintiff's expert for all Settlement

Class Members with evidence of a Lock Change and for whom the Class

Administrator has a deliverable address, provided however that each Class

Member shall receive a payment of at least $75.

11.     The Settlement Administrator shall pay the following bankruptcy

trustees the final calculated settlement amounts for administration and disbursal in

bankruptcy court with respect to the following class members:

| BANKRUPTCY TRUSTEE | CLASS MEMBER | CASE NO. | EST. AMOUNT |
|---|---|---|---|
| **Kathryn A. Ellis** 5506 6th Ave. S., Suite 207 Seattle, WA 98108 | Scott Huntington | 09-48196 | $10,142.51 |
| **Dennis Lee Burman** P.O. Box 1620 Marysville, WA 98270 | Dawna D. Grenell (and Mark D. Grenell) | 14-16158 | $19,405.82 |
| **Dennis Lee Burman** P.O. Box 1620 Marysville, WA 98270 | Douglas P. Schwartz | 16-12104 | $28,032.32 |
| **Edmund Wood** 303 N. 67th Street Seattle, WA 98103-5209 | Paul D. Nguyen (and Hong Thi Tran) | 10-15805 | $10,876.40 |
| **Edmund Wood** 303 N. 67th Street Seattle, WA 98103-5209 | Joshua L. Witherell | 11-15318 | $13,954.25 |
| **Michael P. Klein** 330 Madison Ave. S., Suite 110 Bainbridge Island, WA 98110 | Marya Noyes | 14-18298 | $30,813.52 |

| **BANKRUPTCY TRUSTEE** | **CLASS MEMBER** | **CASE NO.** | **EST. AMOUNT** |
|---|---|---|---|
| **Nancy L. James** 15008 – 63rd Drive SE Snohomish, WA 98296 | Travis William Griffin | 14-17258 | $14,438.07 |
| **Mark D. Waldron** 6711 Regents Blvd. W., Suite B, Tacoma, WA 98466 | Jodi Asbun | 14-45025 | $17,395.25 |
| **Mark D. Waldron** 6711 Regents Blvd. W., Suite B, Tacoma, WA 98466 | Ismail Arslangiray | 11-42290 | $10,874.95 |
| **Mark D. Waldron** 6711 Regents Blvd. W., Suite B, Tacoma, WA 98466 | John Troy | 14-42531 | $22,560.29 |
| **Mark D. Waldron** 6711 Regents Blvd. W., Suite B, Tacoma, WA 98466 | Karen Woodsum | 14-40749 | $18,366.85 |

12. If administratively feasible, the Class Administrator shall pay any settlement funds that remain unclaimed (e.g., undeliverable, uncashed, etc.) to Settlement Class Members (including bankruptcy trustees on behalf of class members listed above) with evidence of a lock change and who cashed their original settlement distribution check in amounts calculated by the following formula: URF x CMP/TCCMP, where URF is the amount of unclaimed remaining settlement funds, CMP is the amount paid to the Settlement Class Member in the

original distribution, and TCCMP is the total amount paid all Settlement Class Members in the Original distribution less the amount of the unclaimed payments.

13.     The Class Administrator shall pay all settlement funds which remain unclaimed after the distributions ordered herein to the *cy pres* recipients: 50% to the Northwest Justice Project and 50% to Parkview Services.

14.     Within 30 days after completing all payments, the Class Administrator shall file with the Court a declaration attesting to its compliance with the provisions of this Order and a final accounting for the distribution of the Settlement Fund.

15.     All Settlement Class Members are bound by the terms of the Settlement Agreement.  As of the Settlement Agreement's effective date, the Class Representative and all Settlement Class Members acknowledge full satisfaction of, and fully, finally and forever release, settle and discharge the Released Parties of and from all Settled Claims, as defined in the Settlement Agreement.  The release herein stated applies to claims that are presently unknown to the Class Representative or a Settlement Class Member.  The Class Representative and each Settlement Class Member agree not to sue and to be forever barred from suing any Released Party on any of the Settled Claims.

16.     Nothing in the settlement or this Order purports to extinguish or waive Defendant's rights to continue to oppose the merits of the claims in this action or

class treatment of these claims in this case if the settlement fails to become final or effective, or in any other case without limitation. The settlement is not an admission by Defendant, nor is this Order and Judgment a finding of the validity of any allegations against Defendant or any wrongdoing by Defendant.

17. The entry of this Order and Judgment of dismissal is without prejudice to the rights of the parties to enforce the terms of the Settlement Agreement. Without affecting the finality of this Order in any way, the Court retains jurisdiction over the claims against Defendant for purposes of resolving any disputes that may arise under the settlement agreement.

18. The Clerk of Court shall enter Judgment dismissing this action with prejudice, binding each Class Member who did not opt out to the terms of the Settlement Agreement and Release and reserving jurisdiction in this Court over the implementation of the Settlement Agreement and Release, including enforcement and administration of that Agreement.

The District Court Executive is directed to enter this Order and Judgment accordingly, provide copies to counsel and **CLOSE** the file.

**DATED** May 2, 2019.



THOMAS O. RICE
Chief United States District Judge

ORDER GRANTING FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND GRANTING MOTION FOR AWARD OF
ATTORNEYS' FEES AND COSTS ~ 34